UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACQUELINE BEEBE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>V&J NATIONAL ENTERPRISES, LLC, V&J UNITED ENTERPRISES, LLC, V&J EMPLOYMENT SERVICES, INC. and V&J HOLDING COMPANIES, INC.,<br><br>Defendants. | CASE NO.<br><br>**COLLECTIVE / CLASS ACTION COMPLAINT**<br><br>**ECF CASE**<br><br>**JURY TRIAL DEMANDED** |

# CLASS / COLLECTIVE ACTION COMPLAINT

Plaintiff Jacqueline Beebe ("Plaintiff") by her undersigned attorneys, individually and on behalf of all others similarly situated, hereby makes the following allegations against Defendants V&J National Enterprises, LLC, V&J United Enterprises, LLC, V&J Employment Services, Inc. and V&J Holding Companies, Inc. (collectively "V&J" or "Defendants"), with personal knowledge as to her own actions, and upon information and belief as to those of others:

## NATURE OF THE ACTION

1. This action seeks to redress Defendants' systematic policy and practice of paying their delivery drivers hourly wages well below the minimum required by the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and the New York Labor Law, N.Y. Lab. Law, Art. 19 § 650 et seq. ("NYLL").

2. The FLSA and NYLL, like virtually all minimum wage laws, require employers to provide their employees with sufficient reimbursements for employment-related expenses ("kickbacks") to ensure that employees' hourly wages equal or exceed the required minimum

{00282969 }

wage after such expenses are counted against the hourly wages.  However, Defendants systematically under-reimbursed their delivery drivers for vehicular wear and tear, gas and other driving-related expenses, thereby ensuring that all of Defendants' delivery drivers are effectively paid well below the minimum wage.

3.  Plaintiff worked as a delivery driver for Defendants in New York.  In violation of the FLSA and NYLL, Defendants under-reimbursed Plaintiff and her colleagues for vehicular wear and tear, gas and other driving-related expenses, thereby effectively paying them well below the minimum wage.  Defendants continue to under-reimburse Plaintiff's colleagues, preferring to selfishly pocket excess profits rather than fairly pay their employees.

4.  Plaintiff brings her FLSA claim against Defendants as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of all delivery drivers Defendants have employed for any length of time during the maximum allowable limitations period, and her NYLL claim as a class action pursuant to Fed. R. Civ. P. 23 on behalf of all New York delivery drivers Defendants have employed for any length of time during the maximum allowable limitations period.

## JURISDICTION AND VENUE

7.  This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from the Defendants; there are more than 100 Class members; and the aggregate amount in controversy exceeds $5,000,000.

8.  This Court also has jurisdiction under the provisions of the FLSA pursuant to 29 U.S.C. § 216(b) and under 28 U.S.C. § 1331 (federal questions jurisdiction), and supplemental jurisdiction over Plaintiff's NYLL claim pursuant to 28 U.S.C. § 1367.

9. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2), because Plaintiff resides in this District, worked for Defendants in this District and suffered the losses at issue in this District. Defendants are also liable for operations at multiple Pizza Hut pizza stores in this District; Defendants maintain significant business contacts within this District; and Defendants engaged in the unlawful conduct alleged in this Complaint within this District.

## PARTIES

10. Plaintiff Jacqueline Beebe is an adult resident of Rochester, New York, in Monroe County, who worked as a part-time delivery driver for Defendants at their Pizza Hut store at 3920 Dewey Avenue, in Greece, New York.

11. Plaintiff believes she has never signed an arbitration agreement or any other document that would obligate her to pursue her claims against any Defendant in arbitration.

12. Collectively, V&J owns and operates more than 60 restaurants in New York and Massachusetts, including the Greece, New York restaurant where Plaintiff was employed.

13. Defendant V&J National Enterprises, LLC is a Wisconsin corporation that is considered a citizen of Wisconsin for diversity purposes. V&J National Enterprises, LLC is an *alter ego* of V&J United Enterprises, LLC, V&J Employment Services, Inc. and their parent company V&J Holding Companies, Inc. and is a joint employer of Plaintiff and operator of the restaurant where Plaintiff was employed.

14. Defendant V&J United Enterprises, LLC is a Wisconsin corporation that is considered a citizen of Wisconsin for diversity purposes. V&J United Enterprises, LLC is an *alter ego* of V&J United Enterprises, LLC, V&J Employment Services, Inc. and their parent

company V&J Holding Companies, Inc. and is a joint employer of Plaintiff and operator of the restaurant where Plaintiff was employed.

15. Defendant V&J Employment Services, Inc. is a Wisconsin corporation that is considered a citizen of Wisconsin for diversity purposes. V&J Employment Services, Inc. is an *alter ego* of V&J United Enterprises, LLC, V&J United Enterprises, LLC and their parent company V&J Holding Companies, Inc. and is a joint employer of Plaintiff.

16. Defendant V&J Holding Companies, Inc. is a Wisconsin corporation that is considered a citizen of Wisconsin for diversity purposes. V&J National Enterprises, LLC, V&J United Enterprises, LLC and V&J Employment Services, Inc. are all *alter egos* of V&J Holding Companies, Inc. V&J Holding Companies, Inc. has an ownership interest in, or ownership in common with, V&J National Enterprises, LLC, V&J United Enterprises, LLC and is a joint employer of Plaintiff and operator of the restaurant where Plaintiff was employed.

## BACKGROUND FACTS

### JOINT EMPLOYMENT AND VICARIOUS LIABILITY ALLEGATIONS

17. V&J United Enterprises, LLC is a corporate *alter ego* of V&J National Enterprises, LLC. Both of these companies are subsidiaries of V&J Holding Companies, Inc. Both are listed on their "Corporate Directory" as being headquartered together at 1425 Mt. Read Boulevard, Suite 1 in Rochester, New York.[1]

18. V&J's website talks about both V&J National Enterprises, LLC and V&J United Enterprises, LLC in the proverbial same breath when describing their business, presenting both as a joint venture: "V & J National Enterprises, LLC and V & J United Enterprises, LLC are

---

[1] *V&J Holding Companies, Inc.: Corporate Directory*, V&J FOODS, http://www.vjfoods.com/corporate-directory (last visited January 30, 2017).

Pizza Hut franchisees, founded in 1997 and 1999, respectively. The Syracuse, Rochester, Albany and western Massachusetts markets operate 64 restaurants and 4 non-traditional sites collectively."[2] Prospective employees can apply for positions at both companies through a common "Pizza Hut – Online Application" on V&J's website.[3]

19. V&J National Enterprises, LLC and V&J United Enterprises, LLC implement a shared policy and pattern or practice for compensating their delivery drivers, which under-reimburses those drivers for their vehicle-related expenses and lowers their wages below the legal limit. This shared policy, jointly implemented across V&J National Enterprises, LLC and V&J United Enterprises, LLC restaurants, is the central issue in this action.

20. V&J Employment Services, Inc. drafts and executes employment-related documents that employees at restaurants owned and operated by V&J are required to sign for the benefit of all V&J Defendants. These documents reference such employees' employment with V&J Employment Services, Inc.

21. V&J National Enterprises, LLC, V&J United Enterprises, LLC and V&J Employment Services, Inc. are corporate *alter egos* of their parent company, V&J Holding Companies, Inc. V&J Holding Companies, Inc. has an ownership interest in, or ownership common with, V&J National Enterprises, LLC, V&J United Enterprises, LLC and V&J Employment Services, Inc.

22. V&J National Enterprises, LLC, V&J United Enterprises, LLC and V&J Employment Services, Inc. are controlled by V&J Holding Companies, Inc.'s officers and

---

[2] *V&J Holding Companies, Inc.: About Us*, V&J FOODS, http://www.vjfoods.com/#!about/c1a4e (last visited January 30, 2017).

[3] *V&J Holding Companies, Inc.: Careers*, V&J FOODS, http://www.vjfoods.com/careers (last visited January 30, 2017).

directors, including V&J's founders: Valerie Daniels-Carter, V&J's president, and John Daniels, V&J's chairman of the board. These corporate officers are held out by V&J as the leaders of all of V&J Holding Companies, Inc.'s subsidiaries, including V&J National Enterprises, LLC, V&J United Enterprises, LLC and V&J Employment Services, Inc. V&J's corporate directory makes no distinctions between any officers or managers of its subsidiaries.[4]

23. Defendants are employers under the NYLL and FLSA. During the relevant time period and to date, Defendants' annual profits have always been well in excess of $500,000. Defendants paid and supervised their employees, including Plaintiff and other delivery drivers.

24. Defendants employed delivery drivers, all of whom have the same job duty: to deliver pizzas and other food and beverages to customers. Plaintiff and all other Pizza Hut delivery drivers are clearly employees within the meaning of the NYLL and FLSA.

## DEFENDANTS' POLICY OF SYSTEMATICALLY UNDER-REIMBURSING DELIVERY DRIVERS

25. The majority of food and drink orders placed at Defendants' restaurants are for home delivery.

26. During a typical seven-hour shift, delivery drivers spend about four hours "on the road" making deliveries.

27. Delivery drivers typically spend about three hours inside the store, performing work for which they are ineligible for tips.

28. Throughout the relevant period, Defendants required each of their delivery drivers to maintain and provide a safe, functioning, insured and legally-operable automobile to make

---

[4] *V&J Holding Companies, Inc.: Corporate Directory*, supra n.1.

deliveries. These vehicles, typically two- and four-door passenger cars, weigh less than 10,000 pounds.

29. Throughout the relevant period, Defendants required their delivery drivers to bear the "out-of-pocket" costs associated with their vehicles, including costs for gasoline, vehicle depreciation, insurance, maintenance and repairs.

30. For decades, the Internal Revenue Service ("IRS") has calculated and published a standard mileage reimbursement rate ("IRS rate") for businesses and employees to use in computing the minimum deductible costs of operating an automobile for business purposes.

31. From January through June 2011, the IRS rate was $0.51 per mile. From July 2011 through December 2012, the IRS rate was $0.555 per mile; in 2013, the IRS rate was $0.565 per mile; in 2014, the IRS rate is $0.56 per mile; in 2015, the IRS rate was $0.575 per mile; in 2016 the IRS rate was $0.54 per mile; in 2017, the IRS rate was $0.535 per mile.

32. Since 2010, many reputable companies that study the cost of owning and operating a motor vehicle and/or estimating reasonable reimbursement rates for vehicular travel, including the American Automobile Association, have consistently set the average cost of operating a vehicle at rates significantly higher than that set by the IRS.

33. Defendants' delivery drivers typically experienced lower gas mileage, more rapid vehicle depreciation, and greater vehicular expenses than the average business driver because they typically drove in urban areas, in "start-and-stop" traffic, on a tight schedule, at night, and in inclement weather.

34. Insurance providers recognize the hazards of working as a pizza delivery driver. Unsurprisingly, pizza delivery drivers pay significantly higher automobile insurance rates than

do regular drivers,[5] and some pizza companies even provide their drivers with automobile insurance coverage.[6] Defendants do not provide insurance for their drivers.

35. Thus, during the relevant period, the actual "out-of-pocket" costs that Defendants' delivery drivers paid to provide a safe, functioning, insured and legally-operable automobile for their deliveries was at least $0.535 per mile.

36. During the relevant period, Defendants' delivery drivers made an average of approximately four deliveries per hour which required them to drive an average of 24 miles each hour (six miles per delivery), meaning they paid "out-of-pocket" at least approximately $12.96 per hour to provide, operate and maintain their vehicles.

37. To reimburse Plaintiff and her colleagues for her driving expenses, Defendants reimbursed them $1.35 per delivery throughout the relevant period.

38. Thus, Defendants would reimburse its delivery drivers approximately $5.40 for a typical hour (4 deliveries per hour times $1.35 reimbursement per delivery equals $5.40 total reimbursement per hour). This $5.40 was far less than the approximately $12.96 in expenses Plaintiff and her colleagues incurred in delivering pizzas for Defendants' benefit.

39. Plaintiff and all of her colleagues were paid the New York minimum wage: $7.25 per hour in 2013, $8.00 per hour in 2014, $8.75 in 2015, and $9.00 in 2016. Because Defendants paid the minimum wage, they were legally obligated to fully reimburse Plaintiff and her colleagues for the full amount of their driving expenses. However, Defendants failed to fully

---

[5] *See Auto insurance an important piece of the pie for pizza delivery vehicles*, NETQUOTE, http://www.netquote.com/auto-insurance/pizza-delivery-vehicles (last visited January 30, 2017).

[6] See *The Hidden Risks of a Pizza Delivery Business*, TRUSTED CHOICE INDEPENDENT INSURANCE AGENTS, https://www.trustedchoice.com/small-business-insurance/restaurant-food/pizza-delivery/ (last visited January 30, 2017).

reimburse its drivers for the full amount of their driving expenses, thus forcing the drivers' total compensation far below the minimum.

40. Defendants' systematic failure to adequately reimburse delivery drivers for their automobile expenses constitutes a kickback to Defendants such that the hourly wages they pay and have paid to Plaintiff and other delivery drivers are not paid free and clear of all outstanding obligations to Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

41. Plaintiff brings a collective action pursuant to 29 U.S.C. §216(b) on behalf of a proposed collective defined to include:

> All persons Defendants employed as a delivery driver during any workweek in the maximum limitations period whom Defendants cannot prove signed an enforceable arbitration agreement.

42. Plaintiff reserves the right to modify the proposed collective definition at a later stage of litigation.

43. Plaintiff is a member of the proposed collective she seeks to represent because she worked for Defendants as a delivery driver during the relevant period and suffered the minimum wage violation alleged above.

44. This action may be properly maintained as a collective action on behalf of the putative Class because, during the relevant period:

    a. Plaintiff and the Class members had the same employers;

    b. Plaintiff and the Class members performed the same type of work;

    c. Plaintiff and the Class members were governed by the same compensation policies, practices and systems;

d. Plaintiff and the Class members were subjected to the same policies relating to the payment of supplemental wages to offset vehicle maintenance costs;

e. Plaintiff and the Class members were governed by the same payroll policies, practices and systems;

f. Defendants' labor relations and human resources systems were centrally-organized and controlled, and controlled the policies and practices at issue in this case.

45. Plaintiff estimates that the collective group, including both current and former employees over the relevant period, will include thousands of members. The precise number of members should be readily available from Defendants' personnel, scheduling, time and payroll records, and from input received from the Class members as part of the notice and "opt-in" process provided by 29 U.S.C. §216(b). Given the composition and size of the Class, its members may be informed of the pendency of this action directly via U.S. mail, e-mail and/or the posting of written notices at Defendants' work sites.

## STATE LAW CLASS ACTION ALLEGATIONS

46. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this class action on behalf of herself and the following Class of similarly-situated individuals:

> All persons Defendants employed in New York as a delivery driver during any workweek in the maximum limitations period whom Defendants cannot prove signed an enforceable arbitration agreement (the "New York Class").

47. The New York Class specifically excludes Defendants; any parent, subsidiary, or affiliate of Defendants; any entity in which Defendants have or had a controlling interest, or which Defendants otherwise control or controlled; any officer, director, employee, legal

representative, predecessor, successor, or assignee of Defendants; and the Court and Court personnel.

48. The Class is so numerous that joinder of all members is impracticable. The number and identity of class members may be determined by Defendants' records, but the class size very likely exceeds 1,000 people.

49. There are substantial questions of fact and law common to Plaintiff and all Class members, including, *inter alia*:

   a. Whether Defendants required Plaintiff and the Class members to pay their "out-of-pocket" vehicle maintenance costs;

   b. Whether Defendants violated the NYLL by failing to pay Plaintiff and the Class members supplemental wages to offset their vehicle maintenance costs and ensure that they received more than the required minimum hourly wage;

   c. Whether Defendants were unjustly enriched by failing to properly reimburse delivery drivers; and

   d. Whether Plaintiff and other similarly situated employees of Defendants are entitled to additional wages based on a theory of unjust enrichment.

50. Plaintiff's claims are typical of the Class.

51. Plaintiff will fairly and adequately protect the interests of the Class. Her claims span the breadth of issues raised in this action.

52. Plaintiff's counsel are appropriately qualified to represent the Class as Class Counsel.

53. Joinder of Class members' individual actions is impractical because of the limited ability of individual Class members to institute separate suits and the general nature of the underlying action and relief sought. The prosecution of separate actions by individual Class members would create a risk of inconsistent results that could establish incompatible standards of conduct for Defendants.

54. Defendants have acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

55. Defendants' liability for damages can be established by facts and circumstances common to the Class as a whole and does not require the examination of the Plaintiff's individual circumstances.

56. Questions of law and fact common to members of the Class predominate over any questions affecting only individual members.

57. A class action is superior in this case to other methods for a fair and efficient adjudication of the controversy because: (A) the common interests of the Class members predominate over any individual interest in controlling prosecution or control of separate actions; (B) no similar litigation between the parties is currently pending in court; (C) concentrating litigation of this action in this Court is appropriate to ensure appropriate, consistent, and efficient resolution of the issues raised; and (D) there will be no significant difficulties in managing an action involving this Class.

## CLAIMS FOR RELIEF

### COUNT I - VIOLATION OF THE FAIR LABOR STANDARDS ACT
### (On Behalf Of The FLSA Collective)

58. Plaintiff repeats, realleges and incorporates by reference each of the foregoing allegations as though fully set forth herein.

59. Each Defendant is an "employer" as defined by 29 U.S.C. § 203(d).

60. Plaintiff and the collective group members are "employees" as defined by 29 U.S.C. § 203(e)(1) and "tipped employees" as defined by 29 U.S.C. § 203(t).

61. The wages Defendants paid to Plaintiff and the collective group members are "wages" as defined by 29 U.S.C. § 203(m).

62. The direct and supplemental wages Defendants paid to Plaintiff and the collective group members are "wages" as defined by 29 U.S.C. § 203(m).

63. Each Defendant is an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

64. Plaintiff and the collective group members are similarly situated individuals within the meaning of 29 U.S.C. §216(b). with the FLSA's requirements, and Plaintiff and the collective group members were covered employees entitled to the FLSA's protections.

65. This Count arises from Defendants' violation of the FLSA, 29 U.S.C. § 206(a)(1), for failing to pay Plaintiff and the collective group members the required minimum wage for each hour they worked.

66. Throughout the relevant period, the federal minimum wage rate for non-tipped employees was $7.25 per hour and the federal minimum wage rate for tipped employees was $2.83 per hour.

67. Defendants failed to pay Plaintiff and the collective group members the required minimum wage for their work "on the road."

68. Defendants paid their delivery drivers as little as $7.25 per hour plus $1.35 per delivery, an average total wage of $12.65 per hour (based on four deliveries per hour). However, based on nationally-accepted minimum reimbursement calculations for business travel, Plaintiff and the collective group members wound up having to pay "out-of-pocket" about $12.96 per hour to provide, operate and maintain their vehicles. Since Plaintiff and the collective group members experiences a net *loss* of $0.31 each hour they worked "on-the-road", Defendants' wage system for this work presents a clear FLSA violation.

69. In failing to ensure that Plaintiff and the collective group members received at least the tipped minimum wage rate for each hour they worked "on-the-road," Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

70. Defendants have no good faith justification or defense for failing to pay Plaintiff and the collective group members all wages mandated by the FLSA.

**COUNT II - VIOLATION OF THE NEW YORK LABOR LAW**
**(On Behalf Of The New York Class)**

71. Plaintiff repeats, realleges and incorporates by reference each of the foregoing allegations as though fully set forth herein.

72. Through their conduct described above, Defendants have engaged in deceptive acts and practices that resulted in injury to Plaintiff and the other members of the New York Class.

73. The unpaid wages at issue in this litigation are "Wages" as defined by NYLL § 190(1).

74. Plaintiff and the Class members are "Employees" as defined by NYLL § 190(2).

75. Each Defendant is an "Employer" as defined by NYLL § 190(3).

76. Throughout the relevant period, Defendants were employers obligated to comply with the NYLL's requirements, and Plaintiff and the New York Class members were covered employees entitled to the NYLL's protections.

77. NYLL § 193 prohibits employers, among other things, from requiring an employee to make payments by separate transaction, unless such charge or payment is permitted as a deduction from wages under the NYLL.

78. NYLL § 193 prohibits deductions from wages that are not made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency and are not expressly authorized in writing by the employees and are not for the benefit of the employee.

79. NYLL § 198-B(2) prohibits persons, among other things, from requesting, demanding, or receiving, either before or after such employee is engaged, a return, donation, or contribution of any part or all of said employee's wages, salary, supplements, or other thing of value, upon the statement, representation, or understanding that failure to comply with such request or demand will prevent such employee from procuring or retaining employment.

80. As alleged herein, Defendants, pursuant to their shared policy and practice, have reimbursed delivery drivers less than the reasonably approximate amount of their automobile expenses to such an extent that they diminishes the Delivery Drivers' net wages below New York's minimum wage.

81. Prior to December 31, 2015, the New York minimum wage for restaurant workers was $5.00 per hour. As of December 31, 2015, the New York minimum wage for tipped

restaurant workers is $7.65 per hour for workers who earn at least $1.35 per hour in tips, and $6.80 per hour for workers who earn at least $2.20 per hour in tips.

82. Defendants, pursuant to their shared policy and practice, violated the NYLL by requiring de facto deductions for vehicle expenses that are not authorized under the NYLL and/or that reduce delivery drivers' net wages below the minimum.

83. Plaintiff and all other delivery drivers are victims of uniform compensation and vehicle cost reimbursement policies; and these uniform policies, in violation of the NYLL, have been applied, and continue to be applied, to all Defendants' delivery drivers.

84. As a result of the aforesaid violations of the NYLL's minimum wage provisions, Defendants have unlawfully caused de facto deductions from the wages of Plaintiff and all other delivery drivers that resulted in minimum wages being unlawfully withheld by Defendants from Plaintiff and all other delivery drivers.

85. NYLL § 633(1) provides that Plaintiff and all other delivery drivers are entitled to damages equal to the amount of the unpaid minimum wages during the relevant period, plus periods of equitable tolling.

86. NYLL § 633(1) further provides that Plaintiff and all other delivery drivers are entitled to an award of their costs incurred in pursuing this claim, an award of reasonable attorneys' fees incurred in pursuing this claim and an award of prejudgment interest at the applicable rate.

87. Under NYLL § 633(1) Defendants are liable for a penalty in the amount of 100% of the total of the amount due during the relevant period as Defendants cannot prove a good faith basis to believe that its underpayment was in compliance with the law.

## COUNT III – UNJUST ENRICHMENT

88. Plaintiff repeats, realleges and incorporates by reference each of the foregoing allegations as though fully set forth herein.

89. Plaintiff and all other Class members have conferred benefits on Defendants by delivering pizza and other goods in exchange for the minimum wage. By under-reimbursing their drivers for their expenses, Defendants knowingly and willingly obtained monetary benefits from Plaintiff and the Class to which they was not entitled.

90. Under the circumstances described herein, it is inequitable for Defendants to retain this monetary benefit at the expenses of Plaintiff and the Class.

91. By engaging in the conduct described above, Defendants have been unjustly enriched at the expense of Plaintiff and the Class and are required, in equity and good conscience, to compensate Plaintiff and the Class for harm suffered as a result of their actions.

92. As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and the Class have suffered injury and are entitled to reimbursement, restitution, and disgorgement by Defendants of the benefit conferred by Plaintiff and the Class.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for an Order:

A. certifying this matter to proceed as a class action;

B. approving Plaintiff as adequate Class representative of the proposed Class;

C. appointing Finkelstein, Blankinship, Frei-Pearson & Garber, LLP to serve as Class Counsel;

D. requiring Defendant to provide the names and current (or best known) addresses of all members of the identified Collective and Class;

E. authorizing Class Counsel to issue a notice informing the Class members that this action has been filed, of the nature of the action, and of their right to opt out of this lawsuit;

F. finding that Defendant willfully violated the applicable provisions of the FLSA by failing to pay all required wages to Plaintiff and the collective group members;

G. finding that Defendant willfully violated the applicable provisions of the NYLL by failing to pay all required wages to Plaintiff and the New York Class members;

H. granting judgment in favor of Plaintiff and the members of the collective group and Class on all Counts;

I. awarding all available compensatory damages in an amount to be determined;

J. awarding an equal amount of liquidated damages as provided by the FLSA;

K. awarding reasonable attorneys' fees and reimbursement of all costs and expenses incurred in litigating this action;

L. awarding all available equitable and injunctive relief precluding the continuation of the policies and practices pled in this Complaint;

M. awarding any further relief the Court deems just, necessary and proper;

N. granting leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court; and

O. maintaining jurisdiction over this action to ensure Defendant's compliance with the foregoing.

**DEMAND FOR JURY TRIAL**

Plaintiff, by and through her undersigned counsel, hereby demands a jury trial in the above-captioned matter.

Dated: February 1, 2017

                                            Respectfully submitted,

                                            */s/ Jeremiah Frei-Pearson*

                                            JEREMIAH FREI-PEARSON
                                            Finkelstein, Blankinship,
                                            Frei-Pearson & Garber, LLP
                                            445 Hamilton Avenue, Suite 605
                                            White Plains, New York 10601
                                            Telephone: (914) 298-3281
                                            Facsimile: (914) 824-1561
                                            jfrei-pearson@fbfglaw.com

                                            *Attorney for Plaintiff and the Putative Class*