```
 1                    UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF NEW YORK
 2

 3   - - - - - - - - - - - - - X
     JACQUELINE BEEBE,                   17-CV-6075(W)
 4               Plaintiff
     vs.
 5                                       Rochester, New York
     V&J NATIONAL ENTERPRISES, LLC,      June 14, 2017
 6   ET AL.,                             2:04 p.m.
                 Defendants.
 7   - - - - - - - - - - - - - X

 8

 9                    TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE MARIAN W. PAYSON
10                UNITED STATES MAGISTRATE JUDGE

11

12                    FINKELSTEIN BLANKINSHIP FREI-PEARSON &
                      GARBER, LLP
13                    BY: JEREMIAH FREI-PEARSON, ESQ.
                      445 Hamilton Avenue
14                    Suite 605
                      White Plains, New York 10601
15                    Appearing on behalf of the Plaintiff

16

17                    BOND SCHOENECK & KING, PLLC
                      BY: KATHERINE S. MCCLUNG, ESQ.
18                    350 Linden Oaks
                      Suite 310
19                    Rochester, New York 14625
                      Appearing on behalf of the Defendant

20
     AUDIO RECORDER:     Catherine A. Marr
21

22   TRANSCRIBER:        Christi A. Macri, FAPR-CRR
                         Kenneth B. Keating Federal Building
23                       100 State Street, Room 2120
                         Rochester, New York 14614

24

25   (Proceedings recorded by electronic sound recording,
     transcript produced by computer).
```

1          **P R O C E E D I N G S**

2                    *   *   *

3          **THE CLERK:** Beebe vs. V&J National Enterprises,

4    17-CV-6075.

5          **MAGISTRATE JUDGE PAYSON:** Okay.  Would counsel like

6    to note their appearances for the record?

7          **MR. FRIE-PEARSON:** Good afternoon, Your Honor,

8    Jeremiah Frei-Pearson for plaintiff and the putative class.

9          **MAGISTRATE JUDGE PAYSON:** Okay, Mr. Frei-Pearson.

10         **MS. MCCLUNG:** Katherine McClung, Bond Schoeneck &

11   King for defendants.

12         **MAGISTRATE JUDGE PAYSON:** Ms. McClung.  Let me note

13   for the record that I received a letter, as directed, on

14   June 7th from Ms. McClung indicating on behalf of both parties

15   that they were unable to reach agreement with respect to an

16   informal resolution to some or all of the issues raised in

17   this motion.

18         I appreciate the efforts to do that and I'm not

19   going to revisit that territory and I indicated I would simply

20   proceed to oral argument in the absence of an agreement, so

21   I'm prepared to proceed.

22         Mr. Frei-Pearson, this is your motion, so why don't

23   you go ahead.

24         **MR. FRIE-PEARSON:** Certainly.  Would Your Honor like

25   me to approach?

1          **MAGISTRATE JUDGE PAYSON:** Yeah, why don't you use

2    the podium.

3          **MR. FRIE-PEARSON:** So this is a fairly routine

4    conditional certification motion.  It's a motion on behalf of

5    V&J delivery drivers, they're Pizza Hut franchisees.  They're

6    all paid the exact same way, which is their initial wages are

7    at or near the minimum, and they're reimbursed a set amount

8    per delivery.

9          The fact that they're all reimbursed a set amount

10   per delivery is reinforced by defendants' discovery responses.

11   And plaintiffs allege that that set amount is insufficient to

12   actually cover their driving expenses and, therefore, this

13   pushes their wages far below the minimum.

14         There have been dozens of similar cases throughout

15   the country, including cases against Pizza Hut corporate for

16   the exact same policy.  Pizza Hut corporate has changed the

17   unlawful policy.  V&J has not.

18         All of those cases have been certified.  Defendants

19   pointed out one case where I'm counsel against Papa John's

20   where conditional certification was preliminarily denied.

21   That was denied due to a technicality relating to franchisees

22   and whether or not the franchisees had the same policy as the

23   franchisor where the defendant put in information saying, you

24   know, according to them most of the stores don't reimburse

25   according to this methodology, and the judge on that case

1 instructed us go figure that out and let me know, which we've

2 now done.

3            Here there's no dispute and the evidence which is

4 unrefuted is that they all reimburse in the same way.  Cases

5 certifying are legion, including cases against Pizza Hut,

6 Inc..

7            I'm happy to go into more detail on this point.

8            **MAGISTRATE JUDGE PAYSON:** No, I've got a couple of

9 follow-up questions on that.  You indicated that everybody,

10 all putative class members here, were reimbursed at or near

11 the minimum wage.

12            What is the basis for that assertion?

13            **MR. FRIE-PEARSON:** So they're paid at or near the

14 minimum wage and then reimbursed a set amount.

15            **MAGISTRATE JUDGE PAYSON:** Okay, paid.  But how do

16 you know that, for example, delivery, pizza delivery drivers

17 in stores in Massachusetts are paid at or near the minimum

18 wage?

19            **MR. FRIE-PEARSON:** Sure.

20            **MAGISTRATE JUDGE PAYSON:** That may be, you know, my

21 assumption, but what's that based on?

22            **MR. FRIE-PEARSON:** That's a fair assumption and it's

23 based on a couple things.  It's based on declaration from the

24 two declarants who worked at two different stores.  It's based

25 on defendants' own lack of representations and

1 | representations.

2 | The defendant could have come out and said this

3 | case shouldn't be certified because we've got 33 stores where

4 | we pay the guys $15 an hour.  If that were the case, they

5 | would have said it.  They didn't say it.

6 | And so Your Honor can certainly draw the reasonable

7 | inference that it's the same.  Beyond that, every declaration

8 | they've said is we treat everyone uniformly, everyone signs

9 | the arbitration agreement.

10 | And further beyond that, I am not aware of any

11 | pizza company that pays its drivers significantly above the

12 | minimum wage, and I think that's basically been the case in

13 | most of these cases.  The case that I think is most analogous

14 | to this that I'm familiar with is *Bellaspica vs. PJPA*.  That

15 | was a case against a Papa John's franchisee.  We moved for

16 | conditional certification with two declarations, both from

17 | former drivers.

18 | We certainly didn't have declarations for all 50,

19 | 60 stores, whatever it was.  The Court inferred, as I think

20 | every other court has inferred, that the guys are making at or

21 | near the minimum.

22 | And I just think beyond that that's a merits issue.

23 | If they can show that there's members of the putative

24 | collective who are getting above the minimum wage, they can

25 | move to decertify or they can win.

1          But at this stage --

2          **MAGISTRATE JUDGE PAYSON:** Okay, but that wasn't my

3  question.  My question was what was the basis for that factual

4  assertion?  And I don't necessarily disagree with you that in

5  cases like this, and I don't mean like this in terms of Pizza

6  Hut delivery people, but FLSA cases that I've had a number of

7  motions like this in which there been factual assertions

8  made by the plaintiff, which have been specifically contested

9  by the defendant with factual assertions in support of the

10  contesting of factual either assertions, allegations or

11  assumptions made by the plaintiff.

12          You know, having said that, I also don't want the

13  record to be unclear that it is the plaintiff's burden.  I

14  recognize it is the plaintiff's burden to the extent that

15  Mr. Frei-Pearson's argument was the reason we say that is

16  because defendants have not asserted to the contrary and they

17  certainly are capable of doing that and, therefore, you should

18  infer that my assertion that everybody was paid at or near the

19  minimum is accurate.

20          I suspect that that would probably be legal error

21  if the Court were to say, yes, I'm relying on the fact that

22  the defendant did not put in an assertion to the contrary.

23          So I just want to say that my approach to this case

24  begins, of course, with the proposition that it is the

25  plaintiff's burden, the showing, it is as many courts have

1   recognized a relatively modest showing that's required of

2   similarly situated plaintiffs.

3           But I think in terms of your explanation to me

4   whether I might think, as a practical matter, that good

5   counsel such as we have here on the defendants' side might

6   well have put -- or might even have been expected to have put

7   in such a factual affidavit, I think it would be wrong for me

8   to say I am relying on the absence of such an affidavit to

9   credit your assertion.

10          Okay, go ahead.

11          **MR. FRIE-PEARSON:** Your Honor's point is very

12  well-taken.  And to that end we have declarations from two

13  delivery drivers in two different stores.

14          **MAGISTRATE JUDGE PAYSON:** Right.

15          **MR. FRIE-PEARSON:** And as Your Honor noted, it's a

16  very modest and light burden given that we have declarations

17  from delivery drivers in two different stores, and defendants'

18  repeated statements and declarations that drivers are treated

19  the same, right?  They all sign arbitration agreements.

20          The reasonable inference and the inference that

21  courts routinely draw in cases like this -- and that's why I

22  talked about PJPA where we had two drivers one store --

23          **MAGISTRATE JUDGE PAYSON:** Mm-hmm.

24          **MR. FRIE-PEARSON:**  -- and we certified a 50 to 60

25  store case --

1           **MAGISTRATE JUDGE PAYSON:** Okay.

2           **MR. FRIE-PEARSON:** -- is that they're all the same.

3           **MAGISTRATE JUDGE PAYSON:** I understand the argument.

4 Tell me what you know as a matter of fact with respect to the

5 ownership of all of these stores.  I think we're talking about

6 60 what?  68?

7           **MR. FRIE-PEARSON:** 68.

8           **MAGISTRATE JUDGE PAYSON:** 68, as well as the

9 management structure of the stores.  Whose employees you would

10 seek to put together as a collective action.

11           **MR. FRIE-PEARSON:** Your Honor's asking about the

12 three defendants?

13           **MAGISTRATE JUDGE PAYSON:** Well, I'm asking about

14 common ownership, common management, what you know about the

15 structure of both of those issues.

16           **MR. FRIE-PEARSON:** Sure.  So all 68 stores are owned

17 by the V&J entities.  There's V&J National Enterprises, V&J

18 United Enterprises, and V&J holding companies.

19           Defendants just put in a motion to dismiss on

20 Monday --

21           **MAGISTRATE JUDGE PAYSON:** Mm-hmm.

22           **MR. FRIE-PEARSON:** -- arguing that two of the

23 defendants are -- or one of the defendants is not a proper

24 defendant, and we'll respond to that in due course.

25           **MAGISTRATE JUDGE PAYSON:** Right.

1          **MR. FRIE-PEARSON:** That hasn't been raised in

2    connection with this motion.  In their answers they admit that

3    one of the entities is the employer and then they dispute the

4    merits issue as to whether or not the other entities are the

5    employers.

6          **MAGISTRATE JUDGE PAYSON:** Mm-hmm.

7          **MR. FRIE-PEARSON:** We alleged it in good faith in

8    our complaint and we will promptly respond to the motion to

9    dismiss.

10          So it's our understanding all of the guys -- let me

11    strike that.  Ms. Beebe and Mr. Spano understood they worked

12    for Pizza Hut and beyond that they understood they worked for

13    V&J.

14          **MAGISTRATE JUDGE PAYSON:** Do any of these V&J

15    entities own Pizza Hut stores in other states?

16          **MR. FRIE-PEARSON:** The class is in Massachusetts and

17    New York.

18          **MAGISTRATE JUDGE PAYSON:**  Right.

19          **MR. FRIE-PEARSON:** So they own Massachusetts and

20    New York stores.

21          **MAGISTRATE JUDGE PAYSON:** Okay.  And you're not

22    aware they own stores in Alabama and California, anywhere

23    else, Pizza Hut stores?

24          **MR. FRIE-PEARSON:** I'm not.  And if they were, I

25    would seek to include those stores in the class.

1    **MAGISTRATE JUDGE PAYSON:** Okay.  What about

2  management?

3    **MR. FRIE-PEARSON:** In terms of what entity manages

4  it?

5    **MAGISTRATE JUDGE PAYSON:** In terms of -- and you may

6  not know any of this information at this stage.  I'm curious

7  about whether these stores are broken up into separate

8  regions, you know, how flat is the management structure, how

9  vertical is the management structure, how many layers are

10  there, are there store managers, regional managers?

11    Do you know any of that information at this stage?

12    **MR. FRIE-PEARSON:** So we've served discovery

13  requests.  We've not received any documents.  We've received

14  written responses to our discovery requests.

15    I'm happy to speculate for Your Honor based on

16  having litigated against Pizza Hut corporate and Pizza Hut

17  franchisees, but I certainly wouldn't want to represent to

18  Your Honor that I know the answer to those questions right

19  now.

20    **MAGISTRATE JUDGE PAYSON:** All right. Okay, fair

21  enough.

22    **MR. FRIE-PEARSON:** And I would just say once we get

23  full discovery responses, I will know those answers.

24    **MAGISTRATE JUDGE PAYSON:** Okay.  All right, so

25  you've talked I think about the first point in your motion.

1  Obviously there's an issue with respect to arbitration

2  agreements and whether employees who signed arbitration

3  agreements should or should not be included in any putative

4  class and receive notice at this stage.

5           **MR. FRIE-PEARSON:** Sure.  So the vast majority of

6  cases, and I think in our last filing we had a string cite

7  that was about a page long, hold that this is a merits issue

8  that's inappropriate for consideration.

9           I respectfully think those cases are correct,

10  right?  Whether or not this arbitration agreement applies is

11  the quintessential merits issue that need not be reached now.

12  We will send notice to these people.

13          I've proposed staying the case with respect to

14  these people.  Or alternatively they can make their motion to

15  decertify it at any time.  They can move to compel arbitration

16  of these people, and that's typically how people handle this.

17  I actually think here the issue is before Judge Wolford.

18          But I think were this issue not being briefed

19  before Judge Wolford in a case that was filed close to a year

20  ago, this would be a good case for Your Honor to decide the

21  enforceability of arbitration.

22          I think, first of all, they have waived their right

23  to arbitrate.  Mr. Spano filed the case, Mr. Spano offered to

24  stipulate to individual arbitration and dismiss his case.

25  They refused.  Mr. Spano then went to triple A arbitration.

1   They refused to pay the triple A for a little over two months.

2          The triple A then closed the case after sending

3   three letters.  We then filed to reopen the case.  As soon as

4   we filed in court informing the Court about their failure to

5   pay triple A, they paid the triple A.

6          And their latest justification for not paying the

7   triple A is that the triple A charged them the wrong amount.

8   First of all, they could have communicated with the triple A

9   about that.  They didn't apparently do that.

10          But beyond that, the triple A did not charge them

11   the wrong amount.  Triple A rules explicitly say it's $1,500.

12   Their interpretation of their own contract is that it's

13   $1,300.  That's wrong.  And what that shows is these folks

14   have never arbitrated with anyone.

15          And the standard for determining a motion to compel

16   when you have a waiver issue is summary judgment, and the

17   standard is all inferences go in favor of the non-moving

18   party.

19          So were Your Honor to decide this issue now, we get

20   all the inferences.  What's the most reasonable inference,

21   right?  Someone that doesn't pay for two and a half months and

22   raises incorrect justifications for not paying is going to

23   fully participate in arbitration, or they're not?

24          You know, in the *Nadeau* case Judge Brescheti said

25   they're not.  And I would say should there be any disputed

1  factual issues which you can't resolve with giving us the

2  inference, which is denying it, the proper way to handle it is

3  a summary trial.  I mean, that is the standard for resolving

4  these issues.

5        I believe we win these issues right now, but on a

6  quintessential merits issue --

7        **MAGISTRATE JUDGE PAYSON:** Okay, let me ask you this

8  question.  Let's say I agree with you.  What different

9  discovery issues are going to be raised -- I mean, and what

10  different motions will be raised on the arbitration plaintiffs

11  than the non-arbitration agreement plaintiffs?

12        **MR. FRIE-PEARSON:** Sure.  Respectfully, it depends

13  on how much you agree with me.  If you agree with me right now

14  on the current record that all motions to compel arbitration

15  should be denied, there's nothing more to be done.

16        **MAGISTRATE JUDGE PAYSON:** Okay.  Let's assume I

17  don't agree with you that much.

18        **MR. FRIE-PEARSON:** Fair enough.  Let's assume the

19  Supreme Court doesn't ultimately agree with me also and

20  unconscionability isn't persuasive, which I think it is, if

21  that's the case I want -- and we've actually served discovery

22  requests in this case already and they include requests like I

23  want to see all of your documents relating to arbitration, we

24  want to know if you've ever arbitrated correctly, all

25  correspondence you've ever had with the triple A, all

1   documents that are basically going to show is this a one off

2   where they just missed the deadline for Mr. Spano or is this

3   the fact that they've never arbitrated?

4         And then when I have that, I want to take a

5   deposition of Mr. Scott, their deponent, and figure out what

6   happened here and they may want to go elsewhere.

7         Then there's one other really important point.

8         **MAGISTRATE JUDGE PAYSON:** Okay.

9         **MR. FRIE-PEARSON:** I want to see every single

10  arbitration agreement because right now it's a declaration

11  saying 60% of the class --

12        **MAGISTRATE JUDGE PAYSON:** No, I understand.

13        **MR. FRIE-PEARSON:** -- (inaudible) agreements.  I get

14  to explore that.  But it's not a lot --

15        **MAGISTRATE JUDGE PAYSON:** What is the relevance, and

16  it may be obvious to you, but explain it to me, of whether the

17  V&J defendant entities have or have not arbitrated in the

18  past?

19        **MR. FRIE-PEARSON:** Sure.  So it's our belief and

20  we're entitled to the inference based on the way things are,

21  they've never arbitrated.

22        Arbitration is not a thing that they actually give

23  their employees.  It's an excuse to get out of court.

24        **MAGISTRATE JUDGE PAYSON:** Okay.  If they haven't

25  arbitrated, let's say they've had agreements with employees in

1  the past.

2          **MR. FRIE-PEARSON:** Mm-hmm.

3          **MAGISTRATE JUDGE PAYSON:** And they have chosen not

4  to arbitrate a dispute that's arisen that is apparently

5  subject to the arbitration agreement.

6          What bearing does that have on a different

7  employee's -- enforceability of a different employee's

8  arbitration agreement?

9          **MR. FRIE-PEARSON:** Well, so it goes to the universe,

10 right?  If the universe is the only -- first of all, it would

11 be helpful to know did what happened to Mr. Spano happen to

12 other people?  Perhaps someone else submitted, you know, tried

13 to go to arbitration.

14         **MAGISTRATE JUDGE PAYSON:** Mm-hmm.

15         **MR. FRIE-PEARSON:** They didn't pay.  If that

16 happened four or five times, I would think the relevance would

17 be very clear, right?

18         If Mr. Spano's a one off, counsel would use that to

19 their -- that's very helpful.

20         **MAGISTRATE JUDGE PAYSON:** So the argument would be

21 if there are others that they chose not to arbitrate with at

22 some point, there are enough others that you ought to infer

23 that they never intend to arbitrate?  That these are illusory

24 agreements that they don't intend to abide by.

25         **MR. FRIE-PEARSON:** I think one can make that

1   inference right now based on Mr. Spano alone.  I think it's a

2   pretty damning record when you get three letters from the

3   triple A.

4           **MAGISTRATE JUDGE PAYSON:** Okay, but that's the

5   relevance of whether they've arbitrated with others?

6           **MR. FRIE-PEARSON:** Sure.  And any communications

7   relating to that, right?  What are the internal e-mails about

8   this?  What did they put down when they created their

9   arbitration policy?

10          And then I really want to get under oath what

11  happened.  I mean, the excuses we get are the triple -- the

12  amount triple A asked for wasn't right.  That's not true.

13          It was mailed to the wrong address.  That's not

14  true.  It was mailed to the address of their main company.

15          I mean, they knew about it.  They filed it in court

16  because they complained about the way we formatted our

17  arbitration complaint.  But yet they weren't paying the triple

18  A.

19          So I'm entitled to get those facts out if we're

20  gonna have a summary trial.  Again, I think on this record,

21  respectfully, I would urge both Your Honor and Judge Wolford

22  to just strike it down.

23          But if that's not where Your Honor is now, it's a

24  merits issue.  We should get discovery.  And they can make

25  their motion and we will oppose it.

1              **MAGISTRATE JUDGE PAYSON:** Okay, thank you.

2              **MR. FRIE-PEARSON:** Thank you very much, Your Honor.

3    Any other --

4              **MAGISTRATE JUDGE PAYSON:** Not at this moment.  I may

5    come back to you.

6              Okay, Ms. McClung.

7              **MS. MCCLUNG:** Thank you, Your Honor.  As has already

8    been mentioned today, we did file a motion to dismiss on

9    Monday both on -- for a lack of subject matter jurisdiction

10   over all the claims, lack of personal jurisdiction over one of

11   the defendants, and failure to state several claims.

12             We do believe that that motion should be decided

13   before the conditional certification motion, especially

14   inasmuch as it goes to the Court's jurisdiction.

15             **MAGISTRATE JUDGE PAYSON:** Okay.  Certainly you could

16   have filed a motion to dismiss at the outset of the case on

17   jurisdictional grounds.  You could have cross moved in

18   opposition to this motion.

19             So I appreciate that you may think that the Court

20   should hold off on this decision until the other decision is

21   reached, but the Court does not intend to do that.

22             **MS. MCCLUNG:** Obviously the Court has discretion in

23   this matter.

24             **MAGISTRATE JUDGE PAYSON:** Okay.

25             **MS. MCCLUNG:** As far as this motion goes, the motion

1  for conditional certification, while it is a modest burden,

2  it's been described as a modest burden, it's hardly a

3  non-existent burden.  And there is a requirement that a

4  factual showing be made and the Second Circuit in *Meyers* has

5  said that that factual showing cannot be satisfied by

6  unsupported assertions.

7         And I would argue that that's exactly what we have

8  here.  We have an affidavit from Beebe saying this is what

9  happened to me, I believe this happened to other delivery

10 drivers at my store; and a similar declaration from Spano who

11 worked at a store just a few miles away.

12        **MAGISTRATE JUDGE PAYSON:** There are a lot of cases

13 in which relief such as is sought here by plaintiff is granted

14 on the basis of one affidavit or two affidavits.  So this case

15 is not unique in that respect.

16        **MS. MCCLUNG:** That is true.  But a lot of those

17 cases involve affidavits with much more detailed assertions

18 such as I've spoken to my co-workers and they told me X.  It's

19 not I believe that there's a common policy.

20        If that's all --

21        **MAGISTRATE JUDGE PAYSON:** Okay.  Well, here it

22 strikes me that -- I mean, the facts -- the facts are not

23 complicated.  In many cases the facts not complicated, but you

24 know, the affidavit is relatively short.  It is, I think, also

25 a reflection of the fact that for purposes of this particular

1 | issue today, it's not a particularly complex set of factual

2 | allegations that are relevant.

3 |      The named plaintiff has said, you know, I was paid

4 | at or near the minimum wage.  My automobile reimbursement

5 | expenses were reimbursed at a flat rate of $1.35 per delivery.

6 |      **MS. MCCLUNG:** Mm-hmm.

7 |      **MAGISTRATE JUDGE PAYSON:** You know, I generally made

8 | four deliveries in an hour, et cetera, et cetera and, you

9 | know, doing the mathematical calculations, the compensation

10 | that she received was well under the minimum wage that she

11 | was -- the wage that she was required to be paid by a fairly

12 | substantial amount.

13 |      And Mr. Spano has essentially asserted the same

14 | thing in a different store owned by, you know, owned by the

15 | same franchisee who owned evidently 68 stores in the

16 | geographic region of New York and Massachusetts.

17 |      It seems, frankly -- oh, and you couple that with

18 | your admission through the proper discovery request, that

19 | pizza delivery drivers for this franchise were reimbursed or

20 | paid for their vehicle expenses at a flat rate.

21 |      **MS. MCCLUNG:** Mm-hmm.

22 |      **MAGISTRATE JUDGE PAYSON:** And I recognize that

23 | you've said that flat rate, you know, may have varied

24 | depending on area, geographic area or time, okay?

25 |      But it seems to me that it is only reasonable to

1  infer that other people who are working at the same stores as

2  the plaintiff and Mr. Spano at the same time that they were

3  working are being reimbursed for their vehicle expenses at the

4  same flat rate.

5        I think it would be unreasonable to assume anything

6  else.  So, you know, I thought about the argument that you

7  made that those assertions are couched in terms of I

8  believe --

9        **MS. MCCLUNG:** Mm-hmm.

10        **MAGISTRATE JUDGE PAYSON:** -- that my colleagues

11  received this, but I think even absent that, the Court would

12  be reasonable -- and I think it is the only reasonable

13  inference on the record before me, that people who worked with

14  Mr. Spano and Ms. Beebe were reimbursed at the same rate as

15  they were.

16        I think it would strain credulity to think anything

17  to the contrary.

18        **MS. MCCLUNG:** Mm-hmm.  Well, with respect to Mr.

19  Spano, the standard, of course, is to make a showing that

20  there's similarly situated people who could opt-in to the

21  class.

22        And with respect to Mr. Spano, he does have his own

23  case pending before this Court in a related action, so I

24  don't -- you know, defendants questioned --

25        **MAGISTRATE JUDGE PAYSON:** I read that argument and

1   I, you know, the first time I read it I thought this is a

2   silly argument, and then I was never disabused of that -- of

3   that view.

4            It is a sworn affidavit from somebody with

5   knowledge who has said in a different store I was paid exactly

6   in the same manner as Ms. Beebe.

7            **MS. MCCLUNG:** Mm-hmm.

8            **MAGISTRATE JUDGE PAYSON:** And the question before me

9   is:  Are there similarly situated plaintiffs who should be

10  permitted the opportunity to opt-in?  And Mr. Spano has sworn

11  under oath that he was reimbursed in the same rate at a

12  different store and he believes other people in that store

13  were reimbursed that same -- in that same manner.

14           Whether or not he's properly joined in this action

15  versus his own action, whether at some point there would ever

16  be consolidation of those actions, I think is not relevant to

17  the question of, you know, his affidavit just says I'm here,

18  I'm raising my hand to swear to tell the truth to tell you

19  that this went on at this second store.

20           **MS. MCCLUNG:** Okay.  You mentioned the admission and

21  the interrogatory responses with respect to the set rate.

22           **MAGISTRATE JUDGE PAYSON:** Mm-hmm.

23           **MS. MCCLUNG:** You know, it is worth noting that that

24  was a response just on behalf V&J employment.  The other

25  defendants were served with separate interrogatory responses

1 and served -- I'm sorry, separate interrogatory requests and

2 served separate responses that were not presented to the Court

3 on the record and did not contain that same statement.

4     **MAGISTRATE JUDGE PAYSON:** Okay.  But for purposes of

5 this question, isn't the relevance that one defendant who is

6 the employer has said there was a flat rate that applied to --

7 I mean not necessarily the same flat rate, but a -- all of the

8 pizza delivery drivers were reimbursed for vehicle expenses at

9 a flat rate, that that was company policy -- I mean, that was

10 franchise policy.

11     **MS. MCCLUNG:** Right, with respect to its employees.

12 But it's not the only defendant here, of course.  There are

13 three other defendants and they're seeking to get conditional

14 certification --

15     **MAGISTRATE JUDGE PAYSON:** But aren't you admitting

16 that that -- that entity is the employer of these pizza

17 delivery drivers?

18     **MS. MCCLUNG:** That entity employed Mr. Spano and

19 Ms. Beebe, that's correct.

20     **MAGISTRATE JUDGE PAYSON:** All right. Okay, let's see

21 what other questions -- you know, I will acknowledge that I

22 think that you've -- that you've argued vigorously and I, you

23 know, when you go back to your client and you tell your client

24 that you lost on these motions, which you're going to lose on

25 these motions, it's not because you didn't do a thorough and

1  vigorous job arguing everything you could argue.

2          I just think that it's an easy case in my

3  perspective.  This is an easy case.  I agree with you that a

4  modest showing doesn't mean no showing.

5          **MS. MCCLUNG:** Mm-hmm.

6          **MAGISTRATE JUDGE PAYSON:** And I have had cases where

7  I have said you're not there yet.  Go take some discovery, you

8  need to do some discovery.  Where there has been a question

9  of, you know, a very large national company with different

10 management structures and it's uncertain as to, frankly,

11 whether payment practices are as a result of a policy, is it a

12 company policy?  Is it a regional policy?  Who is setting the

13 policy?  You've only got one person in one restaurant or one

14 store.

15         So sometimes those arguments have merit, but I just

16 don't think this is one of those cases.  The fact that the

17 showing of similarly situated is described consistently as a

18 modest showing at this stage does mean something.

19         And I haven't struggled really at all with the

20 question of whether it's reasonable to infer that people who

21 worked at Mr. Spano's store and people who worked at

22 Ms. Beebe's store are properly, you know, part of a putative

23 class at this juncture.

24         You know, the only question that -- on that

25 particular issue that I have spent a fair amount of time

1  thinking about is whether it is reasonable to go the entire 68

2  stores.  And, you know, I probably spent a lot of time

3  thinking about it because I want to make sure that I have

4  given you absolutely as fair consideration as you deserve

5  because you've argued this strenuously.

6          You know, in the end I concluded where I started,

7  which is, yes, and recognizing that of course there are two

8  phases and there is potentially de-certification phase down

9  the road if it turns out that facts develop in a way that I do

10 not believe it is reasonable to infer that they will at this

11 time.

12         And, you know, I start with or the -- the basis on

13 which I reach that conclusion is we're talking about pizza

14 delivery drivers.  We have two in two different stores who say

15 I'm paid at or near the minimum wage.

16         There are a lot of cases that deal with pizza

17 delivery drivers.  I don't think it is unreasonable or beyond

18 the discretion afforded to a judge to say it's reasonable to

19 think that pizza delivery drivers, whether they're working in

20 Massachusetts or working in New York working for this

21 franchise, this Pizza Hut franchise, are also being paid at or

22 near the minimum wage.

23         Maybe that will prove to be incorrect as to, you

24 know, I would say a small number of employees, but I think it

25 is reasonable given the affidavits that we have, given the

1   work that they do and given the other litigations that have

2   already been filed and litigated involving pizza delivery

3   drivers to infer that you got drivers and that the base rate

4   of pay is at or near the minimum rate.

5              Now, what we know is that one of the entities as

6   employer has admitted that there was a flat rate.  It is

7   reasonable in my estimation to infer that pizza delivery

8   drivers were reimbursed a flat rate for their vehicle

9   expenses.

10             I recognize that the record does not yet establish

11  what that flat rate was at every point in time and in every

12  store, you know, in every location.  And I credit on this

13  record that -- and I assume that the defendant will be able to

14  show that there is -- that there is or there was some variance

15  between the rate at a particular point in time and perhaps a

16  store in Eastern Massachusetts versus Western New York.

17             The question is whether it is appropriate on this

18  motion to say the conditional certification should await that

19  discovery or not.  And the reason that I conclude that it

20  shouldn't is because the plaintiffs have laid out in their --

21  in their motion papers, probably the affidavit as well,

22  frankly, their mathematical calculations of how they arrive at

23  the conclusion that Ms. Beebe and Mr. Spano were not lawfully

24  paid.  And according to their calculations, they are far off

25  the rate of that they should have been paid.

1              Again, you know, that depends on some factual

2    assumptions about, you know, how many miles were driven and

3    how many stops they had and so forth.  And, you know, I,

4    frankly, plugged in some other numbers and said, okay, let's

5    assume somebody in Eastern Massachusetts is reimbursed, you

6    know, at a higher rate, you know, had fewer or more deliveries

7    and so forth.

8              And it seems to me reasonable to infer, because of

9    the significant variance between what Ms. Beebe and Mr. Spano

10   have said their duties entailed and what they should have been

11   paid compared to what they were paid, that there's still an

12   enormous amount of room there.

13             So even assuming that you're going to find pizza

14   delivery drivers at other stores at other points in time who

15   were reimbursed at a flat rate in excess of what Ms. Beebe and

16   Mr. Spano were, I still think it's reasonable to infer that

17   they likely have a claim for unlawful wages, that they weren't

18   paid the wage that they should have been paid.

19             So that's how I arrive at that.  You know, if it

20   were closer in terms of, you know, they're five cents off what

21   they should have been paid, then I might say go do some

22   discovery.

23             But those are the considerations that I'm relying

24   on to say at this juncture it is reasonable to assume that

25   the -- everybody who is working for the same franchise in two

1  states, 68 stores, are being paid in the same manner and that

2  there is a very strong likelihood if Ms. Beebe and Mr. Spano

3  have a claim, that they too have a claim.

4           And so I do find that the plaintiffs have satisfied

5  this showing, albeit modest, that they're required to make at

6  this time, that there may be some factual questions and

7  factual development that puts you in a position later on to

8  come in and say you know what?  This store is out or, you

9  know, these 24 people are out.

10          But we're not there yet, and I think in terms of

11 evaluating whether the plaintiffs have satisfied the standard

12 that they're required to satisfy at the first stage, they've

13 done that.  Okay?

14          **MS. MCCLUNG:** Okay.

15          **MAGISTRATE JUDGE PAYSON:** Now, why don't you go

16 ahead and tell me anything more you want to tell me with

17 respect to the arbitration agreement.

18          **MS. MCCLUNG:** Okay, thank you, Your Honor.  With

19 respect to the arbitration agreement, you know, the first

20 point I would make is Mr. Frei-Pearson talked a lot about the

21 Spano case and the Spano arbitration agreement and whether or

22 not they waived the right to arbitrate as against Spano.

23          And we obviously disagree about the merits of that

24 argument and that's been fully briefed in the Spano case.

25          **MAGISTRATE JUDGE PAYSON:** Right.

1       **MS. MCCLUNG:** But as far as how that impacts this

2  case, even if Mr. Frei-Pearson were to prevail on his

3  arguments in the Spano case, which we don't think he will, it

4  wouldn't mean that there's been a breach or a waiver of

5  separate arbitration contracts with separate employees.

6       If I opened a widget company and I used a standard

7  form contract with all of my customers and I breached that

8  agreement by sending widgets past the delivery date to one of

9  those customers, it wouldn't mean all my other customers can

10  sue me for breach of contract.

11       And I haven't seen any cases that hold -- cited by

12  either of the parties in our extensive briefing on the issue,

13  that hold that if a company breaches an arbitration agreement

14  against employee A it means that they can't arbitrate against

15  any of the other employees.

16       **MAGISTRATE JUDGE PAYSON:** Yeah, that's an

17  interesting argument and I think that is why I asked him, you

18  know, what is the relevance of that and I'm not prepared to

19  offer an opinion as to whether and under what circumstances I

20  would find that information relevant or not.

21       You know, if -- if a defendant had the right to

22  resort to and -- to resort to an arbitration mechanism for

23  resolving disputes and never did so, you know, over the course

24  of many years, you know, is it fair to assume that they -- I

25  don't know, I don't know.  That's an interesting question.

1          **MS. MCCLUNG:** Okay.  Another issue is the fact that

2  we have two federal statutes at play here.  We have the

3  Federal Arbitration Act --

4          **MAGISTRATE JUDGE PAYSON:** Mm-hmm.

5          **MS. MCCLUNG:** -- which creates a strong presumption

6  in favor of arbitration as the Supreme Court has held

7  repeatedly in recent years.

8          And we have the Fair Labor Standards Act, which

9  creates this mechanism for employees to opt-in.  And the

10 Second Circuit recently addressed the inner play of those two

11 statutes in *Sutherland vs. Ernst & Young*, which is 726 F.3d

12 290.  And in that case they were considering whether

13 arbitration agreements with class waivers were enforceable in

14 the FLSA context and held that there is the strong presumption

15 in favor of arbitration created by the FAA and that can only

16 be overridden by a contrary congressional command, and they

17 considered whether the FLSA has such a contrary congressional

18 command, whether it overrides the FAA.

19         And there, after looking at the very section of the

20 FLSA that permits people to opt-in to the statute and even

21 emphasizing that language, they determined that there was no

22 contrary congressional command in the FAA.

23         And given that ruling by the Second Circuit just

24 several years ago, I think if you consider whether it makes

25 more sense to send the notice, let people opt-in, do extensive

1  discovery with these opt-in plaintiffs and then decide this

2  issue, possibly a year or more later versus not sending the

3  notice upfront, resolving this issue and then if you find that

4  the arbitration agreement's unenforceable sending the notice

5  at that point that this decision mandates the latter because

6  the FAA does trump the FLSA including the opt-in provision.

7        **MAGISTRATE JUDGE PAYSON:** Okay.  Here is my view on

8  the arbitration agreement issue.  It does seem to me that this

9  particular dispute justifies, you know, a more nuanced

10  response with respect to the specific dispute presented by the

11  papers, which is should employees, pizza delivery drivers who

12  have signed an arbitration agreement receive notice and be

13  given an opportunity to opt-in at this stage, or should they

14  be excluded because they are not similarly situated to the

15  other pizza delivery drivers.

16        I side with the plaintiff.  I think it is that

17  there are -- that there are merits questions that are raised

18  by -- as to the enforceability of the agreements here.

19        Certainly there are some, you know, hotly contested

20  factual disputes before Judge Wolford as it pertains to Mr.

21  Spano, which may or may not have resonance and relevance to

22  other employees, I think that remains to be seen.

23        But I can certainly envision that if Judge Wolford

24  were to find -- were to write a decision that favored the

25  plaintiff, perhaps there would be something in that decision

1    that would have some relevance and resonance to other

2    employees' arbitration agreements.

3            The Second Circuit as far as I read their authority

4    says arbitration agreements are enforceable.  You know, there

5    was some language that says if we were writing on a clean

6    slate, you know, maybe we would have a different view of

7    things, but we're not.  We find them enforceable.

8            So I start with that proposition, that arbitration

9    agreements under controlling authority in the Second Circuit

10   may be enforceable.

11           So -- but we've got an issue pending, a case

12   pending before Judge Wolford in which she is addressing, at

13   least as to one plaintiff, Mr. Spano, the very arbitration

14   agreement that is at issue in this case.  And she's going to

15   issue a decision on that that may or may not have relevance to

16   the other pizza delivery drivers.

17           Secondly, the Supreme Court is going to hear this

18   dispute.  The Supreme Court conceivably may side with the

19   plaintiff and you may end up with an arbitration agreement

20   that you thought was enforceable that the Supreme Court says

21   is unenforceable.

22           I think it makes sense, unless both of you tell me

23   that you would prefer not to handle it this way, I think that

24   you should proceed with discovery that relates to everybody

25   and all the issues that Mr. Frei-Pearson has identified

1   relating to the arbitration agreements.

2            I would be in favor of setting those to the side

3   for the time being because I think it may be that you end up

4   taking a lot of discovery that is unnecessary depending on,

5   you know, what kind of a decision you get from Judge Wolford,

6   what the Supreme Court does.

7            You know, I'm uncomfortable saying that there

8   should be a hold on that discovery until there is a decision

9   because sometimes those things just take a lot longer than

10  anybody anticipates.

11           But I would say what I would like you to do is work

12  together to come up with a discovery plan that says this is

13  what we're going to do first and, you know, we're going to

14  come back to you at such and such a time, either after we've

15  done this or you can give me a date, and we'll let you know

16  where we are.

17           And then you'll give me your positions at that time

18  as to whether you should at that point go forward with

19  discovery relating to the arbitration agreements or whether it

20  would, in your estimation, still make sense to hold off on

21  that discovery because I don't think it makes sense to do a

22  whole -- I mean, there are a lot of people that are at issue

23  here, to do a whole lot of discovery relating to those

24  agreements if something happens and those people will

25  ultimately end up out of the case.

1          But in terms of the legal standards here and the

2    balancing of the interests which include the fact that with

3    each day that somebody's not given notice and an opportunity

4    to opt-in, they lose a potential claim.  And that's a very

5    real interest on the side of the plaintiffs.

6          So my view is I can accommodate the competing

7    interests by allowing the plaintiff to send notice to those

8    individuals, allow them to opt-in, but at the same time to say

9    to both parties, but probably this is more an interest of the

10   defendant, okay, you know, let's not go full bore on that

11   discovery because it may turn out that you don't need to, and

12   I would prefer that you not spend a lot of time in my own

13   discovery that may not be necessary.

14         So that's what I would like you to do is to sit

15   down and see if you can work out a discovery plan, which is

16   more than just saying, you know, fact discovery by X date, but

17   really talk about how you're going to do it.

18         And then, you know, make a proposal to me and if it

19   makes sense to both of you, I'm probably not going to have any

20   problem with it.  If there's a dispute, we can talk about

21   that.

22         So that's what I would like to do.

23         **MS. MCCLUNG:** If I could just raise one additional

24   issue with respect to the drivers?

25         **MAGISTRATE JUDGE PAYSON:** Sure.

1          **MS. MCCLUNG:** One concern that the defendants have

2     is if they engage with discovery on all the drivers, that they

3     would -- that would create an argument that they've waived

4     their right to assert the arbitration agreement with respect

5     to those drivers.

6          Defendants' plan had been if any of those drivers

7     opt-in, defendant would immediately move to compel, to

8     preserve its right.

9          **MAGISTRATE JUDGE PAYSON:** Mm-hmm.

10          **MS. MCCLUNG:** So how would you like us to deal with

11     that?  Would you still want us to move to compel upfront, but

12     still hold off on the discovery?  And if you don't want us to

13     move to compel upfront, will we have any assurances that

14     engaging in that discovery won't create a basis to argue that

15     we've waived?

16          **MAGISTRATE JUDGE PAYSON:** I think that's a fair

17     question and I didn't think about that.

18          **MS. MCCLUNG:** Mm-hmm.

19          **MAGISTRATE JUDGE PAYSON:** So I would say why don't

20     you all talk together about that issue and see if there's

21     something that you can propose that would -- that would

22     accommodate both of your interests.  If not, I have to think

23     some more about it.

24          But I understand what you're saying and I do see

25     the legal issues --

1          **MS. MCCLUNG:** Right.

2          **MAGISTRATE JUDGE PAYSON:** -- that are raised there.

3 I mean, certainly, yeah, I think we'll just leave it at that.

4 But that's a fair question.

5          **MS. MCCLUNG:** Okay.

6          **MAGISTRATE JUDGE PAYSON:** Okay.  And just on that

7 particular issue, I just want to note four cases.  There are

8 cases on both sides of the question that's raised with respect

9 to the arbitration agreements, there are -- there certainly is

10 some authority that supports the defendants' position, but in

11 terms of the authority that I have considered, I find more

12 persuasive at this stage the authority supporting the

13 plaintiff's position.

14          There are quite a number of cases really across the

15 country.  I'm simply going to cite four within the

16 Second Circuit and, again, that's not to say that there aren't

17 plenty of cases holding similarly in other districts, but

18 because there are different standards in different circuits, I

19 was looking at the Second Circuit.

20          So those cases that support the Court's ruling with

21 respect to including them at this stage would be *Racey*

22 *vs. Jay-Jay Cabaret*, 2016 WL 3020933, and in that case the

23 Court cited the language from *Romero vs. LaRevise Associates*,

24 courts have consistently held the existence of arbitration

25 agreements is irrelevant to collective action approval because

1  it raises a merits based determination, citing *Lloyd*

2  *vs. JP Morgan Chase*, the precedent in this district holds that

3  the existence of an arbitration agreement is irrelevant at the

4  conditional certification stage.  While the Court may

5  ultimately have to evaluate the validity of any purported

6  arbitration agreements, such inquiry will not prevent

7  conditional certification at this stage.  And as discussed in

8  greater detail below the Court also will not limit recipients

9  of the notice on this ground.

10         *Garcia vs. Chipotle Mexican Grill*, that is 2016 WL

11  6561302, and quoting from that decision as defendant concedes,

12  quote, courts have consistently held existence of arbitration

13  agreements is irrelevant to collective action approval because

14  it raises a merits based determination, quote, case law holds

15  that issues of fact surrounding arbitration agreements are

16  properly resolved at the second stage of the two step inquiry

17  when the Court will examine whether plaintiff and the opt-in

18  plaintiffs are in fact similarly situated.  Because it is

19  inappropriate for the Court to consider the effect of any

20  arbitration agreements at this time, the Court will allow

21  notice to be sent to employees hired after August 2014.

22         *Hernandez vs. Immortal Rise, Incorporated*, 2012 WL

23  4369746, quoting, similarly defendants request that

24  plaintiffs' proposed class exclude employees who signed

25  arbitration agreements with defendants.  While the Court may

1  eventually have to determine enforceability of these

2  agreements, quote, the existence of arbitration agreements is

3  irrelevant to class certification because it raises a merits

4  based determination, citing some different authority.

5  Therefore, the class shall not be restricted by any

6  arbitration agreements at this time.

7          And then finally *Romero vs. LaRevise Associates*,

8  968 F.Supp.2d 639.  So those are just some examples of

9  authority in the Second Circuit that stands for the

10  proposition that the question of enforceability of arbitration

11  agreements is a merits based question that is more

12  appropriately resolved at the second stage of the proceeding

13  rather than the first stage, and I find those cases to be

14  persuasive.

15          But by the same token, I think we can as a

16  practical matter deal with the fact that those plaintiffs have

17  some different or some additional factual questions and let's

18  put those to the side at least for the time being and then we

19  can revisit that down the road.

20          As far as discovery goes, assuming you can work out

21  the issue that you've identified that you're not going to be

22  subject to an argument that somehow the defendants have waived

23  their rights under the arbitration agreement if they do

24  anything other than immediately, as soon as somebody opts-in

25  seek to enforce -- compel arbitration.

1          **MS. MCCLUNG:** Right.

2          **MAGISTRATE JUDGE PAYSON:** I understand that's your

3 question.  Okay?

4          **MS. MCCLUNG:** Mm-hmm.

5          **MAGISTRATE JUDGE PAYSON:** All right. You had some

6 notice issues and we can talk about those -- let's see if I --

7 okay, relevant time period, I think the question was whether

8 it should be limited to Ms. Beebe's dates of employment or

9 extend beyond that, right?  That's the dispute?

10          **MS. MCCLUNG:** Right.

11          **MAGISTRATE JUDGE PAYSON:** Okay, and I find that the

12 cases -- the majority of the cases support the plaintiff's

13 position as to that issue.

14          60 to 90 days, 60 days, the plaintiffs cited a case

15 in which I said 90 days.  I can't, frankly, remember and I

16 didn't go back to check whether that was something that was

17 contested.  The facts of that case are considerably different

18 I think than the facts of this case and there have been other

19 cases in which I have found 60 days to be appropriate, cases

20 after Sherrill.

21          And I think that that is the more common time

22 period and I think 60 is appropriate here.

23          Telephone numbers and e-mail addresses, yes.  I

24 don't know if you're arguing over Social Security numbers.  I

25 can't remember whether that was this case or a different case.

1        **MS. MCCLUNG:** I believe they didn't request Social

2   Security numbers.

3        **MAGISTRATE JUDGE PAYSON:** Okay, I didn't think that

4   was at issue, but telephone numbers and e-mail addresses

5   should be provided so long as the plaintiff is bearing the

6   cost, if you want to send a follow-up post card, I think

7   that's within my discretion to allow you to do that.

8        And you're not asking that the defendant bear the

9   burden of the cost of the follow-up post card, correct?

10        **MR. FRIE-PEARSON:** That's correct.  Thank you, Your

11   Honor.

12        **MAGISTRATE JUDGE PAYSON:** Okay.

13        **MS. MCCLUNG:** Will the plaintiff provide the

14   contents of the post card for review prior to --

15        **MAGISTRATE JUDGE PAYSON:** Yes, I think that should

16   be provided and agreed on, yeah.

17        And filing of consent forms within five days,

18   that's not something that I have commonly seen.  So I'm

19   disinclined to require that.  I mean, if there comes a point

20   in time in which there is some showing that they're delaying

21   for some reason, I mean, they shouldn't delay in doing that

22   because there's some consequences to delay.

23        But if there's -- if there's any reason that I

24   should revisit that because there's a problem here, you'll let

25   me know.

1          **MS. MCCLUNG:** Mm-hmm, yes, Your Honor.

2          **MAGISTRATE JUDGE PAYSON:** I'm certainly open to

3    reconsidering that if there's a reason to do that, but I would

4    expect that Mr. Frei-Pearson is going to move quickly to file

5    all those opt-in notices.

6          **MR. FRIE-PEARSON:** That's correct, Your Honor.

7          **MAGISTRATE JUDGE PAYSON:** Okay.  You all need to

8    confer with respect to language in the notice, right?

9          **MS. MCCLUNG:** Mm-hmm.

10          **MAGISTRATE JUDGE PAYSON:** Okay.

11          **MS. MCCLUNG:** We have conferred.  We would like to

12    submit -- we weren't able to agree on all of the issues, so we

13    would like to submit -- or I guess he's already submitted, I

14    would like to submit a proposed alternative notice.

15          **MAGISTRATE JUDGE PAYSON:** Okay.  Confer on whatever

16    you have disputes about.  Have you already done that?

17          **MS. MCCLUNG:** Mm-hmm.

18          **MAGISTRATE JUDGE PAYSON:** Okay, so there's nothing

19    else that you need to talk about?

20          **MR. FRIE-PEARSON:** I believe that's correct.  I

21    believe -- are you solid on all the positions from this

22    afternoon?

23          **MS. MCCLUNG:** Correct, yeah.

24          **MAGISTRATE JUDGE PAYSON:** I mean, if there's

25    anything from my ruling today that makes you think you ought

1   to take another look at it, please do that.

2              And then sure, go ahead and submit to me your

3   position.  And I would ask you to make it as easy as you can

4   for me to identify, you know, it's this language where the

5   plaintiff wants this and I want this and here's the reason

6   rather than trying to just read them side-by-side and see

7   what's --

8              **MS. MCCLUNG:** Would a red line be helpful?

9              **MAGISTRATE JUDGE PAYSON:** Yeah, red line would be

10  helpful.

11             **MS. MCCLUNG:** Plaintiff's counsel provided me with a

12  Word version so I can just --

13             **MAGISTRATE JUDGE PAYSON:** Yeah, that's helpful

14  rather than sometimes I just have to look at them and try to

15  figure out what the differences are.  So if you can show me

16  what the differences are, I'd appreciate that.

17             And what were you thinking timewise?

18             **MS. MCCLUNG:** I could do it within a week.

19             **MAGISTRATE JUDGE PAYSON:** Okay, a week is fine.

20             Anything else we haven't talked about today?

21             **MS. MCCLUNG:** No, Your Honor.

22             **MAGISTRATE JUDGE PAYSON:** Okay.

23             **MR. FRIE-PEARSON:** During that one-week period, to

24  the extent that it delays the notice, plaintiffs would

25  respectfully ask for tolling.

1          **MAGISTRATE JUDGE PAYSON:** Okay.  You certainly can

2    make that argument to the District Court down the road, but I

3    mean, you've got the record that I have made the decision

4    today that I directed you to confer.

5          I understand you have conferred and I think a week

6    is a reasonable period of time.  You know, you may have some

7    other tolling arguments down the road so, you know, that's

8    something I think the District Court will determine.

9          **MR. FRIE-PEARSON:** The concern being that

10   potentially there's some --

11         **THE CLERK:** Sir, I need you to speak into a mic.

12         **MR. FRIE-PEARSON:** Sure, I apologize.  The concern

13   being that there's someone who had their last day of work

14   during the time period that's going to expire such that they

15   don't get notice during this week, so I just wanted to flag

16   that for Your Honor.

17         **MAGISTRATE JUDGE PAYSON:** Okay, that makes sense to

18   me.

19         **MR. FRIE-PEARSON:** Okay.

20         **MAGISTRATE JUDGE PAYSON:** Anything else?

21         **MS. MCCLUNG:** No, Your Honor.  Thank you.

22         **MAGISTRATE JUDGE PAYSON:** Okay, all right. Thank you

23   very much.  Have a nice day.

24         **MR. FRIE-PEARSON:** Thank you, Your Honor.

25         (**WHEREUPON**, the proceedings adjourned at 2:59 p.m.)

1                          *    *    *

2                  **CERTIFICATE OF TRANSCRIBER**

3

4          In accordance with 28, U.S.C., 753(b), I certify that

5    this is a true and correct record of proceedings from the

6    official electronic sound recording of the proceedings in the

7    United States District Court for the Western District of New

8    York before the Honorable Marian W. Payson on June 14th, 2017.

9

10   S/ Christi A. Macri

11   Christi A. Macri, FAPR-CRR
     Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25