# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

JACQUELINE BEEBE, individually and on
behalf of all others similarly situated,

        Plaintiff,

v.

V&J NATIONAL ENTERPRISES, LLC,
V&J UNITED ENTERPRISES, LLC, V&J
EMPLOYMENT SERVICES, INC., and
V&J HOLDING COMPANIES, INC.,

        Defendants.

Case No. 6:17-cv-06075-EAW-MWP

Class / Collective Action

**EXPEDITED RELIEF REQUESTED**

# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFF'S EMERGENCY MOTION FOR A
# PROTECTIVE ORDER, PRELIMINARY INJUNCTION,
# <u>TEMPORARY RESTRAINING ORDER, AND SANCTIONS</u>

{00287582 }

## <u>TABLE OF CONTENTS</u>

Table of Authorities ............................................................................................................. ii

Preliminary Statement......................................................................................................... 1

Facts .................................................................................................................................... 3

Arguments............................................................................................................................ 6

I.      V&J's Unlawful Retaliation Undermines The Purpose Of The FLSA And NYLL And
        Requires The Court To Issue A Robust Order To Protect V&J's Employees................... 6

II.     The Court Must Regulate V&J's Improper
        Communications With Putative Class And Collective Members............................8

III.    The Waiver V&J Forced Its Drivers To Sign Is Unenforceable...................................... 13

        A.      Plaintiff Meets The Standards For Preliminary Relief. ....................................... 16

                1.      Delivery Drivers Will Suffer
                        Irreparable Harm Without Preliminary Relief .......................................... 17

                2.      Plaintiff Will Almost Certainly Succeed On The Merits......................... 18

        CONCLUSION..................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abdul-Rasheed v. KableLink Commc'ns, LLC, No.,*
  No. 13-879, 2013 WL 6182321 (M.D. Fla. Nov. 25, 2013) .................................................. 1, 8

*Allen v. Suntrust Banks, Inc.,*
  549 F. Supp. 2d 1379 (N.D. Ga. 2008) ................................................................................... 17

*Armenta v. Dirty Bird Grp., LLC,*
  No. 13-4603, 2014 WL 3344287 (S.D.N.Y. June 27, 2014).................................................... 14

*Bailey v. Gulf Coast Transp., Inc.,*
  280 F.3d 1333 (11th Cir. 2002)............................................................................................... 16

*Barkley v. Pizza Hut of America, Inc.,*
  No. 14-00376 (M.D. Fla.) ......................................................................................................... 5

*Barrentine v. Arkansas-Best Freight Sys., Inc.,*
  450 U.S. 728 (1981)................................................................................................................. 14

*Belizaire v. RAV Investigative & Sec. Servs. Ltd.,*
  61 F. Supp. 3d 336 (S.D.N.Y. 2014)..................................................................................... 2, 3

*Belt v. Emcare, Inc.,*
  299 F. Supp. 2d 664 (E.D. Tex. 2003) ...................................................................... 12, 18, 20

*Billingsley v. Citi Trends, Inc.,*
  948 F. Supp. 2d 1287 (N.D. Ala. 2013) ................................................................................ 6, 7

*Brennan v. Bally Total Fitness,*
  198 F. Supp. 2d 377 (S.D.N.Y. 2002).............................................................................. 13, 14

*Brock v. Richardson,*
  812 F.2d 121 (3d Cir. 1987)....................................................................................................... 6

*Brown v. Mustang Sally's Spirits & Grill, Inc.,*
  No. 12-529, 2012 WL 4764585 (W.D.N.Y. Oct. 5, 2012)............................................ 6, 9, 10

*Castillo v. Hernandez,*
  No. 10-247, 2011 WL 1528762 (W.D.Tex. Apr. 20, 2011)..................................................... 12

*Chao v. Gotham Registry, Inc.,*
  514 F.3d 280 (2d Cir.2008)........................................................................................................ 6

*Cheeks v. Freeport Pancake House, Inc.,*
  796 F.3d 199 (2d Cir. 2015) .......................................................................... 6, 15

*Darrow v. WKRP Management, LLC,*
  No. 09-1613, 2012 WL 638119 (D. Co. Feb. 28, 2012) .......................................... 18

*DeMario Jewelry, Inc.,*
  361 U.S., 80 S. Ct. 332 ..................................................................................... 16

*Dondore v. NGK Metals Corp.,*
  152 F. Supp. 2d 662 (E.D. Pa. 2001) ...................................................................... 9

*Georgine v. Amchem Prods.,*
  160 F.R.D. 478 (E.D. Pa. Mar. 1, 1995) .................................................................. 9

*Gillman v. Chase Manhattan Bank,*
  73 N.Y.2d 1 (1988) ........................................................................................... 13

*Givvin v. Hishmeth Enterprises,*
  No. 56-2015 (Cit. Ct. Ventura Cnty., Cal.) ............................................................... 5

*Goody v. Jefferson County,*
  No. 09-437, 2010 WL 3834025 (D. Idaho Sept. 23, 2010).......................................... 11

*Gortat v. Capala Bros., Inc.,*
  No. 07-3629, 2009 WL 3347091 (E.D.N.Y. Oct. 16, 2009)........................................... 9

*Great Rivers Coop. v. Farmland Indus.,*
  59 F.3d 764, (8th Cir. July 12, 1995) ..................................................................... 17

*Gulf Oil Co. v. Bernard,*
  42 U.S. 89 (1981) ............................................................................................... 9

*Hacket v. ADF Restaurant Investments, LLP,*
  No. 15-1688 (D. Md.) ........................................................................................... 5

*Haffer v. Temple University of Commonwealth System of Higher Education,*
  115 F.R.D. 506 (E.D. Pa. Mar. 3, 1987) ................................................................... 9

*Hoffman-La Roche Inc. v. Sperling,*
  493 U.S. 165 (1989) ............................................................................................. 6

*Hoffman v. Poulsen Pizza LLC,*
  No. 2:15-cv-2640 (D. Kan.) .................................................................................... 5

{00287582 }

*In re Currency Conversion Fee Antitrust Litig.*,
  361 F. Supp. 2d 237 (S.D.N.Y. 2005).........................................................................9, 10, 11, 18

*In re Estate of Friedman*,
  407 N.Y.S.2d 999 (2d Dep't 1978) .............................................................................13

*In re School Asbestos Litigation*,
  842 F.2d 671 (3d Cir. 1988)..........................................................................................9

*McGraw-Hill Companies, Inc. v. Ingenium Technologies Corp.*,
  364 F. Supp. 2d 352 (S.D.N.Y. 2005) ........................................................................16

*Mei Xing Yu v. Hasaki Rest., Inc.*,
  319 F.R.D. 111 (S.D.N.Y. 2017).................................................................................14

*Mullins v. City of New York*,
  626 F.3d 47 (2d Cir. 2010)..........................................................................................17

*Myers v. Meml. Health System Marietta Meml. Hosp.*,
  No. 15-2956, 2017 WL 1407572 (S.D. Ohio Apr. 20, 2017) .............................17, 19

*N. Atl. Instruments, Inc. v. Fred Haber*,
  188 F.3d 38 (2d Cir. 1999)..........................................................................................16

*Pacheco v. Aldeeb*,
  127 F. Supp. 3d 694 (W.D. Tex. 2015) ..........................................................11, 12, 20

*Pearson v. Summit Restaurant Group, LLC*,
  No. 37-02015 (Cir. Ct. of San Diego Cnty., Cal.) .......................................................5

*Perez v. J&L Metal Polishing, Inc.*,
  No. 15-1957, 2016 WL 7655766 (C.D. Cal. May 9, 2016) ..........................................8

*Perez v. Jasper Trading, Inc.*,
  No. 05-1725, 2007 WL 4441062 (E.D.N.Y. Dec. 17, 2007) .......................................8

*Plaintiff's Brief in Support of Motion*,
  No. 05-7280, 2005 WL 3654895 (S.D.N.Y. Nov. 4, 2005) ........................................18

*Prince v. QS America, Inc.*,
  No. 1:15-cv-2033-TWT (N.D. Ga.) ..............................................................................5

*Ralph Oldsmobile, Inc. v. Gen. Motors Corp.*,
  No. 99-4567, 2001 WL 1035132 (S.D.N.Y. Sept. 7, 2001)....................................9, 10

*Recinos-Recinos, et al. v. Express Forestry, Inc.,*
  No. 05-1355, 2006 WL 197030 (E.D. La. Jan. 24, 2006) ....................................... 11

*Redzepagic v. Hammer,*
  2017 WL 780809 (S.D.N.Y. Feb. 27, 2017) ............................................................ 14

*Reuters Ltd. v. United Press Int.l, Inc.,*
  903 F.2d 904 (2d Cir.1990) ................................................................................... 16

*Ridgeway v. Nabors Completion & Prod. Servs. Co.,*
  139 F. Supp. 3d 1084 (C.D. Cal. 2015) ................................................................... 13

*Sloan v. Ameristar Casinos, Inc.,*
  No. 12-112, 2013 WL 5548316 (D. Colo. Oct. 8, 2013) ........................................ 20

*Spencer Trask Software and Info. Servs., LLC v. RPost Int'l Ltd.,*
  190 F. Supp. 2d 577 (S.D.N.Y. 2002) .................................................................... 16

*Stransky v. HealthONE of Denver, Inc.,*
  929 F. Supp. 2d 1100 (D. Colo. 2013) .................................................................... 10

*Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.,*
  60 F.3d 27 (2d Cir. 1995) ....................................................................................... 16

*Tony & Susan Alamo Found. v. Sec'y of Labor,*
  471 U.S. 290 (1985) ................................................................................................ 14

*Urtubia v. B.A.Victory Corp.,*
  857 F. Supp. 2d 476 (S.D.N.Y. 2012) .................................................................... 10

*Wang v. Chinese Daily News, Inc.,*
  236 F.R.D. 485 (C.D. Cal. 2006) ............................................................................ 11

*Wenner Media LLC v. Northern & Shell North America Ltd.,*
  No. 05-1286, 2005 WL 323727 (S.D.N.Y. Feb. 8, 2005) ....................................... 16

*Williams v. Securitas Sec. Servs. USA, Inc.,*
  No. 10-7181, 2011 WL 2713741 (E.D. Pa. July 13, 2011) ............................... 7, 9, 20

*Zamboni v. Pepe W. 48th St. LLC,*
  No. 12-3157, 2013 WL 978935 (S.D.N.Y. Mar. 12, 2013) .......................... 1, 6, 9, 20

*Zellagui v. MCD Pizza, Inc.,*
  59 F. Supp. 3d 712 (E.D. Pa. 2014) ........................................................................ 18

**Statutes**

29 U.S.C. § 215(a)(3) ........................................................................................................ 8

29 U.S.C. § 216(b) .............................................................................................. 14, 15, 16

N.Y. Lab. L. § 215(2) ......................................................................................................... 2

**Rules**

Federal Rule of Civil Procedure 65 ............................................................................... 16

**Other Authorities**

17 Am. Jur. 2d, Contracts § 271 ................................................................................... 13

Federal Judicial Center, Manual for Complex Litigation § 21.12, at 248 (4th ed. 2004) .............. 9

## PRELIMINARY STATEMENT

Plaintiff Jacqueline Beebe has recently learned that, without informing the Court or Plaintiff's counsel, Defendants V&J National Enterprises, LLC, V&J United Enterprises, LLC, V&J Employment Services, Inc., and V&J Holding Companies, Inc. ("V&J"), a Pizza Hut franchisee, systematically forced delivery drivers to attend meetings at V&J corporate headquarters where high level V&J management made the drivers sign a document purporting to waive their right to participate in this litigation in exchange for $250.00.   Moreover, V&J appears to be engaging in other tactics to intimidate drivers from joining the lawsuit, and drivers who did opt in to the lawsuit now testify that their colleagues fear they will be fired if they join the case.

Of course, V&J's conduct is grossly unlawful and "amounts to unlawful retaliation" under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").  *Abdul-Rasheed v. KableLink Commc'ns, LLC*, No. 13-879, 2013 WL 6182321, at *1 (M.D. Fla. Nov. 25, 2013).  It well established that "courts have a duty to restrict communications [to putative class and collective members] that are potentially coercive" and to take appropriate remedial actions if an employer engaged in coercive communications with putative class and collective members.  *Zamboni v. Pepe W. 48th St. LLC*, No. 12-3157, 2013 WL 978935, at *2-4 (S.D.N.Y. Mar. 12, 2013).  V&J's actions have more than triggered that duty.

If this Court does not take decisive action, V&J will be rewarded for its scheme to minimize its liability for its systematic minimum wage violations and minimize the effect of this Court's conditional certification Order, Dkt. No. 41, by preventing (below) minimum wage workers from exercising their rights under the FLSA and NYLL.   Accordingly, Plaintiff respectfully requests that this Court enter an order (1) enjoining V&J from any further

communications with members of the putative class and collective regarding this litigation; (2) enjoining V&J from retaliating against putative class members who join the lawsuit; (3) directing the issuance of a corrective notice to advise putative class and collective members about their right to join the lawsuit even if V&J claims they waived their right to join the lawsuit, and that any attempts to discourage them from joining or to retaliate against them for joining the lawsuit are unlawful and will not be tolerated by this Court; (4) requiring V&J to post corrective notice for 30 days at all Pizza Hut-branded stores that employ members of the putative class and collective;[1] (5) authorizing Plaintiff's counsel to mail at V&J's expense the corrective notice to putative class and collective members; (6) extending the opt-in period until 60 days after the period of posting of the corrective notices; (7) directing that all V&J delivery drivers be given paid time-off to attend meetings with Plaintiff's counsel to address any misleading information V&J may have conveyed to discourage or prevent their participation in the lawsuit (these meetings are necessary to mitigate the improprieties caused by V&J's meetings with drivers); (8) requiring V&J to deposit all money it allocated to improperly pay off class members into an interest-bearing account to be distributed at the conclusion of the litigation (the money may be returned to V&J in the event V&J prevails); (9) holding that the waivers V&J forced putative class and collective members to sign are unenforceable; (10) granting Plaintiff leave to amend her complaint to add claims for retaliation;[2] (11) ordering V&J to produce all documents

---

[1] V&J recently sold several of its stores to another (or several other) Pizza Hut franchisees. *See* Declaration of Eric De Carr ("De Carr Decl.") ¶ 2; Declaration of Eric Zemaitis ("Zemaitis Decl.") ¶ 2.

[2] "The NYLL makes broad remedies available in retaliation cases." *Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 361 (S.D.N.Y. 2014). "Under the NYLL, a court may "order all appropriate relief," including injunctive relief, equitable relief, and "an award of lost compensation and damages." N.Y. Lab. L. § 215(2)(a). The NYLL further directs that "[t]he court shall award liquidated damages to every employee aggrieved under this section, in addition to any other remedies permitted by this section," up to $10,000." *Id.* (quoting N.Y.

associated with its campaign of retaliation, including, but not limited to, the "waivers" it forced drivers to sign; (12) requiring V&J to pay Plaintiff's attorneys' fees and costs associated with bringing this motion; and (13) ordering any other relief this Court deems just and proper.

## FACTS

Plaintiff alleges that V&J violates the FLSA and NYLL by systematically under-reimbursing its delivery drivers for their expenses, thereby pushing their wages far below the minimum.  Dkt. No. 1.  V&J opposed Plaintiff's conditional certification motion, and, as the Court noted at oral argument, V&J did "a thorough and vigorous job arguing everything [it] could argue."  *See* June 14, 2017 Transcript at 22:24-23:1, attached as Exhibit A to the Declaration of Jeremiah Frei-Pearson ("Frei-Pearson Decl.").  After the Court granted conditional certification, V&J delayed the issuance of notice by seven weeks -- using a series of transparent delay tactics (such as arguing that orders requiring V&J to produce "addresses" did not require the production of addresses with ZIP codes) to avoid promptly providing Plaintiff with a class list, and ultimately requiring the Court to issue three separate orders directing Defendants to produce the list.  *See* Dkt. Nos. 41, 53, 55.[3]

After conditional certification was granted, V&J requested that the Parties agree to stay Defendants' discovery deadlines so the Parties could focus on mediation.  Frei-Pearson Decl. ¶ 3.  Plaintiff agreed, based on Defendants' representation that it would mediate in good faith and provide all data necessary for a productive mediation.  *Id.* at ¶ 4.  Defendants, however, still have not provided key basic data necessary to productively mediate.  *Id.*

---

Lab. L. § 215(2)(1)).

[3] V&J now opposes Plaintiff's motion for equitable tolling based on its failure to timely provide a class list.  *See* Dkt. No. 76.

V&J never sought authorization from Plaintiff's counsel or the Court to communicate with members of the putative class and collective. Frei-Pearson Decl. ¶ 5. Nonetheless, V&J used the time it purchased by refusing to provide a class list, and then by staying discovery, to set up a campaign to prevent delivery drivers from exercising their right to join this lawsuit.

V&J's Director of Human Resources, Wendy Garagozzo, set up meetings on a store-by-store basis between delivery drivers and V&J's upper management. *See* Declaration of Sophia Turner ("Turner Decl.") ¶ 5; Email from Wendy Garagozzo, Exhibit A to Turner Decl. Delivery drivers were required to attend the meetings. *See* De Carr Decl. ¶ 3. At least some of the meetings took place at V&J's corporate headquarters, a location the drivers had only previously seen when receiving orientation; and the meetings were conducted by Ms. Garagozzo, an individual whom the drivers understood had the power to fire them. *See* Zemaitis Decl. ¶¶ 3, 5.

At those mandatory meetings, V&J systematically discouraged delivery drivers from opting into this litigation. *See* Turner Decl. ¶¶ 6-7; Declaration of Jacqueline Beebe ("Beebe Decl.") ¶ 5; De Carr Decl. ¶ 4; Declaration of Matthew Conklin ("Conklin Decl.") ¶ 4; Zemaitis Decl. ¶¶ 4-8; Declaration of Kenneth Edlin ("Edlin Decl.") ¶ 3. At the meetings, V&J made the drivers sign a waiver prepared by V&J wherein they waive their right to participate in this lawsuit, purportedly in exchange for $250. *See* Beebe Decl. ¶ 6; De Carr Decl. ¶ 4; Conklin Decl. ¶ 4; Edlin Decl. ¶ 3; Zemaitis Decl. ¶¶ 4-8. V&J did not give the drivers a copy of the waiver that it made them sign. Zemaitis Decl. ¶ 9.

Of course, Defendants' communications with the drivers were highly misleading. Although only one driver who attended a mandatory meeting has been willing to testify, he clearly testifies that V&J did not advise him of his right to consult with Plaintiff's counsel. Zemaitis Decl. ¶ 10. There is no reason to believe V&J advised any drivers of their legal rights.

V&J certainly did not advise the drivers that the per-driver recovery for drivers in a similar settlement averaged approximately $1,764 per driver -- an amount significantly above the $250 V&J paid drivers to provide a fig leaf of consideration when forcing them to waive their rights to obtain full compensation for V&J's minimum wage violations.[4]  Nor is there any evidence or reason to believe that V&J advised any drivers of their right not to meet with V&J about this litigation or that it is unlawful for V&J to retaliate in any way against drivers who joined this litigation.

Aside from these mandatory meetings, managers have separately advised drivers not to participate in the lawsuit.  *See* Declaration of Anthony Richardson ("Richardson Decl.) ¶ 5. Thus, not surprisingly, current delivery drivers are afraid to join the lawsuit.  Beebe Decl. ¶ 7; Turner Decl. ¶ 5; Edlin Decl. ¶ 4.  By way of example, as a former delivery driver at a V&J store in Syracuse attests, none of the drivers still employed at that store joined the lawsuit because, after meeting with upper management, the drivers fear V&J would fire them if they joined the lawsuit.  *See* Turner Decl. ¶ 9; *see also* Beebe Decl. ¶¶ 7-8.

Plaintiff's counsel's ability to gather testimony about Defendants' unlawful retaliation is limited because delivery drivers and other V&J employees fear further retaliation if they testify about V&J's attempts to discourage participation in this lawsuit.  *See* Beebe Decl. ¶ 7; Turner Decl. ¶ 5; Edlin Decl. ¶ 4.  In fact, Plaintiff's counsel have obtained declarations from eight V&J drivers about Defendants' unlawful campaign, but all of those drivers are former V&J drivers --

---

[4] *See Prince v. QS America, Inc.*, No. 1:15-cv-2033-TWT (N.D. Ga.) (approximately $2,021 per driver); *Hacket v. ADF Restaurant Investments, LLP*, No. 15-1688 (D. Md.) (approximately $2,000 per driver); *Hoffman v. Poulsen Pizza LLC*, No. 2:15-cv-2640 (D. Kan.) (approximately $1,886 per driver); *Pearson v. Summit Restaurant Group, LLC*, No. 37-02015 (Cir. Ct. of San Diego Cnty., Cal.) (approximately $1,850 per driver); *Givvin v. Hishmeth Enterprises*, No. 56-2015 (Cit. Ct. Ventura Cnty., Cal.) (approximately $1,731 per driver); *Barkley v. Pizza Hut of America, Inc.*, No. 14-00376 (M.D. Fla.) (approximately $1,094 per driver).

and only one delivery driver who attended V&J's mandatory meeting was willing to testify on the record.  *See* Declaration of Antonino B. Roman ¶ 5.  Mr. Zeimatis, the only declarant who was employed by V&J when the meetings took place, testifies that he only "now feel[s] free to testify about how V&J tried to pressure me into giving up my legal rights" because "V&J no longer owns the [Pizza Hut] store where I work."  Zeimatis Decl. ¶ 12.

## ARGUMENTS

### I.  V&J's Unlawful Retaliation Undermines The Purpose Of The FLSA And NYLL And Requires The Court To Issue A Robust Order To Protect V&J's Employees

As the Second Circuit has observed, the FLSA "is a uniquely protective statute" and "'the Supreme Court consistently has interpreted the Act liberally and afforded its protections exceptionally broad coverage.'"  *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (2016) (quoting *Chao v. Gotham Registry, Inc.,* 514 F.3d 280, 285 (2d Cir.2008)); *see also, e.g.*, *Brock v. Richardson*, 812 F.2d 121, 123 (3d Cir. 1987) ("The Fair Labor Standards Act is part of the large body of humanitarian and remedial legislation enacted during the Great Depression, and has been liberally interpreted.").

"The purposes of § 216(b) actions under the FLSA [are to] (1) reduc[e] the burden on plaintiffs through the pooling of resources, and (2) efficiently resolv[e] common issues of law and fact that arise from the same illegal conduct."  *Billingsley v. Citi Trends, Inc.*, 948 F. Supp. 2d 1287, 1299 (N.D. Ala. 2013), *aff'd,* 560 F. App'x 914 (11th Cir. 2014) (unpublished) (citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).  Courts routinely issue orders providing relief when employers impinge on these goals.  *See, e.g.*, *Brown v. Mustang Sally's Spirits & Grill, Inc.,* No. 12-529, 2012 WL 4764585, at *2 (W.D.N.Y. Oct. 5, 2012) (restricting potentially coercive communications); *Zamboni*, 2013 WL 978935, at *3 (finding that "courts have a responsibility to restrict communications that are potentially coercive or misleading");

*Williams v. Securitas Sec. Servs. USA, Inc.,* No. 10-7181, 2011 WL 2713741, at *2-3 (E.D. Pa. July 13, 2011) (barring employer communications designed to prevent employees from participating in a wage and hour lawsuit).

As Judge Bowdre held in striking arbitration agreements waiving employees' right to participate in a pending FLSA collective action that an employer had employees sign after the case was conditionally certified, the FLSA's goals are "defeated" if a court allows an employer to take actions "that are designed and used to prevent employees from vindicating their rights in an FLSA collective action." *Billingsley* , 948 F. Supp. at 1299.  Judge Bowdre went further:

> The court truly believes it would be a derogation of the court's responsibility if it were to approve employer conduct like that in this case [where an employer had employees waive their right to participate in a pending FLSA collective action] that specifically undercuts the Congressional intent behind creating the FLSA collective  action process for aggrieved employees, and the court does not take such action lightly.

*Id.* at 1300.

V&J's conduct is substantially worse than the conduct at issue in *Billingsley* and a multitude other cases where courts have taken remedial actions against employers who discouraged participation in FLSA cases.  Here, V&J has been preventing delivery drivers from joining the lawsuit by, *inter alia*, requiring delivery drivers to attend meetings to discuss the lawsuit and forcing them to sign written waivers of their right to join the lawsuit -- all without informing them of their right to counsel.  Because these acts prevent V&J's employees from participating in this collective action, V&J's acts would render the FLSA toothless if V&J's conduct is not remedied.  Court intervention is required to preserve V&J workers' FLSA rights in the face of V&J's actions.

In addition, V&J's conduct also violates the FLSA and the NYLL's anti-retaliation provision. Conduct intended to "prevent [employees] from pursuing their FLSA rights collectively . . . amounts to unlawful retaliation under" the FLSA and NYLL. *Abdul-Rasheed*, 2013 WL 6182321, at *1 (citing 29 U.S.C. § 215(a)(3)); *see also Perez v. J&L Metal Polishing, Inc.*, No. 15-1957, 2016 WL 7655766, at *6 (C.D. Cal. May 9, 2016) (holding that even those employees who did not directly experience retaliation "are suffering adverse employment actions because [the employer's] intimidation tactics are reasonably likely to deter his employees from participating in the investigation"); *accord Perez v. Jasper Trading, Inc.*, No. 05-1725, 2007 WL 4441062, at *3 (E.D.N.Y. Dec. 17, 2007) ("In view of the breadth of the language of the NYLL's anti-retaliation provision and given its remedial purpose," "a plaintiff proves retaliation if . . . [defendant's allegedly retaliatory act] might have dissuaded a reasonable worker from making or supporting a charge.") (quotations omitted).

V&J's conduct is obviously intended to prevent workers from pursing their FLSA claims collectively and their NYLL claims on a class basis (and from pursuing their claims individually). By forcing workers to waive their right to participate in this case and by having management systematically tell the workers not to participate, V&J made a mockery of the FLSA and NYLL's anti-retaliation provisions. Respectfully, this Court must issue a strong Order to protect V&J's minimum-wage workers' rights under the FLSA and NYLL, to hold V&J accountable, and to deter other employers from engaging in similar lawlessness in the future.

## II.     The Court Must Regulate V&J's Improper Communications With Putative Class And Collective Members

Although employers have First Amendment rights to communicate, courts have a responsibility to restrict communications with members of putative classes and collectives that are potentially coercive or misleading or otherwise threaten to alter the litigation's status. *See,*

{00287582 }

*e.g.,* *Gulf Oil Co. v. Bernard,* 42 U.S. 89, 104 (1981) ("We recognize the possibility of abuses in class-action litigation, and agree . . . that such abuses may implicate communications with potential class members."); *In re School Asbestos Litigation,* 842 F.2d 671, 680 (3d Cir. 1988) ("Misleading communications to class members concerning the litigation pose a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally."); *In re Currency Conversion Fee Antitrust Litig.,* 361 F. Supp. 2d 237, 253 (S.D.N.Y. 2005) (finding that "when a defendant contacts putative class members for the purpose of altering the status of a pending litigation, such communication is improper without judicial authorization"); Fed. R. Civ. P. (23)(d).[5] "A court's power to restrict communications

---

[5] *See also Brown*, 2012 WL 4764585, at *2 (restricting potentially coercive communications); *Zamboni*, 2013 WL 978935, at *3 (finding that "courts have a responsibility to restrict communications that are potentially coercive or misleading"); *Gortat v. Capala Bros., Inc.,* No. 07-3629, 2009 WL 3347091, at *5 (E.D.N.Y. Oct. 16, 2009), *report and recommendation adopted*, No. 07-3629, 2010 WL 1423018 (E.D.N.Y. Apr. 9, 2010), *aff'd*, 568 Fed. Appx. 78 (2d Cir. 2014) (unpublished) (finding defendants' unsupervised communications improper if "sought to limit the rights of putative class members without the benefit of court-approved notice about the pending class action"); *Ralph Oldsmobile, Inc. v. Gen. Motors Corp.*, No. 99-4567, 2001 WL 1035132, at *3 (S.D.N.Y. Sept. 7, 2001) (finding that "[a] unilateral communications scheme ... is rife with potential for coercion. '[I]f the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive"); *In re School Asbestos Litigation*, 842 F.2d 671, 680 (3d Cir. 1988) ("misleading communications to class members concerning the litigation pose a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally); *Williams*, 2011 WL 2713741, at *2-3 (barring employer communications designed to prevent employees from participating in a wage and hour lawsuit); *Dondore v. NGK Metals Corp.,* 152 F. Supp. 2d 662, 666 (E.D. Pa. 2001) (prohibiting defense counsel from interviewing putative class members because "If defense counsel or counsel otherwise adverse to their interests is allowed to interview and take statements from often unsophisticated putative class members without the approval of counsel who initiated the action, the benefits of class action litigation could be seriously undermined."); *Georgine v. Amchem Prods.*, 160 F.R.D. 478, 489-502 (E.D. Pa. Mar. 1, 1995) (prohibiting communications with class members); *Haffer v. Temple University of Commonwealth System of Higher Education*, 115 F.R.D. 506, 507-14 (E.D. Pa. Mar. 3, 1987) (issuing sanctions where the defendant engaged in unsupervised communications with putative class members); *see also* Federal Judicial Center, Manual for Complex Litigation § 21.12, at 248 (4th ed. 2004) ("Direct communications with class members ... whether by plaintiffs or defendants, can lead to abuse.").

between parties and potential class members appl[ies] even before a class is certified." *Ralph Oldsmobile Inc.*, 2001 WL 1035132, at *2.

Chief Judge Skretny explained that a defendant's communications with current employee putative class members are inherently troubling:

> Where defendants are also the employers of potential class action plaintiffs, the "workplace relationship with current employees, and their knowledge of sensitive information about current and former employees, put them in a position to exercise strong coercion in connection with potential class members' decisions regarding participation in [the] litigation." [*Urtubia v. B.A. Victory Corp.*, 857 F.Supp.2d 476 (S.D.N.Y. 2012)] Thus, "when a defendant is in an ongoing, current business relationship with members of a putative class, for example an employment relationship, it may be prudent to preempt the defendant's ability to use the relationship and pressure class members to make factual concessions or settle claims." *Austen,* 831 F.Supp.2d at 568.

*Brown*, 2012 WL 4764585, at *3.

Thus, courts routinely deem communications inherently coercive where there is an ongoing and unequal business or employment relationship between the parties. *See In re Currency Conversion Fee Antitrust Litigation,* 361 F. Supp. 2d at 253 (holding arbitration clauses proffered by defendant credit card companies during litigation coercive and unenforceable where "the potential class consisted of cardholders who depended on defendants for their credit needs"); *Ralph Oldsmobile,* 2001 WL 1035132, at *4 (ordering corrective notice to class members because the relationship between class members and defendant presented a clear potential for abuse in communications even though there was no evidence of actual abuse); *Stransky v. HealthONE of Denver, Inc.*, 929 F. Supp. 2d 1100, 1109 (D. Colo. 2013) ("[A]n employment relationship exists between the parties, which itself may increase the risk that communications will have a coercive effect. . . . Because the meetings held . . . were mandatory

and held by the Opt-in Plaintiff's employer, the context carries an inherent possibility of coercion").[6]

Of course, communications are coercive and highly improper where, like here, the defendant misleads putative class members or interferes with their participation in pending litigation. *See In re Currency Conversion Fee Antitrust Litigation,* 361 F. Supp. 2d at 254 ("[D]efendants' unsupervised communications were improper because they sought to eliminate putative class members' rights in this litigation."); *Goody v. Jefferson County,* No. 09-437, 2010 WL 3834025, at *3 (D. Idaho Sept. 23, 2010) (requiring corrective notice where defendant's communications with potential class members caused confusion about right to join suit).

For example, in *Pacheco v. Aldeeb,* 127 F. Supp. 3d 694 (W.D. Tex. 2015), like here, Judge Ezra conditionally certified a FLSA collective.   Following conditional certification, defendants discouraged their employees from joining the lawsuit.   *See id.* at 696.   Judge Ezra enjoined defendants from any *ex parte* communications with class members regarding the case; ordered that corrective notice be posted at defendants' places of business and mailed to class members at defendants' expense; extending the opt-in period by 45 days; and sanctioned defendants by requiring them to pay plaintiffs' fees related to defendants' discouragement.   *Id.* at 699.   Judge Ezra held:

> Courts "have found a need to limit communications with absent class members where the communications were misleading, coercive, or an improper attempt to . . . encourag[e] class members

---

[6] *See also Recinos-Recinos, et al. v. Express Forestry, Inc., et al.*, 2006 WL 197030, *12 (E.D. La. Jan. 24, 2006) (granting protective order for plaintiffs and noting that the relationship between plaintiff employees and defendant employer was inherently coercive warranting a restraint on communication regardless of whether there was evidence that a particular abuse occurred); *Wang v. Chinese Daily News, Inc.*, 236 F.R.D. 485, 490 (C.D. Cal. 2006) ("Unsupervised communications urging individuals to opt out, by their very nature, are likely to produce distorted statements on the one hand and the coercion of individuals on the other. This is especially true where the parties are engaged in an ongoing employer-employee relationship.").

> not to join the suit." *Belt v. Emcare, Inc.*, 299 F.Supp.2d 664, 667-68 (E.D. Tex. 2003). "Speech between parties with an ongoing business relationship is inherently conducive to coercive influence, and an employer-employee relationship is a salient example of this type of ongoing business relationship." *Castillo v. Hernandez*, No. EP-10-CV-247-KC, 2011 WL 1528762, at *3 (W.D.Tex. Apr. 20, 2011) (citations omitted).

*Id.* at 698.

Here, V&J's communications are far worse than in most cases where courts found defendants improperly communicated with class and collective members. Defendants' communications (1) were initiated without the prior review or approval of this Court, Plaintiff, or Plaintiff's counsel; (2) are inherently and unduly coercive given the existing employment relationship between V&J and the putative class members -- and this is exacerbated by the fact that the meetings took place at V&J headquarters and were conducted by V&J management whom the drivers knew could terminate them; (3) seek to prevent delivery drivers from joining the lawsuit; and (4) are obviously misleading in that V&J does not adequately disclose or explain several important facts to potential opt-in plaintiffs.[7] Instead of disclosing the truly relevant facts, V&J falsely stated that it is in the delivery drivers' best financial interest not to join the lawsuit. These one-sided communications provide ample justification for immediate judicial intervention to safeguard the rights of the putative class members.

---

[7] Key facts V&J failed to communicate to the drivers include: (a) the subject matter of the pending litigation; (b) the delivery drivers' automatic inclusion in the pending class action or their right to participate in the certified collective action; (c) the opt-in plaintiffs' representation by counsel in the lawsuit; (d) the delivery drivers' adverse relationship with V&J in the lawsuit; (e) V&J's motive for discouraging delivery drivers from joining the lawsuit; and (f) the effect of receiving the financial award on their right to sue or the validity of any release of claims executed after receiving the financial award.

Moreover, there is no evidence that V&J has tried to mitigate the dangers of its communication with employees by informing delivery drivers of their right to (1) refuse to speak with V&J about this case, (2) communicate with Plaintiff's counsel, and (3) join or actively participate in this litigation without any fear of retaliation or adverse employment action by V&J. Thus, V&J's communications with putative class members here are far more troubling than the communications prohibited in other cases and must be restricted to protect the integrity of the judicial process.

### III.    The Waiver V&J Forced Its Drivers To Sign Is Unenforceable

It is hornbook law that "[a]n unconscionable contract is unenforceable."  17 Am. Jur. 2d, Contracts § 271.  "A contract is unconscionable where there is 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'"  *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 382 (S.D.N.Y. 2002) (quoting *Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 10 (1988)).  In other words, an unconscionable contract is generally both procedurally and substantively unconscionable, but a court should take a "flexible" approach and examine all relevant facts.  *Id.*  (quoting *In re Estate of Friedman*, 407 N.Y.S.2d 999, 1009 (2d Dep't 1978)).  The purported "contract" V&J forced its drivers to sign is grossly unconscionable.

The contract is procedurally unconscionable in that the drivers were not given meaningful choice -- instead they were made to go to corporate headquarters and simply told to sign a waiver -- without being advised of their right to consult with counsel.  As many courts have held, this is procedurally unconscionable.  *See, e.g.*, *Brennan*, 198 F. Supp. 2d at 383-84; *Ridgeway v. Nabors Completion & Prod. Servs. Co.*, 139 F. Supp. 3d 1084, 1088 (C.D. Cal. 2015).

The contract is substantively unconscionable in that the drivers are settling their claims for pennies on the dollar without the advice of counsel.  *See, e.g.*, *Brennan*, 198 F. Supp. 2d at 384 (a contract that denies an employee the right to pursue a pending court action is substantively unconscionable).  There may be many other reasons why the contracts are substantively unconscionable, but Defendants have not provided copies of the contracts to any of the drivers or their counsel.

Moreover, the contract is also unenforceable because it forces drivers to give up their FLSA rights.  The FLSA specifically grants workers the right to proceed in a collective action against their employer (29 U.S.C. § 216(b)) and "the [Supreme] Court has 'held that FLSA rights cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate.'"  *Mei Xing Yu v. Hasaki Rest., Inc*., 319 F.R.D. 111, 112 (S.D.N.Y. 2017) (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981)).  "Indeed, the statute's protections apply even 'to those who would decline its protections,' as employers might otherwise 'be able to use superior bargaining power to coerce employees . . . to waive their protections under the Act.'"  *Id.* (quoting *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 302 (1985); ellipsis in original); *see also Redzepagic v. Hammer*, No. 14-9808, 2017 WL 780809, at *3 (S.D.N.Y. Feb. 27, 2017) ("Recognizing that there are often great inequalities in bargaining power between employers and employees, Congress made the FLSA's provisions mandatory; thus, the provisions are not subject to negotiation or bargaining between employers and employees."); *Armenta v. Dirty Bird Grp., LLC*, No. 13-4603, 2014 WL 3344287, at *1 (S.D.N.Y. June 27, 2014) ("The FLSA places strict limits on an employee's ability to waive claims for fear that

employers would coerce employees into settlement and waiver.") (internal quotations and citation omitted).  V&J cannot make its employees sign a contract waiving their rights.

In fact, the law is clear that V&J may not settle its employees' FLSA claims without approval by a court or by the Department of Labor.  As the Second Circuit explained, requiring "judicial approval [of FLSA settlements] furthers the purposes of the FLSA, because [w]ithout judicial oversight, . . . employers may be more inclined to offer, and employees, even when represented by counsel, may be more inclined to accept, private settlements that ultimately are cheaper to the employer than compliance with the [FLSA]." *Cheeks*, 796 F.3d at 205-06 (internal citations and quotations omitted).  This is exactly what V&J tried to do when it forced its employees to waive their minimum wage rights.  V&J's waiver is unenforceable absent court approval, which V&J has not sought and could never obtain given the manifest unfairness of the waiver V&J forced on its drivers.  V&J may not enforce the waiver.

## IV. Immediate Preliminary Relief Is Required To Prevent V&J From Further Coercing Deliver Drivers And To Prohibit Retaliation

V&J's conduct prevents drivers from exercising their rights under the FLSA and NYLL and engenders a reasonable belief among delivery drivers that V&J will retaliate against them if they exercise their rights to participate in this litigation.  This Court must grant immediate relief to protect the workers V&J is victimizing.

Injunctive relief prohibiting retaliation is available under the FLSA.  As the Eleventh Circuit explained:

> Because the language providing for equitable relief for violations of the antiretaliation provision is not restrictive, but expansive ("including without limitation employment, reinstatement, [and] promotion," 29 U.S.C. § 216(b) (emphasis added)), we do not find "a necessary and inescapable inference" that Congress intended to restrict courts from issuing preliminary injunctions to preserve the status quo during the pendency of the lawsuit.  The antiretaliation provision was meant "to foster a climate in which compliance with the substantive provisions of the

> Act would be enhanced" by protecting employees who come forward with complaints. *DeMario Jewelry, Inc.,* 361 U.S. at 292, 80 S. Ct. 332. Employees may be much less likely to stand up for their substantive rights under the statute if they know that months or years will pass before a court can act to halt prohibited intimidation by their employer. When an employee has demonstrated a likelihood of success on the merits and satisfied the other requirements for preliminary injunctive relief, allowing for such relief to put the employee back in the position he held before the employer's retaliatory conduct is consistent with § 216(b)—it is a form of equitable relief that effectuates the purposes of the antiretaliation provision.

*Bailey v. Gulf Coast Transp., Inc.,* 280 F.3d 1333, 1337 (11th Cir. 2002).

## A.     Plaintiff Meets The Standards For Preliminary Relief.

Where a preliminary injunction is sought to preserve the status quo, a motion for injunctive relief requires a showing that the moving party will suffer irreparable harm absent the injunction and that either (1) the moving party is likely to succeed on the merits or (2) there are serious questions relative to the merits and the balance of hardships tips in favor of the moving party.[8] *McGraw-Hill Companies, Inc. v. Ingenium Technologies Corp.,* 364 F. Supp. 2d 352, 355 (S.D.N.Y. 2005); *N. Atl. Instruments, Inc. v. Fred Haber,* 188 F.3d 38, 43 (2d Cir. 1999).

"The standard for granting a temporary restraining order and a preliminary injunction pursuant to Rule 65 of the Federal Rules of Procedure are identical.'" *Spencer Trask Software and Info. Servs., LLC v. RPost Int'l Ltd.*, 190 F. Supp. 2d 577, 580 (S.D.N.Y. 2002).

To satisfy the threshold requirement of irreparable harm or injury, "a movant need not demonstrate its certainty," but only that such harm is "likely" to occur. *Wenner Media LLC v. Northern & Shell North America Ltd.,* No. 05-1286, 2005 WL 323727, at *3 (S.D.N.Y. Feb. 8, 2005) (citing *Reuters Ltd. v. United Press Int.l, Inc.*, 903 F.2d 904, 907 (2d Cir.1990).

---

[8] Prohibiting retaliation against drivers and preventing further coercive meetings will maintain the status quo, wherein drivers have the freedom to decide for themselves whether to participate in this action. Nonetheless, given V&J's egregious behavior, Plaintiff also satisfies the "clear or substantial likelihood of success on the merits" requirement that applies when "an injunction will alter, rather than maintain, the status quo." *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33-34, 37 (2d Cir. 1995).

"[H]earsay evidence may be considered by a district court in determining whether to grant a preliminary injunction." *Mullins v. City of New York*, 626 F.3d 47, 51-52 (2d Cir. 2010).

### 1. Delivery Drivers Will Suffer Irreparable Harm Without Preliminary Relief

Here, unless an injunction is issued, V&J's unilateral communications will cause irreparable harm "because if potential class members are intimidated and afraid to join the lawsuit, they cannot vindicate their rights under the FLSA." *Myers v. Meml. Health System Marietta Meml. Hosp.*, No. 15-2956, 2017 WL 1407572 at *5 (S.D. Ohio Apr. 20, 2017) (noting that the "potential for coercion and irreparable harm is more likely when the class opponent and the class members are on an 'ongoing business relationship'"); *see also Great Rivers Coop. v. Farmland Indus.*, 59 F.3d 764, (8th Cir. July 12, 1995) ("Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal. The damage from misstatements could well be irreparable."); *Allen v. Suntrust Banks, Inc.*, 549 F. Supp. 2d 1379, 1383 (N.D. Ga. 2008) (holding that plaintiffs whose employer tries to force them to waive FLSA rights suffer irreparable harm requiring a preliminary injunction). Preliminary relief can avert this harm, whereas V&J will suffer no cognizable harm if the injunction is ordered.[9]

---

[9] The balance of hardships clearly weighs in Plaintiff's favor. *See Myers*, 2017 WL 1407572 at *6 (finding no substantial harm to defendants and that public interest was served through a preliminary injunction "only narrowly infringing on Defendants' free speech rights, while still ensuring that class members have the opportunity to opt in to the lawsuit").

### 2.      Plaintiff Will Almost Certainly Succeed On The Merits

Plaintiff is clearly likely to succeed on the merits, both with respect to the retaliation claim she intends to add to an amended complaint and with respect to the underlying case.[10] Plaintiff's retaliation claim is clear:  V&J is unlawfully forcing drivers not to participate in this lawsuit -- conduct that is a gross violation of the FLSA and NYLL.

Courts have not hesitated to issue preliminary relief -- whether in the form of a temporary restraining order or preliminary injunction -- in similar instances. In *Bragg v. Terrier Claims Services*, No. 05-7280 (S.D.N.Y.), defendants "used unlawful guerilla tactics to defeat the [pending] class and collective action application," including informing them they had to sign the agreements to keep their jobs, and unauthorized communications with plaintiff and absent class members.  *See* Plaintiff's Brief in Support of Motion, 2005 WL 3654895, at *1 (S.D.N.Y. Nov. 4, 2005).  Citing *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 669 (E.D. Tex. 2003), and *In re Currency Conversion Fee Antitrust Litigation*, the plaintiff moved for a Protective Order, Temporary Restraining Order, Injunction and Sanctions against defendants. *See id.* at *5.  The

---

[10] Plaintiff's underlying claim is clear.  V&J employs delivery drivers subject to the FLSA and New York Labor Law.  V&J under-reimbursed its delivery drivers for job-related vehicle expenses (e.g., costs of gasoline, vehicle depreciation, insurance, maintenance, and repairs) by paying them a low flat rate of about $1.35 per delivery instead of the standard reimbursement rate ("IRS rate") of over $0.50 per mile for businesses and employees to use in computing the minimum deductible costs of operating a vehicle for business purposes.  *See Zellagui v. MCD Pizza, Inc.*, 59 F. Supp. 3d 712, 717 (E.D. Pa. 2014) ("When minimum wage law requires an employer to reimburse an employee for using the employee's vehicle for the employer's benefit, the employer should reimburse the employee at the IRS per mile rate or keep detailed records of the employees' expenses to justify another reimbursement rate.").  As a result, delivery drivers had to dip into their minimum wage to pay for their vehicle expenses out of pocket. *See Darrow v. WKRP Management, LLC*, No. 09-1613, 2012 WL 638119 at *3 (D. Co. Feb. 28, 2012) ("[I]f the employer makes an unreasonable approximation [of a delivery driver employee's vehicle expenses], the employee can claim that his wage rate was reduced because of expenses that were not sufficiently reimbursed.").  The effects and propriety of paying pizza delivery drivers a flat rate, as opposed to the IRS rate, have been litigated four times in arbitration proceedings, and in each, an award was issued in favor of the claimant to make up for the under-reimbursement. *See* Frei-Pearson Decl. ¶¶ 6-7.  Plaintiff expects the outcome of this case to be no different.

Court issued a temporary restraining order, pending hearing on the preliminary injunction motion, "prohibiting defendants and/or defendants' counsel form engaging in any type of contact or communication with any employees . . . regarding [the] action, and prohibiting defendants and/or defendants' counsel from taking or threatening to take any retaliatory measures against plaintiff or employees . . . for their involvement in [the] action." *See Bragg v. Terrier Claims Services*, No. 05-7280, Memorandum to the Docket Clerk (S.D.N.Y. Nov. 21, 2005).[11]

In *Myers v. Meml. Health System Marietta Meml. Hosp.*, No. 15-2956, 2017 WL 1407572 (S.D. Ohio Apr. 20, 2017), the Court granted plaintiffs' Motion for Preliminary Injunction, issuing a narrowly tailored temporary restraining order to only prohibit defendants from communicating directly or indirectly with putative class members about the lawsuit. *Id.* at *7. Plaintiffs had shown that defendants "coerced, intimidated, and harassed potential class members, creating an 'atmosphere of fear' such that they were afraid to join the lawsuit." *Id.* at *2. The Court found that plaintiffs had established they were likely to win the merits of their substantive claims, and that there was sufficient harm to limit defendants' unilateral communications with putative class members. *Id.* at *4 (noting that "if potential class members are intimidated and afraid to join the lawsuit, they cannot vindicate their rights under the FLSA . . .") *Id.* at *5 (noting that the "potential for coercion and irreparable harm is more likely when the class opponent and the class members are on an 'ongoing business relationship'").

The same reasons for granting preliminary relief in those cases are present here. Plaintiff is entitled to an injunction to prohibit V&J from discouraging or trying to prevent delivery drivers from joining the lawsuit and retaliating against those who do, and to address any misleading information V&J may have communicated to delivery drivers to discourage or

---

[11]The case settled before the preliminary injunction hearing.

19

prevent them from joining the lawsuit.  In sum, V&J's actions are clearly improper, and warrant the entry of the immediate relief.[12]

## CONCLUSION

For all the reasons stated above, Plaintiff respectfully requests that the Court enter an order (1) enjoining V&J from any further communications with members of the putative class and collective regarding this litigation; (2) enjoining V&J from retaliating against putative class members who join the lawsuit; (3) directing the issuance of a corrective notice to advise putative class and collective members about their right to join the lawsuit even if V&J claims they waived their right to join the lawsuit, and that any attempts to discourage them from joining or to retaliate against them for joining the lawsuit are unlawful and will not be tolerated by this Court; (4) requiring V&J to the post corrective notice for 30 days at all Pizza Hut-branded stores that

---

[12] *See, e.g.*, *Zamboni*, 2013 WL 978935, at *2-4 (requiring corrective notice alerting employees that they have not waived any FLSA rights and extending the period within which, armed with that knowledge, employees may opt in to this lawsuit); *Sloan v. Ameristar Casinos, Inc.*, No. 12-112, 2013 WL 5548316, at *1 (D. Colo. Oct. 8, 2013) (requiring corrective action and sanctioning a defendant employer for communicating with putative class members to "undermine the court-approved notice and intentionally intended to frighten and dissuade former employee putative class members from joining the class"); *Williams*, 2011 WL 2713741, at *3 (communication "clearly designed to thwart unfairly the right of its employees to make an informed choice as to whether to participate" in pending litigation justified the issuance of corrective notice); *Pacheco*, 127 F. Supp. 3d at 699 (enjoining *ex parte* communications with class members regarding the subject matter of the action *pendente lite*, ordering the mailing of a corrective notice at the expense of defendants and its posting at defendants' places of business in a location visible to employees, extending the opt-in period by 45 days from the date of the Order, and sanctioning defendants by ordering them to pay plaintiffs' reasonable attorneys' fees incurred in bringing the motion); *Belt*, 299 F. Supp. 2d at 669-70 (restricting *ex parte* communications with the absent class members and by way of sanctions, ordering the dissemination of a corrective notice, at the employer's expense and on its letterhead, to all potential class members to whom the employer directed its improper communications, ordering the employer to bear plaintiffs' fees and costs, and allowing all potential class members to whom the employer directed its improper communications an additional 30 days to opt into the putative class, reserving the right to allow putative class members to opt in post-verdict, "depending on Defendants' ongoing conduct and/or any continuing harm from the employer's improper communications").

employ members of the putative class and collective; (5) authorizing Plaintiff's counsel to mail at V&J's expense the corrective notice to putative class and collective members; (6) extending the opt-in period until 60 days after the period of posting of the corrective notices; (7) directing that all V&J delivery drivers be given paid time-off to attend meetings with Plaintiff's counsel to address any misleading information V&J may have conveyed to discourage or prevent their participation in the lawsuit (these meetings are necessary to mitigate the improprieties caused by V&J's meetings with drivers); (8) requiring V&J to deposit all money it allocated to improperly pay off class members into an interest-bearing account to be distributed at the conclusion of the litigation (the money may be returned to V&J in the event V&J prevails); (9) holding that the waivers V&J forced putative class and collective members to sign are unenforceable; (10) granting Plaintiff leave to amend her complaint to add claims for retaliation; (11) ordering V&J to produce all documents associated with its campaign of retaliation, including, but not limited to, the "waivers" it forced drivers to sign; (12) requiring V&J to pay Plaintiff's attorneys' fees and costs associated with bringing this motion; and (13) ordering any other relief this Court deems just and proper.

Respectfully submitted,

Dated: September 28, 2017        */s/ Jeremiah Frei-Pearson*
                                 Jeremiah Frei-Pearson
                                 Finkelstein, Blankinship,
                                 Frei-Pearson & Garber, LLP
                                 445 Hamilton Ave. Suite 605
                                 White Plains, NY  10601

                                 *Counsel for Plaintiff, Collective and Putative Class*