UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JACQUELINE BEEBE,

                  Plaintiff,                    Civil Action No.
                                            6:17-cv-06075-EAW

       v.

V&J NATIONAL ENTERPRISES, LLC, et al.,

                  Defendants.

---

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER, PRELIMINARY INJUNCTION AND SANCTIONS

BOND, SCHOENECK & KING, PLLC
Sharon M. Porcellio, Esq.
Michael E. Hickey, Esq.
Avant Building – Suite 900
200 Delaware Avenue
Buffalo, New York 14202-2107
Telephone:  (716) 416-7000
Fax:  (716) 416-7001

Katherine S. McClung, Esq.
Theresa Rusnak, Esq.
350 Linden Oaks, Third Floor
Rochester, New York 14625
Telephone:  (585) 362-4700
Fax:  (585) 362-4701

*Attorneys for Defendants*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND ............................................................................................................... 2

ARGUMENT ..................................................................................................................... 6

 I. Legal Standard ................................................................................................. 6

 II. Plaintiff's Allegations of Impropriety are Based on Hearsay, Speculation,
  Conjecture, and Otherwise Inadmissible Evidence ........................................ 7

 III. Defendants' Communications with Delivery Drivers Concerning the Execution
  of a Release of NYLL and Unjust Enrichment Claims Were Lawful and Court
  Intervention is Unwarranted ......................................................................... 10

  A. There Was Nothing Improper About the Releases, and Delivery Drivers Were
   Not Misled or Coerced ....................................................................... 10

  B. The Cases Cited by Plaintiff Are Inapposite ...................................... 13

 IV. Defendants Did Not Engage in Retaliation in Violation of the FLSA or NYLL ....... 14

 V. The Releases Executed by Delivery Drivers Are Enforceable ................... 15

  A. The Releases Are Not Procedurally Unconscionable ......................... 16

  B. The Releases Are Not Substantively Unconscionable ........................ 19

 VI. There is No Need or Basis for a Preliminary Injunction ............................ 20

CONCLUSION ................................................................................................................ 22

### TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abdul-Rasheed v. Kablelink Communs., LLC*,
  2013 U.S. Dist. LEXIS 159632, at \*12-16 (M.D. Fla. Nov. 7, 2013) ....................................15

*Austen v. Catterton Partners*,
  831 F. Supp. 2d 559, 565 (D. Conn. 2011) ................................................................................ 7

*Barreto v. JEC II, LLC*,
  2017 U.S. Dist. LEXIS 116091, fn.9 (S.D.N.Y. 2017) ............................................................ 19

*Billingsley v. Citi Trends, Inc.*,
  560 F. App'x 914 (11th Cir. 2014) .......................................................................................... 13

*Bobryk v. Durand Glass Mfg. Co., Inc.*,
  2013 LEXIS 145758, at \*10-11 (D.N.J. Oct. 9, 2013) .............................................................. 6

*Brennan v. Bally Total Fitness*,
  198 F.Supp. 2d 377 (S.D.N.Y 2002) ......................................................................... 16, 17, 19

*Brown v. Mustang Sally's Spirits and Grill, Inc.*,
  2012 U.S. Dist. LEXIS 144722, at \*6 (W.D.N.Y. Oct. 5, 2012)......................................... 7, 11

*Canale v. Colgate-Palmolive Co.*,
  2017 U.S. Dist. LEXIS 4061, at \*12 (S.D.N.Y. Jan. 10, 2017)........................................... 6, 10

*Dial Corp. v. News Corp.*,
  2015 U.S. Dist. LEXIS 168363, at \*11-12 ................................................................................ 7

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S.20, 22, (1991)............................................................................................................. 17

*Green v. Plantation of La., LLC*,
  2012 U.S. Dist.. LEXIS 146488, at \*13 (W.D. La. Sept. 17, 2012)......................................... 10

*Gulf Oil Co. v. Bernard*,
  452 U.S. 89, 101-102 (1981) ............................................................................................... 6, 11

*In re Currency Conversion Fee Antitrust Litigation*,
  361 F. Supp.2d 237 (S.D.N.Y. 2005) ...................................................................................... 13

*Isaacs v. OCE Bus. Servs.*,
  968 F. Supp. 2d 564, 570 (S.D.N.Y. 2013) ............................................................................. 17

*Mak v. Oska Japanese Rest.*, Inc.,
  2013 U.S. Dist. LEXIS 198198, at \*7-8 (S.D. Tex. Sept. 16, 2013) ......................................... 9

*Nayal v. HIP Network Servs. IPA, Inc.*,
  620 F. Supp. 2d 566, 571 (S.D.N.Y 2009) ................................................................. 15, 16, 19

*Pacheco v. Aldeeb*,
  127 F. Supp. 3d 694 (W.D. Tex. 2015) .................................................................................... 13

*Perez v. J&L Metal Polishing, Inc.*,
 2016 WL 7655766, at *6 (C.D. Cal. May 9, 2016) .................................................................. 15

*Perez v. Jasper Trading, Inc.*,
 2007 U.S. Dist. LEXIS 103814, at *5-7 (E.D.N.Y. Nov. 27, 2007) ....................................... 15

*State v. Wolowitz*,
 96. A.D.2d (3d Dep't 1983) ..................................................................................................... 16

*Stern v. eSpeed, Inc.*,
 2006 U.S. Dist. LEXIS 68655, at *9 (S.D.N.Y. 2006) ........................................................... 17

*Stewart v. Paul, Hastings, Janofsky & Walker, LLP*,
 201 F. Supp. 2d 291 (S.D.N.Y. 2002) ..................................................................................... 18

*Stransky v. HealthONE of Denver, Inc.*,
 929 F. Supp. 2d 1100 (D. Colo. 2013) ..................................................................................... 13

*Wang v. Chinese Daily News, Inc.*,
 236 F.R.D. 485 (C.D. Cal. 2006) .............................................................................................. 13

*Weight Watchers of Philadelphia, Inc. v.Weight Watchers International, Inc.*,
 455 F.2d 770 (2d Cir. 1972) ..................................................................................................... 10

**Statute**

28 U.S.C. § 1746 .............................................................................................................................. 7

## **PRELIMINARY STATEMENT**

Pursuant to the Court's October 4, 2017 Order (Dkt. No. 84), Defendants V&J National Enterprises, LLC ("V&J National"), V&J United Enterprises, LLC ("V&J United"), V&J Employment Services, Inc. ("V&J Employment"), and V&J Holding Companies, Inc. submit this Memorandum of Law in opposition to Plaintiff Jacqueline Beebe's motion for a protective order, preliminary injunction, and sanctions.

Plaintiff's motion fails primarily because it is based on a false premise. Namely, Plaintiff repeatedly contends (and bases her motion on this contention) that Defendants forced opt-in plaintiffs and putative class members to waive their Fair Labor Standards Act ("FLSA") claims or otherwise waive their right to participate in this action. That is simply not true. On September 6, 2017, Defendants gave delivery drivers who were employed by V&J Employment at that time the option to sign a release of their New York Labor Law and unjust enrichment claims. The release specifically states that the signer was not releasing FLSA claims. Further, the one-page release stated, two different times – once in bold and once underlined, that it was entirely voluntary. The release also disclosed the existence of this lawsuit, described the claims being asserted in this lawsuit, and noted the signer's right to join the FLSA collective that has been conditionally certified in this case. Thus, Plaintiff has the facts underlying her motion entirely wrong.

To be clear, Defendants are not contending that Plaintiff willfully misrepresented the facts to the Court. Plaintiff admittedly did not review a copy of the release before filing her motion. (Granted, she does not assert she even requested a copy before filing her motion.) That said, her decision to jump to the conclusion that Defendants engaged in unlawful, coercive

conduct based on nothing more than hearsay and the alleged account of a single (apparently confused) witness is disappointing.

Based on the accurate facts, and for the reasons discussed below, Plaintiff's motion should be denied in its entirety.

## BACKGROUND

Plaintiff filed the Complaint in this action on February 1, 2017. (Dkt. No. 1). The heart of Plaintiff's allegations are that Defendants – collectively[1] – "under-reimbursed Plaintiff and her colleagues for vehicular wear and tear, gas and other driving-related expenses, thereby effectively paying them well below the minimum wage." (*Id.* ¶ 3, 19). The Complaint alleges claims for purported violations of the FLSA (on behalf of a proposed collective "[a]ll persons Defendants employed as a delivery driver . . .") and of the NYLL (on behalf of a proposed class of "[a]ll persons Defendants employed in New York as a delivery driver . . . "), and for unjust enrichment on behalf of New York delivery drivers. (*Id.* ¶ 41, 46, 91). Defendants deny these claims. (*See* Dkt. No. 15).

On June 15, 2017, Magistrate Judge Payson conditionally certified an FLSA collective in this case and directed Defendants to identify all delivery drivers they have employed at any time during the class period. (Dkt. No. 41). Defendants subsequently produced a list of delivery drivers employed by V&J Employment (the only entity who employed delivery drivers) during the relevant time period. On August 10, 2017, Plaintiff mailed the Court-approved "Notice of Collective Action Lawsuit with Opportunity to Join" (the "Notice") and "Consent to Become a

_____

[1] Plaintiff – and the delivery drivers she seeks to represent – were employed by V&J Employment at the Pizza Hut stores either V&J National or V&J United operated as franchisee. (Boose Decl. ¶ 2). None of the other Defendants employed any delivery drivers. In fact, Defendants filed a motion, which is currently pending before the Court, seeking to dismiss all Defendants other than V&J Employment from this case because they did not employ any delivery drivers. (Dkt. Nos. 38, 52).

Party Plaintiff" (the "Consent") forms to the drivers appearing on the list provided by Defendants (i.e., the potential members of the conditionally-certified FLSA collective).

On August 23, 2017, Plaintiff filed a motion to send a reminder notice to the drivers/potential FLSA collective members advising them of their ability to file a consent to opt-in to the FLSA collective. (*See* Dkt. No. 61). As noted in Plaintiff's motion, Defendants did not oppose her request to send a reminder notice. (*Id.*) The motion was granted by Magistrate Judge Payson on August 25, 2017 (Dkt. No. 66), and the reminder notice was sent to any potential FLSA collective members who had not yet opted in to this action.

Delivery drivers had 60 days from the mailing of the initial Notice and Consent forms to opt in to the FLSA collective. Thus, the opt-in period ran from August 10, 2017 (the date the forms were mailed) until October 9, 2017.

While an FLSA collective has been conditionally certified in this case, Plaintiff has not moved for, and the Court has not otherwise granted, class certification under Fed. R. Civ. P. 23 for Plaintiff's NYLL and unjust enrichment claims. Therefore, at this point, it is only Plaintiff and potentially the opt-in plaintiffs who are asserting NYLL and unjust enrichment claims in this case. Delivery drivers who have not opted in to this case are not parties to this action (whether as plaintiffs or class members). As such, no claims are being litigated by them, or on their behalf, in this lawsuit.

Prior to the close of business on September 6, 2017, V&J National and V&J United operated several Pizza Hut stores as a franchisee, and V&J Employment employed the delivery drivers at those stores who make up the FLSA collective in this case. (Boose Decl. ¶ 2;

3

Garagozzo Decl. ¶ 3).[2] On September 6, 2017, V&J National and V&J United sold all of their Pizza Hut assets to an independent entity through an arms' length transaction. (Boose Decl. ¶ 3). This purchaser is a separate legal entity that is not affiliated with Defendants. (Boose Decl. ¶ 4). Thus, as of the close of business on September 6, 2017, Defendants do not own or operate any Pizza Hut franchises and, accordingly, do not employ any delivery drivers (including any delivery drivers who have, or had the opportunity to, opt in to this case). (Boose Decl. ¶ 5).

As is customary with the sale of assets, employees at the Pizza Hut stores were terminated from employment with V&J Employment upon the close of business on September 6, 2017. (Boose Decl. ¶ 6; Garagozzo Decl. ¶ 5). Some or all of these employees may have continued in their positions as employees of the purchaser, but Defendants had and have no involvement with, or knowledge of, that employment. (Boose Decl. ¶ 7; Garagozzo Decl. ¶ 6).

On September 6, 2017, just prior to the sale (and, thus, just prior to their termination from employment with V&J Employment), delivery drivers were given the opportunity to sign a release of their NYLL and unjust enrichment claims in exchange for $250. (Boose Decl. ¶ 8; Garagozzo Decl. ¶ 7, Exh. A). The release specifically stated that the signer was not releasing FLSA claims. Further, the one-page release stated, two different times – once in bold and once underlined – that it was entirely voluntary. The release also disclosed the existence of this lawsuit, described the claims being asserted in this lawsuit, and noted the signer's right to join this lawsuit. (Garagozzo Decl., Exh. A).

David Boose, Vice President of Operations for V&J United and V&J National, and Wendy Garagozzo, Human Resources Manager for V&J Employment, met with employees on

---

[2] "Boose Decl. ¶ __" refers to the declaration of Dave Boose submitted with this memorandum of law; "Garagozzo Decl. ¶ __" refers to the declaration of Wendy Garagozzo submitted with this memorandum of law.

September 6, 2017 to provide them with the releases and give them the opportunity to sign. (Boose Decl. ¶ 9; Garagozzo Decl. ¶ 8).  Mr. Boose held meetings at Defendants' former Pizza Hut stores in Binghamton, Cortland, Chittenango, Oneida, Rome, and Cicero. (Boose Decl. ¶ 10; Garagozzo Decl. ¶ 10). Delivery drivers who worked at those stores or in the vicinity of those stores were asked by their supervising Store Managers and Directors to attend the meetings. (Boose Decl. ¶ 10; Garagozzo Decl. ¶ 10). Ms. Garagozzo held meetings at Defendants' former Pizza Hut stores in Penn Yan, Canandaigua, Newark, and Dansville, and also at Defendants' office in Rochester. (Garagozzo Decl. ¶ 11). Delivery drivers who worked at those stores or in the vicinity of those stores or the office were asked by their supervising Store Managers and Directors to attend the meetings. (Garagozzo Decl. ¶ 11). Only a fraction of the delivery drivers employed by V&J Employment as of September 6, 2017 actually attended the meetings held by Mr. Boose and Ms. Garagozzo. (Garagozzo Decl. ¶ 12).

During the meetings on September 6, 2017, Mr. Boose and Ms. Garagozzo greeted the drivers and provided the release to them to read and decide if they wanted to sign. (Boose Decl. ¶ 11; Garagozzo Decl. ¶ 13).  They did not pressure anyone who came in to sign. (*Id.*) The delivery drivers were given as much time as they needed to review and sign the release if they chose to do so. (*Id.*) Overall, 50 out of approximately 210 delivery drivers (who were employed as of September 6, 2017) signed the release. (*See* Garagozzo Decl. ¶ 14, Exh. A).

None of the 50 drivers who signed the release had opted in to the FLSA collective in this case prior to signing the release. (*Compare* Garagozzo Decl., Exh. A *with* Dkt. Nos. 19, 57-60, 63, 65, 67-69, 71-74, 77-80, 83, 86, 88, 92, 93). In fact, no delivery driver who had already opted into the FLSA collective attended the meetings on September 6, 2017. (Garagozzo Decl. ¶ 9). Thus, they were not offered the release.

Three of the drivers who signed the release opted in to the FLSA collective after signing the release. Indeed, Eric Zemaitis, Nathan Taylor, and Jolene Rose signed the release on September 6, 2017 and then filed consents to join the FLSA collective on September 21, 2017, September 28, 2017, and October 11, 2017, respectively.  (*See* Garagozzo Decl., Exh. A; Dkt. Nos. 78, 80, 88).

## ARGUMENT

### I.   Legal Standard.

The at-issue releases were only offered to, and signed by, delivery drivers who – at least at that point in time – were not parties to this case. They had not opted in to the FLSA collective and no Rule 23 class had (or has) been certified. *See Canale v. Colgate-Palmolive Co.*, 2017 U.S. Dist. LEXIS 4061, at *12 (S.D.N.Y. Jan. 10, 2017) ("[P]utative class members are not parties before certification"); 29 U.S.C. § 216 ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

With respect to communications with non-party members of a putative class, the Supreme Court has cautioned that courts should limit the speech of the parties "as little as possible" and only when there is "a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-102 (1981). To warrant a limitation on communications between a defendant and putative class members, "the plaintiff must show (1) that a particular form of communication has occurred or is threatened to occur and (2) that the particular form of communication at issue is abusive in that it threatens the proper functioning of the litigation." *Bobryk v. Durand Glass Mfg. Co., Inc.*, 2013 LEXIS 145758, at *10-11 (D.N.J. Oct. 9, 2013)).

6

As recognized by Judge Skretny in *Brown v. Mustang Sally's Spirits and Grill, Inc.*, "there is nothing inherently improper about a party's communication with potential class members prior to certification." 2012 U.S. Dist. LEXIS 144722, at *6 (W.D.N.Y. Oct. 5, 2012). Even pre-certification *ex parte* settlement negotiations are not abusive and should not be limited absent record evidence that indicates "the need for limitations." *Id.* at *7 (quoting *Austen v. Catterton Partners*, 831 F. Supp. 2d 559, 565 (D. Conn. 2011) (other citations omitted).

It is only "after class certification" that "*ex parte* communications with individual class members are generally disfavored because class counsel are counsel to the entire class – both Class Representatives and absent class members." *Dial Corp. v. News Corp.*, 2015 U.S. Dist. LEXIS 168363, at *11-12; *Brown*, 2012 U.S. Dist. LEXIS 144722, at *6 (explaining that a different, heightened standard applies *after* class certification).

## II. Plaintiff's Allegations of Impropriety are Based on Hearsay, Speculation, Conjecture, and Otherwise Inadmissible Evidence.

Plaintiff fails to proffer evidence amounting to a "clear record" of abuse by Defendants in offering releases to non-party delivery drivers. In fact, the limited evidence she does provide is predominantly comprised of hearsay, speculation, and conjecture. It is inadmissible and/or irrelevant.

Plaintiff submits 10 declarations in support of her motion. One is from her, two are from her attorneys, and seven are from former employees of V&J Employment. Only one of these 10 declarants, Eric Zemaitis, states that he actually attended a meeting on September 6, 2017 where the releases were distributed to those delivery drivers who chose to show up. (*See* Dkt. No. 81-12). Notably, despite signing a release, in his declaration, Mr. Zemaitis stated his intent to "sign a Consent to Become a Party Plaintiff as soon as possible…." (*Id.* at ¶ 14). Mr. Zemaitis has, in fact, filed a consent to opt in to the FLSA collective. While it is unclear when Mr. Zemaitis

signed his declaration (since, despite the clear requirements of 28 U.S.C. § 1746, the declaration is undated), his consent to join the FLSA collective was signed and filed on September 21, 2017. (Dkt. No. 78-1). His declaration was filed seven days later. (Dkt. No. 81-2).

Because he has opted in, Mr. Zemaitis' testimony, even if taken as true, does not establish that he, or anyone else, has not joined the lawsuit because of misleading or abusive communications. Mr. Zemaitis **has joined** the lawsuit. Nothing Defendants said or did, and nothing set forth in the release, prohibited or dissuaded him from doing so. In fact, the release Mr. Zemaitis signed specifically stated that "you" (i.e., Mr. Zemaitis) "are not releasing the FLSA claims." (Garagozzo Decl., Exh. A). It also specifically noted that "you will receive (or already have received) a notice and consent form in the mail or by e-mail explaining the process for you to join the FLSA claim." (Garagozzo Decl., Exh. A). These are not abusive or misleading communications. They are accurate statements that advised Mr. Zemaitis and the other delivery drivers who were provided with releases of their right to join the FLSA collective and pursue their FLSA claims. Mr. Zemaitis took advantage of that right and opted in to the FLSA collective. Defendants will not – and have no reason to – challenge his decision to opt in and assert FLSA claims against them.[3]

While Mr. Zemaitis' declaration is irrelevant and inconsequential, the nine other declarations submitted by Plaintiff in support of her motion are largely made up of inadmissible hearsay and irrelevant evidence. The seven former employees of V&J Employment who submitted declarations (which includes Plaintiff) admit that they were not present at the meetings on September 6, 2017, and were not offered a release. Instead of setting forth any direct

---

[3] While Defendants do not challenge his right to allege FLSA claims, Defendants do deny those claims and will vigorously defend themselves. Further, Defendants deny that any entity other than V&J Employment (the former employer of Mr. Zemaitis, Plaintiff, and all other delivery drivers in this case) is an appropriate defendant in this matter. (*See* Dkt. Nos. 38, 52).

observations of the declarant, the declarations include statements regarding what other unidentified delivery drivers allegedly "confirmed" or said to the declarant. (*See* Dkt. No. 81-5 at ¶¶ 4-7; Dkt. No. 81-7 at ¶ 4; Dkt. 81-8 at ¶¶ 3-4; Dkt. No. 81-9 at ¶¶ 4-5; Dkt. No. 81-10 at ¶ 8). Some of the declarations go so far as including what the declarant was told about the releases or meetings by other individuals who have no direct knowledge. (*See* Dkt. No. 81-6 at ¶ 4). The hearsay (and the hearsay within hearsay) set forth in these declarations is inadmissible and cannot be considered in determining whether there is a "clear record" of abuse, as required by *Gulf Oil* and its progeny for this Court to act on Plaintiff's motion.

Plaintiff also submits two declarations from her attorneys in this case. One includes nothing more than background information that provides no basis to conclude that Defendants engaged in objectionable conduct. In the other declaration, one of Plaintiff's attorneys improperly attempts to serve as a conduit for unidentified non-parties by describing what they said during phone calls with him. (*See* Dkt. No. 81-4 at ¶¶ 3-4). Like the hearsay statements making up the majority of the declarations submitted by Plaintiff, the substance of this declaration from Plaintiff's counsel is inadmissible and cannot be considered in determining whether there is a "clear record" to support Plaintiff's baseless allegations of abuse.

Because Plaintiff has failed to establish any coercive or misleading conduct by Defendants, there is no "clear record" of abuse that warrants the intervention of this Court. *See Mak v. Oska Japanese Rest.*, Inc., 2013 U.S. Dist. LEXIS 198198, at *7-8 (S.D. Tex. Sept. 16, 2013) ("In the absence of some admissible evidence to support Plaintiff's contentions that Defendants have misled and coerced their employees to settle and release their claims, and in light of the evidence from Defendants that the settlements and releases were not misleading or

coercive, there is not a 'clear record' of any abuse by Defendants in their pre-certification

communications with potential class members."). Thus, Plaintiff's motion should be denied.

### III.   Defendants' Communications with Delivery Drivers Concerning the Execution of a Release of NYLL and Unjust Enrichment Claims Were Lawful and Court Intervention is Unwarranted.

Plaintiff will be unable to remedy the dearth of evidence supporting her allegations that

Defendants engaged in coercive or misleading conduct because Defendants simply have not

engaged in the type of communications that *Gulf Oil* and its progeny seek to restrict. As such,

Court intervention is unnecessary and unneeded.

#### A.   There Was Nothing Improper About the Releases, and Delivery Drivers Were Not Misled or Coerced.

Here, as discussed above, the at-issue releases were only offered to, and signed by,

delivery drivers who – at least at that point in time – were not parties to this case. They had not

opted in to the FLSA collective and no Rule 23 class had (or has) been certified. *See Canale*,

2017 U.S. Dist. LEXIS 4061, at *12; 29 U.S.C. § 216.

Plaintiff has no basis to prohibit Defendants' communications with, or invalidate releases

obtained from, non-party delivery drivers. In *Weight Watchers of Philadelphia, Inc. v.Weight*

*Watchers International, Inc.*, 455 F.2d 770 (2d Cir. 1972), the Second Circuit explained that a

putative class action plaintiff has no legally protected right to sue on behalf of others and is

**without authority to prevent negotiation of settlements between the defendant and**

**potential call members.** *Weight Watchers*, 455 F.2d at 773, 775; *Green v. Plantation of La.,*

*LLC*, 2012 U.S. Dist.. LEXIS 146488, at *13 (W.D. La. Sept. 17, 2012) ("The Arbitration

Agreements at issue in this case were signed before the plaintiffs opted-in to the lawsuit. Hence,

as plaintiffs' counsel candidly stated during oral argument, they were not, at that time, "actual

plaintiffs." They could, therefore, properly be approached by their employer without usurping

this Court's authority."). Indeed, even *ex parte* settlement negotiations should not be restricted prior to certification of a class unless the *Gulf Oil* standard of a clear record is met and there are specific findings that the need for limitations on communications outweighs the parties' rights to communicate freely. *See Brown*, 2012 U.S. Dist.. LEXIS 1144722, at *10.

As discussed above, Plaintiff's submissions fall well short of meeting the "clear record" standard enunciated in *Gulf Oil*. Even if she had, the evidence shows there is **no need** for the regulation of, or limitations or corrective action related to, communications between V&J Employment and non-party delivery drivers or the releases that were executed by non-party delivery drivers.

Plaintiff argues that Court intervention is required because "V&J has been preventing delivery drivers from joining the lawsuit by, *inter alia*, requiring delivery drivers to attend meetings to discuss the lawsuit and forcing them to sign written waivers of their right to join the lawsuit…." (Dkt. No. 81-1, p. 7). This is a demonstrably (and indisputably) false statement. Delivery drivers were not "required" to attend the meetings held on September 6, 2017 where the voluntary releases were distributed. In fact, only a fraction of the approximately 210 delivery drivers employed as of that date actually attended the meetings. (Garagozzo Decl. ¶ 12). Even if there was a "requirement" to attend (which there was not), it clearly was not enforced.

Further, the non-party delivery drivers were not "forced" to sign the release. As noted above, only 50 out of approximately 210 delivery drivers who were employed as of September 6, 2017 actually signed the release. (Garagozzo Decl. ¶ 14). Delivery drivers clearly were not "forced" to sign. Moreover, the one-page release stated, two different times – once in bold and once underlined – that it was entirely voluntary. (Garagozzo Decl., Exh. A).

11

The drivers also were not "coerced" sign. Not every communication between an employer and employee is necessarily coercive. If they were, no effective agreement would ever be reached between an employer and employee. That said, the employer-employee relationship here was coming to an end just hours after the releases were signed. The employees were fully aware of that fact. Thus, any presumed coerciveness that would otherwise exist was not present in this case.

Contrary to Plaintiff's unsupported allegations, the delivery drivers who voluntarily chose to sign the release also did not waive their "right to join the lawsuit." This lawsuit alleges FLSA, NYLL, and unjust enrichment claims. The non-party delivery drivers who were given the option to sign the release were only asked to waive their NYLL and unjust enrichment claims against the Defendants. The release specifically excludes their FLSA claims. (Garagozzo Decl., Exh. A (explicitly stating "you are not releasing the FLSA claims")). Delivery drivers who chose to sign the release still had the right to opt in to the FLSA collective in this case. At the time the release was presented to them, delivery drivers had received two separate notices of their right to opt in to the FLSA collective in this case. The release specifically acknowledges that fact. (Garagozzo Decl., Exh. A (stating "you will receive (or already have received) a notice and consent form in the mail or by e-mail explaining the process for you to join the FLSA claim")). Despite receiving notice of their right to opt in, none of the delivery drivers who signed the release had chosen to opt in as of September 6, 2017. However, three of them decided to do so after signing the release. (*See* Dkt. Nos. 78, 80, 88). Again, they had every right to do so. They had not waived their FLSA claims or their "right to join the lawsuit."

The release also was not misleading. It specifically disclosed this lawsuit and described the claims being asserted in it. (Garagozzo Decl., Exh. A). Moreover, no misleading or coercive

statements were made when the releases were provided to the drivers. The releases were simply made available at the meetings, and drivers were asked to review and sign a release if they wished to do so. (*See* Boose Decl. ¶ 11; Garagozzo Decl. ¶ 13). No one was pressured to sign. (*Id.*) In the absence of any coercive or misleading statements or action, there is simply no need to regulate or correct Defendants' communications with the delivery drivers or disturb the releases that were signed.

### B.      The Cases Cited by Plaintiff Are Inapposite.

Unlike the case at hand, several of the cases cited by Plaintiff, where communications were regulated by the Court, involved defendants communicating with class members after class certification. *See, e.g., Pacheco v. Aldeeb*, 127 F. Supp. 3d 694 (W.D. Tex. 2015); *Wang v. Chinese Daily News, Inc.*, 236 F.R.D. 485 (C.D. Cal. 2006); *Stransky v. HealthONE of Denver, Inc.*, 929 F. Supp. 2d 1100 (D. Colo. 2013). These are readily distinguishable since, post-certification, class members become parties to the case.

Other cases relied upon by Plaintiff, where the objectionable conduct took place pre-certification, involved systematic communications by the defendants where the only goal was to undermine the rate of participation in the lawsuit without providing anything of value to the putative class members. *See, e.g., In re Currency Conversion Fee Antitrust Litigation*, 361 F. Supp. 2d 237 (S.D.N.Y. 2005) (defendants added arbitration clauses to the cardholder agreements, without consideration, by mass mailing a Change in Terms notice to cardholders); *Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914 (11th Cir. 2014) (defendant devised a new arbitration policy and sent its human resource representatives to meet only with putative class members to implement the new policy). Here, delivery drivers were given monetary consideration in exchange for a limited release of claims.

Unlike the circumstances involved in the cases Plaintiff cites, there was nothing inequitable, misleading or coercive about the releases signed by delivery drivers or the way they were obtained. As discussed, delivery drivers were not forced to attend the meetings where the releases were distributed. The releases were entirely voluntary. The releases disclosed this lawsuit, described the claims being asserted in this lawsuit, explicitly stated the signer was waiving two of those claims in exchange for $250, and explicitly stated that the signer was not waiving his/her FLSA claims.

## IV.   Defendants Did Not Engage in Retaliation in Violation of the FLSA or NYLL.

Plaintiff claims that Defendants engaged in retaliation, in violation of the FLSA and NYLL, by asking delivery drivers to sign releases. Plaintiff states that "[her] claim is clear: V&J is unlawfully forcing drivers not to participate in this lawsuit." (Dkt. No. 81-1, p. 18). This claim fails, at least in part, for the same reasons discussed above. Namely, delivery drivers were not "forced" into signing releases, and those that did sign releases did not waive their right to participate in this lawsuit. The releases made these points very clear. The one-page release stated, two different times – once in bold and once underlined – that it was entirely voluntary. The release also disclosed the existence of this lawsuit, described the claims being asserted in this lawsuit, and noted the signer's right to join the FLSA collective that has been conditionally certified in this case. (Garagozzo Decl., Exh. A).

While they did not waive their right to participate in this lawsuit, the delivery drivers who signed releases did knowingly and voluntarily waive their NYLL and unjust enrichment claims. Any attempt by Plaintiff to twist a knowing and voluntary release of claims into a basis for a retaliation claim must be rejected. If the delivery drivers execution of a release constituted

14

retaliation, then every time a release is entered into between an employer and employee (and, perhaps, any parties), retaliation has occurred. That is an illogical and unsupportable conclusion.

The cases cited by Plaintiff provide no support for her theory of retaliation in this case. Those cases involved an employer who took some form of adverse action against an employee in retaliation for that employee engaging in protected conduct under the FLSA. *See Abdul-Rasheed v. Kablelink Communs., LLC*, 2013 U.S. Dist. LEXIS 159632, at *12-16 (M.D. Fla. Nov. 7, 2013) (employer forced arbitration agreements and class waivers under threat of termination); *Perez v. J&L Metal Polishing, Inc.*, 2016 WL 7655766, at *6 (C.D. Cal. May 9, 2016) (employer terminated employees and threatened to "put a bullet through" an employee's head in retaliation for protected activity under FLSA); *Perez v. Jasper Trading, Inc.*, 2007 U.S. Dist. LEXIS 103814, at *5-7 (E.D.N.Y. Nov. 27, 2007) (employer threatened to call immigration authorities and threatened bodily harm if plaintiffs continued to demand just compensation). None of those cases involved an employer obtaining a release of claims from an employee. Simply put, obtaining a voluntary release is not adverse action and provides no basis for a retaliation claim.

Defendants did not engage in any unlawful or improper conduct by asking non-party delivery drivers to review and sign a voluntary release of their NYLL and unjust enrichment claims in exchange for monetary consideration if they chose to do so. That conduct certainly did not constitute retaliation.

## V. The Releases Executed by Delivery Drivers Are Enforceable.

The releases signed by the delivery drivers are enforceable, and they cannot be voided for reasons of either procedural or substantive unconscionability. For an agreement to be ruled unconscionable, the Court must find it both procedurally and substantively unconscionable. *See Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y 2009). The contract

at issue does not meet the standard for either procedural or substantive unconscionability, and, therefore, must be enforced as a valid agreement.

### A.     The Releases Are Not Procedurally Unconscionable.

The circumstances surrounding the signing of the contract demonstrate that the contract was voluntarily entered into, and is not procedurally unconscionable.  A determination of procedural unconscionability examines the "contract formation process and the alleged lack of meaningful choice" involved in entering into the contract. *Nayal*, 620 F. Supp. 2d at 571 (quoting *State v. Wolowitz*, 96. A.D.2d (3d Dep't 1983)).

Plaintiff first alleges that the contract is procedurally unconscionable because the drivers "were made to go to corporate headquarters."  This is inaccurate.  Ms. Garagozzo and Mr. Boose travelled to several individual store locations with the releases to hold meetings with delivery drivers. (Garagozzo Decl. ¶¶ 10-11; Boose Decl. ¶ 10). Delivery drivers who worked at, or in the vicinity of, those stores were asked to attend the meetings. (*Id.*) Only one of the meetings was not held at a store, and only a small subset of the total employees attended that specific meeting. That meeting was held at V&J Employment's offices in Rochester, NY. This was done to accommodate delivery drivers who worked at stores located in Rochester. It was not done for the purposes of intimidation, as Plaintiff implies. It was done for convenience. (*See* Garagozzo Decl. ¶ 11).

Plaintiff cites *Brennan v. Bally Total Fitness* to support her position, but Brennan is easily distinguished from the present situation.  198 F.Supp. 2d 377 (S.D.N.Y 2002).  In *Brennan*, the single plaintiff was forced into a room with a member of corporate management and told to sign the agreement.  *Id.* at 383. Here, delivery drivers were asked – not forced – to attend meetings where the releases were made available. In fact, only a fraction of the total

delivery drivers actually attended the meetings. At the meetings, Ms. Garagozzo and Mr. Boose simply greeted the drivers and provided the releases to them to read and decide if they wanted to sign. (Boose Decl. ¶ 11; Garagozzo Decl. ¶ 13).  They did not pressure anyone who came in to sign. (*Id.*) Defendants' actions are completely different than the aggressive behavior decried in *Brennan*.

To the extent that Plaintiff contends that the disparity in bargaining power between Defendants and the drivers is sufficient to render the agreement procedurally unconscionable, this argument is refuted by multiple court opinions holding that disparity in bargaining power does not create procedural unconscionability.  *See Stern v. eSpeed, Inc.*, 2006 U.S. Dist. LEXIS 68655, at *9 (S.D.N.Y. 2006) (holding that "mere inequity in bargaining power between employers and employees" is not a sufficient reason to hold that agreements are never enforceable) quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S.20, 22, (1991).  If that were the case, no contract between an employer and employee would be enforceable. That is a plainly illogical result.

Furthermore, the drivers were given ample time to review the one-page contract, and were not pressured by Defendants into quickly signing.  In contrast to *Brennan*, where the plaintiff was given only fifteen minutes to review a sixteen-page contract (198 F.Supp. 2d at 383), the delivery drivers here were given as much time as they needed to review the one-page release. (Garagozzo Decl. ¶ 13; Boose Decl. ¶ 11). *See Isaacs v. OCE Bus. Servs.*, 968 F. Supp. 2d 564, 570 (S.D.N.Y. 2013) (holding that a two-page document was distinct from the sixteen-page agreement in Brennan, and weighed against a finding of procedural unconscionability).

The voluntary nature of the release was also well-stated and understood by the drivers, working against a finding of procedural unconscionability.  The release begins with that

contention, stating in the first lines in bold type "**this form is voluntary, and you are not required to sign it.**" (Garagozzo, Exh. A). The contract ends on a similar note, with an underlined portion stating "Again signing this form is entire contrary." (*Id.*) The paragraph goes continues with: "If you choose not to sign this form…. Defendants will take no negative action against you" and "it will not impact your ability to obtain employment, and it will not affect your rights to receive your last paycheck or any other compensation or benefits that you are entitled to receive." (*Id.*) These statements underscore the voluntariness of the contract, and ensure that the drivers were aware that they would not face negative repercussions for not signing the contract. *See Stewart v. Paul, Hastings, Janofsky & Walker, LLP*, 201 F. Supp. 2d 291 (S.D.N.Y. 2002) (holding that plaintiff's acknowledgment in writing that the agreement was voluntary went against finding the agreement to be procedurally unconscionable).

Finally, the number of currently employed drivers who did not elect to show up to the meeting or sign the release underscores the voluntariness of the arrangements. In total, 50 out of approximately 210 drivers signed the contract. (Garagozzo Decl. ¶ 14). The fact that the overwhelming majority of employees did not sign releases demonstrates that the employees did not feel pressured by Defendants to attend the meeting or sign the release, and they did not fear adverse action for not doing so.

The 50 delivery drivers who opted to sign the release were given a meaningful opportunity to make a voluntary decision to either waive their NYLL and unjust enrichment claims in exchange for monetary consideration or retain their rights to assert such claims and forgo the money. Nothing that occurred was procedurally unconscionable.

18

**B.      The Releases Are Not Substantively Unconscionable.**

The release is also not substantively unconscionable.  Substantive unconscionability is determined by examining the fairness of the provisions of the contract.  *See Nayal*, 620 F. Supp. 2d at 57.

The release does not contain provisions that courts have found to be substantively unconscionable.  Although Plaintiff alleges that the release is substantively unconscionable because it forces the drivers to settle their claims for "pennies on the dollar," that is simply not true. As support for that statement, Plaintiff compares the $250 paid to delivery drivers who signed releases to an average settlement of $1,764 paid for the release of claims in various other wage and hour cases Plaintiff identifies. (Dkt. No. 81-1, p. 5 fn. 4). Plaintiff's comparison is flawed because the $250 was paid in exchange for a release of NYLL and unjust enrichment claims. The release specifically excluded the signer's FLSA claims. In the cases cited by Plaintiff, the settlement money was paid in exchange for a full release of claims (inclusive of FLSA claims). (Dkt. No. 81-1, p. 5 fn. 4 and cases cited therein). Obviously, a full release of claims is worth substantially more than the limited release obtained in this case. Thus, the delivery drivers who signed releases did not settle for "pennies on the dollar." They were given significant consideration and maintained their ability to assert FLSA claims.

Plaintiff generally cites to *Brennan* as an example of a case involving substantively unconscionable contract. The *Brennan* case is inapposite. In *Brennan*, the contract was found to be substantively unconscionable because it gave the defendant company the unilateral right to change the agreement.  *See Brennan*, at 384; *see also Barreto v. JEC II, LLC*, 2017 U.S. Dist. LEXIS 116091, fn.9 (S.D.N.Y. 2017) (holding that the contract was valid and distinct from Brennan because it did not contain a provision allowing the employer to unilaterally modify the

agreement).  The contract between Defendants and the drivers does not have this unconscionable provision.

Finally, Plaintiff argues that the Agreement is unconscionable premised on Plaintiff's belief that it "force[ed] drivers to give up their FLSA rights."  As explained in Part I above, the release explicitly states that the FLSA claims of the delivery drivers who signed it are not implicated.  As such, Plaintiff's argument is contrary to the relevant facts and the clear language of the release. As such, it should not be considered.

## VI.    There is No Need or Basis for a Preliminary Injunction.

Plaintiff's request for injunctive relief must be denied primarily because it is entirely based upon the same faulty premise as the rest of the motion; namely, Plaintiff's belief that delivery drivers were forced to waive their FLSA claims. As fully discussed above, this is simply not true. The release is clear. Delivery drivers, who were not parties to this action, were asked if they wished to voluntarily waive NYLL and unjust enrichment claims in exchange for monetary compensation. A waiver of FLSA claims was explicitly excluded from the release, and it was never requested from the delivery drivers.

Plaintiff based her request for injunctive relief solely upon her purported fear that, "if potential class members are intimidated and afraid to join the lawsuit, they cannot vindicate their right sunder the FLSA." (Dkt. No. 81-1, p. 17). In short, because delivery drivers were never asked to waive their FLSA rights, the potential "irreparable harm" alleged by Plaintiff – and the entire basis for Plaintiff's request – does not exist. Moreover, Defendants no longer own or operate any Pizza Hut franchises, and V&J Employment no longer employs any delivery drivers. Thus, there is no basis for a concern that any retaliatory conduct will occur in the future. For these reasons alone, Plaintiff's request for injunctive relief should be denied.

20

In connection with her request, Plaintiff also argues that she is "likely to succeed on the merits, both with respect to the retaliation claim she intends to add to an amended complaint and with respect to the underlying case." (Dkt. No. 81-1, p. 18). This argument is without merit. First, Plaintiff is not likely to succeed with respect to her proposed retaliation claim. As fully discussed above, no retaliation or otherwise improper conduct occurred, and no such conduct will occur. Second, Plaintiff's argument that she is likely to succeed in the underlying case is entirely speculative. The opt-in period in this case just ended. Little discovery has taken place. Plaintiff has no basis to assess her likelihood of success in this lawsuit. In a footnote, Plaintiff declares that she will prevail in this case because a few unrelated claimants were successful at arbitration in making similar claims against entirely different employers. Especially given the procedural posture of this case, Plaintiff's apparent declaration of victory is a bit premature (and entirely wrong).

Because Defendants did not engage in any unlawful or improper conduct, the relief requested in Plaintiff's motion is not warranted. Specifically, **there is absolutely no need for the Court to:** (a) enjoin Defendants from further communicating with putative class members (because no improper communications have occurred); (b) direct the issuance, posting, or mailing of a corrective notice (because nothing was done that needs to be corrected); (c) extend the opt-in period (because the release only reminded opt-in plaintiffs of their right to opt-in; it had no adverse effect); (d) grant delivery drivers paid time off to meet with Plaintiff's counsel (because, again, there is nothing that needs to be mitigated through such a meeting); require V&J to set aside any money (because, *inter alia*, that money belong to the delivery drivers who chose to sign releases); (e) hold the releases unenforceable (because, as discussed in Point V above, they are enforceable); (f) grant Plaintiff leave to amend her complaint to add claims of retaliation

21

(because, as discussed in Point IV above, no retaliation occurred); (g) order the production of any further documents by Defendants (because the waivers have already been produced); and (h) require Defendants to pay Plaintiff's attorneys' fees and costs (because, as fully explained above, her motion should be denied and did not need to be brought and was brought before she saw the releases). While the majority of relief requested by Plaintiff is not warranted, Defendants certainly agree to refrain from "retaliating against putative class members who join the lawsuit," as requested by Plaintiff. No Court order is necessary, however, because Defendants are already legally obligated to refrain from any such retaliation.

## CONCLUSION

For the reasons discussed above, Plaintiff's motion for a protective order, preliminary injunction, and sanctions should be denied. There is simply no basis for Plaintiff's motion or the relief requested in it.


Dated:  October 20, 2017                      BOND, SCHOENECK & KING, PLLC

                                              By:  __/s/Sharon M. Porcellio_____
                                                    Sharon M. Porcellio, Esq.
                                                    Katherine S. McClung, Esq.
                                                    Michael E. Hickey, Esq.
                                                    Theresa Rusnak, Esq.

                                              Avant Building – Suite 900
                                              200 Delaware Avenue
                                              Buffalo, New York 14202-2107
                                              Telephone:  (716) 416-7000
                                              Fax:  (716) 416-7001

                                              *Attorneys for Defendants*

1286337.1