# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACQUELINE BEEBE, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>v.<br><br>V&J NATIONAL ENTERPRISES, LLC, V&J UNITED ENTERPRISES, LLC, V&J EMPLOYMENT SERVICES, INC., and V&J HOLDING COMPANIES, INC.,<br><br>                Defendants. | Case No. 6:17-cv-06075-EAW-MWP<br><br>Class / Collective Action |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION FOR A PROTECTIVE ORDER, PRELIMINARY INJUNCTION, TEMPORARY RESTRAINING ORDER, AND SANCTIONS**

{00288368 }

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................... 1

ADDITIONAL FACTS .................................................................................................................. 1

ARGUMENT .................................................................................................................................. 4

    I.    All Declarations Submitted In Support Of Plaintiff's Motion Are Admissible ................... 4

    II.   V&J's Improper Communications Require Corrective Notice ........................................... 5

    III.  The Waivers Are Unconscionable And Not Enforceable ..................................................... 7

CONCLUSION ............................................................................................................................. 10

**TABLE OF AUTHORITIES**

**Cases**

*Agerbrink v. Model Service LLC,*
  No. 14-7841, 2015 WL 6473005 (S.D.N.Y Oct. 27, 2017)...............................................................6

*Billingsley v. Citi Trends, Inc.,*
  560 Fed. Appx. 914 (11th Cir. 2014)................................................................................................7

*Brennan v. Bally Total Fitness,*
  198 F. Supp. 2d 377 (S.D.N.Y. 2002) ......................................................................................... 7, 10

*Brown v. Mustang Sally's Spirits and Grill, Inc.,*
  No. 12-529, 2012 WL 4764585 (W.D.N.Y. Oct. 5, 2012) ...............................................................5

*Dial Corp. v. News Corp.,*
  No. 13-6802, 2015 WL 9256930 (S.D.N.Y. Nov. 16, 2015) ...........................................................6

*Eisen v. Venulum Ltd.,*
  244 F. Supp. 3d 324 (W.D.N.Y. 2017) .............................................................................................7

*FTC v. 4 Star Resolution, LLC,*
  No. 15-112, 2015 WL 7431404 (W.D.N.Y. Nov. 21, 2015) ............................................................4

*Gortat v. Capala Bros., Inc.,*
  No. 07-3629, 2009 WL 3347091 (E.D.N.Y. Oct. 16, 2009) ............................................................6

*Gulf Oil Co. v. Bernard,*
  452 U.S. 89 (1981) ............................................................................................................................5

*Hojnowski v. Buffalo Bills, Inc.,*
  995 F.Supp.2d 232 (W.D.N.Y. 2014) ...............................................................................................7

*In re Currency Conversion Fee Antitrust Litig.,*
  361 F. Supp. 2d 237 (S.D.N.Y. 2005) ..............................................................................................7

*In re School Asbestol Litig.,*
  842 F.2d 671 (3d Cir.1988) ........................................................................................................... 5, 6

*Le v. SITA Info. Networking Computing USA, Inc.,*
  No. 07-85, 2008 WL 724155 (E.D.N.Y. Mar. 13, 2008) ............................................................... 10

*Mak v. Oska Japanese Restaurant, Inc.,*
  No. 12-3409, 2013 WL 12155015 (S.D. Tex. Sept. 16, 2013) ........................................................5

*Manning v. New York Univ.,*
  No. 98-3300, 2001 WL 963982 (S.D.N.Y. Aug.21, 2001) ............................................................ 10

*Mullins v. City of New York*,
  626 F.3d 47 (2d Cir. 2010) .................................................................................................... 5

*Padilla v. Manlapaz*,
  643 F. Supp. 2d 302 (E.D.N.Y. 2009) ................................................................................... 9

*Quezada v. Schneider Logistics Transloading and Distribution*,
  No. 12-2188, 2013 WL 1296761 (C.D. Cal. Mar. 25, 2013) ................................................ 8

*Ralph Oldsmobile, Inc. v. Gen. Motors Corp.*,
  No. 99-4567, 2001 WL 1035132 (S.D.N.Y. Sept. 7, 2001) .................................................. 6

*Stewart v. Paul, Hastings, Janofsky & Walker, LLP*,
  201 F. Supp. 2d 291 (S.D.N.Y. 2002) ............................................................................... 8, 9

*Weight Watchers of Philadelphia, Inc. v. Weight Watchers International, Inc.*,
  455 F.2d 770 (2d Cir. 1972) ............................................................................................. 5, 6

*Wetzel v. Town of Orangetown*,
  No. 06-15190, 2009 WL 690114, at *2 (S.D.N.Y. Mar. 16, 2009) ....................................... 8

**Statutes**

29 U.S.C. § 215(a)(3) .................................................................................................................. 8

N.Y. Lab. L. § 215(1)(a) ............................................................................................................. 8

**Regulations**

29 C.F.R. § 785.28 ...................................................................................................................... 9

**PRELIMINARY STATEMENT**

Defendants V&J National Enterprises, LLC, V&J United Enterprises, LLC, V&J Employment Services, Inc., and V&J Holding Companies, Inc.'s (collectively "V&J" or "Defendants") Opposition to Plaintiff's Emergency Motion for Protective Order, Preliminary Injunction, Temporary Restraining Order, and Sanctions ("Motion") relies on distortions of fact and misapplications of law. In support of her Reply, Plaintiff has obtained additional declarations from drivers who personally attended V&J's highly coercive meetings. These declarations make it clear that V&J mislead the drivers and prevented drivers from participating in this litigation against the drivers' wishes and in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Accordingly, Plaintiff respectfully requests that the Court grant the relief originally sought in Plaintiff's Motion.[1]

**ADDITIONAL FACTS**

V&J submits declarations from two members of management, David Boose and Wendy Garagozzo, who allegedly met with drivers for the benign purpose of "provid[ing] them with the releases and the opportunity to sign." Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for a Protective Order, Preliminary Injunction and Sanctions, Dkt. No. 94 ("Opposition") at 5. V&J also points out that three drivers, Eric Zemaitis, Nathan Taylor, and Jolene Rose, signed the waivers and also opted in to the FLSA collective action, claiming that this shows that the meetings were not coercive and that the drivers understood they were not waiving their FLSA rights. V&J's characterizations of the meetings and the drivers' experiences are difficult to credit, and belied by the record before the Court.

In addition to Mr. Zemaitis, who already submitted a declaration, Mr. Taylor and Ms. Rose

---

[1] In addition, Plaintiff hereby supplements her witness list for the November 17, 2017 evidentiary hearing: In addition to the witnesses Plaintiff previously identified, Plaintiff intends to call the following witnesses: Nathan Taylor, Jolene Rose, and the V&J attorney who attended certain of the mandatory meetings.

{00288368 } 1

have now also submitted declarations in support of Plaintiff's Motion. *See* Declaration of Eric Zemaitis, Dkt. No. 81-12 ("Zemaitis Dec."); Declaration of Nathan Taylor ("Taylor Dec."); Declaration of Jolene Rose ("Rose Dec."). All three were subjected to similar treatment and testify that the meetings were highly coercive and that V&J made them sign waivers that they understood waived their right to participate in this litigation. *See* Zemaitis Dec. at ¶¶ 3-11; Taylor Dec. at ¶¶ 4-14; Rose Dec. at ¶¶ 4-14.

Mr. Taylor and Ms. Rose's respective bosses told each of them to go to an "important" or "mandatory" meeting with Mr. Boose, V&J's Vice President of Operations, and another a man who introduced himself as V&J's attorney.[2] *See* Taylor Dec. at ¶¶ 3-4; Rose Dec. at ¶ 4. V&J met with Mr. Taylor and Ms. Rose separately (*see* Taylor Dec. at ¶ 3; Rose Dec. at ¶¶ 1,3), so the similarities between the two meetings is unlikely to be coincidental. Mr. Taylor and Ms. Rose both understood and were very much aware that Mr. Boose had the power to terminate their employment. For example, Mr. Boose had previously interviewed Ms. Rose when she sought a promotion. *See* Rose Dec. at ¶ 4.

In each of their respective meetings, Mr. Boose and the attorney put the waiver in front of Mr. Taylor and Ms. Rose and told them to sign it. Mr. Boose and the attorney explained that V&J was not liable for the lawsuit. In fact, the attorney went into detail to Ms. Rose, "explain[ing] that the lawsuits were going to lose and emphasiz[ing] that I would get more money" by signing the waiver. Rose Dec. at ¶ 10; *see* Taylor Dec. at ¶ 7. V&J did not give the drivers the opportunity to consult with their own counsel, but, instead, told them they had to sign the waivers that day. *See* Zemaitis Dec. at ¶ 4; Taylor Dec. at ¶ 7; Rose Dec. at ¶ 7; Declaration of Eric De Carr, Dkt. No. 81-

---

[2] Plaintiff believes this man is one of Defendants' in-house counsel and does not believe that Defendants' counsel in this case participated in the meetings.

7, ("De Carr Dec.") at ¶ 4.[3] V&J refused to give Ms. Rose a copy of the waiver when she requested it (*see* Rose Dec. at ¶ 13); and V&J told Mr. Taylor it could not give him a copy at the meeting but would mail it to him. *See* Taylor Dec. at ¶ 14. In fact, V&J did not mail him a copy of the waiver. *See id.*

Like Mr. Zemaitis, Mr. Taylor and Ms. Rose were both very upset by the process. Mr. Taylor had signed and mailed his opt-in form prior participating in the meeting, but he understood that by signing the waiver he waived his right to participate in the litigation. *See* Taylor Dec. at ¶ 16; Taylor Opt-in Form, Dkt. No. 80-1 at 5 (dated September 1, 2017). The drivers did not understand the text in the waiver that purported to explain that the drivers were not waiving their FLSA rights. *See* Zemaitis Dec. at ¶ 4; Taylor Dec. at ¶ 16; Rose Dec. at ¶ 15; De Carr Dec. at ¶ 4. This is because V&J told the drivers they were waiving their right to participate in this litigation, made them sign a waiver that the drivers understood waived their right to litigate their claims, and then refused to provide the drivers with the copy of the waiver.

V&J tries to argue that because "only a fraction" of all V&J's drivers attended the meetings, the meetings were "indisputably" voluntary. *See* Opposition at 11. Not so. V&J only sent notice of the meetings to store managers at approximately 3:30 pm on the day before they were held. *See* Exhibit B to Declaration of Wendy Garagozzo ("Garagozzo Dec."), Dkt No. 96-2. Clearly not all delivery drivers would be at work -- or otherwise would have received word from the managers -- between the times those emails were read by store management and the time the meetings were held. Furthermore, even though drivers were told that these meetings were mandatory, some were nonetheless unable to attend because of prior obligations. *See* De Carr Dec. at ¶ 3. The fact that

---

[3] V&J states that "the delivery drivers were given as much time as they needed" to review the waiver. Opposition at 17. This is patently false as the delivery drivers were explicitly told that they had to sign the waiver that same day. *See* Zemaitis Dec. at ¶ 4; Taylor Dec. at ¶ 7; Rose Dec. at ¶ 7; De Carr Dec. at ¶ 4.

some drivers did not receive adequate advance notice to attend the meetings, or were unable to fulfil the requirement to attend, does not mean V&J ever presented the meetings as voluntary.

V&J also attempts to use this imperfect attendance rate to distort how coercive the meetings were. V&J argues that "only 50 out of approximately 210 delivery drivers who were employed as of September 6, 2017 actually signed the release." Opposition at 11. But that is not the relevant ratio. As Ms. Garagozzo and Mr. Boose make clear, only 51 drivers were able to attend the meetings on such short notice. *See* Garagozzo Dec. at ¶ 13; Declaration of David Boose, Dkt. No. 95, ("Boose Dec.") at ¶ 11. Thus, 50 out of 51 attendees signed the waiver. *See* Garagozzo Dec. at ¶ 13 ("There was <u>one</u> individual who did not sign the agreement.") (emphasis added).[4] Mr. Boose told Ms. Rose that "every driver who met with management signed." Rose Dec. at ¶ 12. The record shows that drivers in attendance clearly felt that they were expected to sign the waiver, and feared for their employment if they did not. *See* Zemaitis Dec. at ¶¶ 5, 8, 12; Taylor Dec. at ¶¶ 8-9, 13, 18; Rose Dec. at ¶¶ 5, 12, 15, 17. Drivers who were unable to attend the meetings also felt V&J's expectation that they should not participate in this lawsuit. *See* Declaration of Anthony Richardson, Dkt. No. 81-9, at ¶ 5.

## ARGUMENT

### I. All Declarations Submitted In Support Of Plaintiff's Motion Are Admissible

As a preliminary matter, V&J incorrectly contends that the declarations submitted by delivery drivers who did not personally attend the waiver meetings are "inadmissible." This is simply not true. As Plaintiff explained in her initial memorandum, the Second Circuit has held that "hearsay evidence may be considered by a district court in determining whether to grant a preliminary injunction." *Mullins v. City of New York*, 626 F.3d 47, 51-52 (2d Cir. 2010); *see also FTC v.*

---

[4] V&J has not identified the one driver who attended, but did not sign. There is no record before Court showing that this one driver did not likewise believe he or she was expected to sign or risk retaliation. It is possible, for example, that this driver quit rather than sign.

*4 Star Resolution, LLC*, No. 15-112, 2015 WL 7431404, at *3 (W.D.N.Y. Nov. 21, 2015) ("Indeed, in light of the summary nature of this remedy, courts are permitted to consider hearsay and otherwise inadmissible evidence at the preliminary injunction stage.") (Skretny, J.).  Tellingly, V&J offers no authority for its contention that these declarations are inadmissible, although it repeatedly makes that claim.  *See* Opposition at 7, 8, 9.

These valid and admissible declarations, along with declarations of drivers who did attend the meetings, provide the Court with a "clear record" of abuse by V&J requiring intervention by the Court in full accord with *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-102 (1981), and clearly distinguishing this matter from *Mak v. Oska Japanese Restaurant, Inc.*, No. 12-3409, 2013 WL 12155015 (S.D. Tex. Sept. 16, 2013).[5]

## II. V&J's Improper Communications Require Corrective Notice

V&J relies on the Second Circuit's decision in *Weight Watchers of Philadelphia, Inc. v.Weight Watchers International, Inc.*, 455 F.2d 770 (2d Cir. 1972), for the proposition that Plaintiff has no grounds to interfere in "negotiation of settlements between the defendant and other potential members of the class."  However, this ignores not only the *Weight Watchers* Court's specific finding that the plaintiff in that action had "brought what would have been a 'spurious' class action," and that the settlement negotiations were held with sophisticated franchisee owners, but also, most importantly, that the defendant in *Weight Watchers* <u>had received prior court approval</u> to conduct the settlement negotiations, and even then only "on terms stipulated by the district judge."  *Weight*

---

[5] Likewise, this evidence provides adequate "indications in the record" to warrant the Court's intervention in accordance with *Brown v. Mustang Sally's Spirits and Grill, Inc.*, No. 12-529, 2012 WL 4764585, at *2-3 (W.D.N.Y. Oct. 5, 2012) ("Intervention is warranted, however, where such communications are found to be misleading or coercive, as such communication poses 'a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally.'") (quoting *In re School Asbestol Litig.*, 842 F.2d 671, 680 (3d Cir.1988)).

*Watchers of Philadelphia, Inc.*, 455 F.2d at 771.[6] V&J obviously did not secure any such prior approval, nor specific equitable terms, in this matter.

Instead, these *ex parte* communications undermined the Court's authority and responsibility to manage communications -- a duty that, despite V&J's claims to the contrary, exists even prior to class certification.[7] *See Ralph Oldsmobile, Inc. v. Gen. Motors Corp.*, No. 99-4567, 2001 WL 1035132, at *2 (S.D.N.Y. Sept. 7, 2001) ("*Gulf Oil*, and a court's power to restrict communications between parties and potential class members, apply even before a class is certified."); *Agerbrink v. Model Service LLC*, No. 14-7841, 2015 WL 6473005 *3 (S.D.N.Y Oct. 27, 2017) ("A district court may prevent confusion and unfairness by prohibiting and correcting communication that is inaccurate, unbalanced, misleading, or coercive, or which improperly attempts to encourage class members not to join the suit. This supervisory authority exists even before a class is certified.") (collecting cases, internal citations omitted); *Gortat v. Capala Bros., Inc.*, No. 07-3629, 2009 WL 3347091, at *4 (E.D.N.Y. Oct. 16, 2009) ("A court possesses such supervisory authority [to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties] even before a class is certified."); *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 253 (S.D.N.Y. 2005) ("Indeed, when a defendant contacts putative class members for the purpose of

---

[6] "This permission was subject to the conditions that counsel for the franchisee should be present at each negotiating session and review any new contract provision, that plaintiff's counsel should receive at least five days advance notice of the commencement of any such negotiations and of each negotiating session and be afforded full opportunity to express their views concerning the rights of the franchisees with respect to the subject-matter of the action, and that the last negotiating session with each franchisee prior to execution of a contract should be held at the offices of defendant's counsel in New York City -- a location convenient to plaintiff's counsel." *Id.* at 722.

[7] V&J's reliance on *Dial Corp. v. News Corp.*, No. 13-6802, 2015 WL 9256930 (S.D.N.Y. Nov. 16, 2015) for the argument that such *ex parte* communications are only disfavored "after class certification" is misplaced. The *Dial Corp.* court expressly noted that it "is easily distinguishable from a typical class action where class counsel must protect individual class members from possible coercion or intimidation" because "the absent class member CPGs are large and sophisticated entities -- Procter & Gamble, Johnson & Johnson, Kimberly Clark Corporation, to name a few -- with their own in-house legal teams."

{00288368 }   6

altering the status of a pending litigation, such communication is improper without judicial authorization.").

### III. The Waivers Are Unconscionable And Not Enforceable

This Court has the authority to hold that the waivers V&J coerced delivery drivers into signing are unenforceable, as they are the product of improper, unsupervised communications that "sought to eliminate putative class members' rights in this litigation." *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d at 254 (invalidating arbitration agreements); *see, e.g.*, *Billingsley v. Citi Trends, Inc.*, 560 Fed. Appx. 914, 924 n.12 (11th Cir. 2014) (affirming district court's use of its "managerial responsibility" to "regulate an employer's attempt to impose . . . [a] waiver of legal rights during the course of a FLSA collective action lawsuit).

Furthermore, these waivers are invalid because, as Plaintiff described in her initial memorandum of law, they are procedurally and substantively unconscionable. *See Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 382 (S.D.N.Y. 2002). "Procedural and substantive unconscionability operate on a sliding scale; the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa." *Eisen v. Venulum Ltd.*, 244 F. Supp. 3d 324, 341 (W.D.N.Y. 2017) (quoting *Hojnowski v. Buffalo Bills, Inc.*, 995 F. Supp. 2d 232, 238 (W.D.N.Y. 2014)).

V&J's arguments against procedural unconscionability are difficult to credit. For example, V&J asserts that the mandatory meetings between high-level executives and company attorneys and (below) minimum wage delivery drivers were completely voluntary and innocuous. But the record available from the drivers who actually attended these meetings, confirmed and supported by sworn statements from former drivers who spoke with additional attendees, demonstrates that these

improper *ex parte* communications were coercive.[8]

Moreover, contrary to V&J claims, the meetings and releases were not voluntary. Managers, acting on V&J's behalf, ultimately "told" the delivery drivers to attend the meetings with V&J executives where the drivers were told to sign a release before leaving.[9] *See* Zemaitis Dec. at ¶ 3; Taylor Dec. at ¶ 3; Rose Dec. at ¶¶ 3-4; *see also* De Carr Dec. at ¶ 3 (describing a notice "requiring" all drivers to attend the meeting). No driver understood these meetings to be voluntary, nor would any factfinder find them voluntary. *See, e.g., Quezada v. Schneider Logistics Transloading and Distribution*, No. 12-2188, 2013 WL 1296761 at *6 (C.D. Cal. Mar. 25, 2013) ("The interviews were conducted in a coercive manner because the employees did not attend the interviews on their own initiative, but instead were . . . directly ordered to attend by their supervisors."); *Wetzel v. Town of Orangetown*, No. 06-15190, 2009 WL 69011429 at *2 (S.D.N.Y. Mar. 16, 2009) ("[V]oluntary is understood in a realistic and pragmatic manner: Attendance 'is not voluntary in fact if the employee is given to understand or led to believe that his present working conditions or the continuance of his employment would be adversely affected by nonattendance.'") (quoting 29 C.F.R. § 785.28).

V&J also argues that drivers who signed the waiver "were only asked to waive their NYLL

---

[8] Indeed, as set forth in Plaintiff's original brief, V&J engaged in retaliation through these meetings. *See* Motion at 8. The drivers' declarations make clear that they reasonably believed that V&J would terminate their employment (either directly or through influencing the subsequent employers) if they refused to sign the waiver. *See* Zemaitis Dec. at ¶¶ 5, 8, 12; Taylor Dec. at ¶¶ 8-9, 13, 18; Rose Dec. at ¶¶ 5, 12, 15, 17. Under the NYLL, "[n]o employer . . . shall discharge, <u>threaten</u>, penalize, or in any other manner discriminate or retaliate against any employee" for participating in a legal action under the NYLL. N.Y. Lab. L. § 215(1)(a) (emphasis added) . Likewise, under the FLSA, it is a violation for "any person . . . to discharge <u>or in any other manner discriminate against</u> any employee" for participating in a legal action under the FLSA. 29 U.S.C. § 215(a)(3) (emphasis added). Such prohibited threats occurred on and about September 6, 2017, when V&J caused the drivers to fear loss of their employment for their participation in protected activity. As such, Plaintiff may amend the complaint to bring additional named plaintiffs and associated claims for retaliation under the NYLL and FLSA.

[9] These facts also clearly distinguish this matter from V&J's cited case, *Stewart v. Paul, Hastings, Janofsky & Walker, LLP*, 201 F. Supp. 2d 291 (S.D.N.Y. 2002), where the plaintiff "was given an opportunity to consult with private legal counsel" before entering into a voluntary agreement. *Id.* at 294.

and unjust enrichment claims against the Defendants," but not their FLSA claims.  Opposition at 12.[10]  But this legal distinction was not communicated to the drivers, who could not be expected to recognize its implications without the assistance of counsel.  Instead, drivers were given the clear impression that the waiver was giving them $250 in exchange for not joining the lawsuit.  *See* Zemaitis Dec. at ¶ 4; Taylor Dec. at ¶ 16; Rose Dec. at ¶ 15; De Carr Dec. at ¶ 4.; Declaration of Mathew Conklin, Dkt. No. 81-6, at ¶ 4.  Indeed, the V&J management running the meetings explicitly <u>contrasted</u> the waiver payout with what the drivers would recover from the lawsuit, rather than giving any indication that the drivers could both receive the payment and still participate.  *See* Zemaitis Dec. at ¶ 7; Taylor Dec. at ¶ 11; Rose Dec. at ¶¶ 7, 10.  Tellingly, V&J refused to even provide drivers with a copy of the waivers they had signed, which might have allowed them to realize there was a distinction between the types of claims.  *See* Zemaitis Dec. at ¶ 9; Taylor Dec. at ¶ 14; Rose Dec. at ¶ 13.

     V&J also claims that the inclusion of the language "this form is voluntary" in the waiver saves the waiver of unconscionability.  This is incorrect, as the drivers did not have a meaningful opportunity to seek advice of counsel and did not understand the waivers to be voluntary.  *See* note 9, *supra*.  Moreover here, unlike in *Stewart*, 201 F. Supp. 2d 291, V&J provided the drivers with false information -- such as the claim that the drivers' case lacked merit and $250 was more than they would recover in the litigation.  *See* Zemaitis Dec. at ¶ 7; Taylor Dec. at ¶ 7; Rose Dec. at ¶ 7.

     As Your Honor noted during the September 29, 2017 telephone conference, V&J cannot be absolved of its coercion simply because the text of the waiver states that it is "voluntary."  This comports with the understanding that an employer can easily coerce an employee into signing an

---

[10] V&J's argument that the waiver is not unconscionable because it purports not to impact drivers' FLSA claims also fails because the NYLL claims, which V&J forced the drivers to waive, are entitled to the same protection.  "[I]t is well settled law that an employee may not waive the protections of the Labor Laws."  *Padilla v. Manlapaz*, 643 F. Supp. 2d 302 (E.D.N.Y. 2009) (applying same standard for waiver of FLSA protections to NYLL).

agreement with such a disclaimer, without the employee having a meaningful choice in the matter. *See, e.g., Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-85, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) ("The FLSA places 'strict limits on an employee's ability to waive claims . . . for fear that employers would coerce employees into settlement and waiver.'") (ellipses in original; quoting *Manning v. New York Univ.*, No. 98-3300, 2001 WL 963982, at *11 (S.D.N.Y. Aug. 21, 2001)).

The coercive meetings, V&J's refusal to provide drivers with copies of the waivers they had signed, and the strict same-day deadline imposed on drivers to comply, all left putative class and collective members with the reasonable belief that V&J required them to sign away their ability to participate in this lawsuit at all. Given the rampant procedural unconscionability, V&J's waiver was also substantively unconscionable. The waiver had the practical effect of releasing all the drivers claims, as V&J's conduct convinced them that they were agreeing to not participate in the lawsuit respect to any claims. *See* Zemaitis Dec. at ¶ 4; Taylor Dec. at ¶ 16; Rose Dec. at ¶ 15. Thus, as Plaintiff articulated in her opening brief, the drivers were only offered pennies on the dollar for their claims. *See, e.g.*, *Brennan*, 198 F. Supp. 2d at 384 (a contract that denies an employee the right to pursue a pending court action is substantively unconscionable).

## CONCLUSION

For all the reasons stated above, Plaintiff respectfully requests that the Court enter an order providing all relief requested in Plaintiff's Emergency Motion for Protective Order, Preliminary Injunction, Temporary Restraining Order, and Sanctions.

                                            Respectfully submitted,

Dated: October 27, 2017                */s/ Jeremiah Frei-Pearson*
                                            Jeremiah Frei-Pearson
                                            Finkelstein, Blankinship,
                                            Frei-Pearson & Garber, LLP
                                            445 Hamilton Ave. Suite 605
                                            White Plains, NY  10601

                                            *Counsel for Plaintiff, Collective and Putative Class*