# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NEW YORK

JACQUELINE BEEBE, individually and
on behalf of all others similarly situated,

        Plaintiff,

        v.

V&J NATIONAL ENTERPRISES, LLC,
V&J UNITED ENTERPRISES, LLC, V&J
EMPLOYMENT SERVICES, INC. and
V&J HOLDING COMPANIES, INC.,

        Defendants.

Case No. 6:17-cv-06075-EAW

Class / Collective Action


## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
## MOTION TO COMPEL PRODUCTION AND FOR SANCTIONS

{00293570 }

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

PRELIMINARY STATEMENT ............................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................. 1

    I.     Plaintiff's Discovery Demands And Defendants' Delays In Responding. ............. 1

          A.    V&J's Delays In Producing
               Discovery Have Been A Longstanding Issue. ........................................... 1

          B.    V&J's Delays In Producing Key Discovery Continues To This Day......... 5

    II.    V&J's Failure To Respond To Plaintiff's Discovery
          Demands Is Consistent With An Overarching Strategy Of Delay.......................... 8

          A.    V&J Stalled The Related *Spano* Case Through
               An Arbitration Agreement That It Then Refused To Honor. .................... 8

          B.    V&J Requested Numerous Extensions
               In *Spano* Based On Settlement Negotiations,
               But Then Refused To Negotiate In Good Faith. ........................................ 9

          C.    After Conditional Certification Of The
               Collective, V&J Significantly Delayed
               Notice To The Putative Collective Members........................................... 10

ARGUMENT ...................................................................................................... 14

    I.     Legal Standard. ....................................................................................... 14

    II.    The Discovery Plaintiff Seeks Is Clearly
          Relevant To The Subject Matter Of This Litigation. ........................................... 15

          A.    Documents Related To Records
               Of Delivery Drivers  Are Relevant
               To Establishing And Calculating Damages. ........................................... 15

          B.    A Complete Production Of Communications
               Related To Defendants' Reimbursement Policy
               Is Relevant To V&J's Willfulness And Liability. ................................... 16

          C.    A Complete Production Of All Opt-In
               Plaintiffs' Arbitration Agreements Is Relevant. ....................................... 16

          D.    Documents Related To The Sale Of Defendants' Pizza Hut ................... 18

III.    Defendants Should Be Sanctioned For Their Dilatory Conduct............................ 18

CONCLUSION............................................................................................................ 19

# TABLE OF AUTHORITIES

## Cases

*Barkley v. Pizza Hut of America, Inc.*,
  No. 14-376, 2014 WL 3908197 (M.D. Fl. Aug. 11, 2014) ..................................................... 17

*Blue Zenith, LLC v. Rohde*,
  No. 12-1071, 2013 WL 5574637 (W.D.N.Y. Oct. 9, 2013)................................................... 18

*Condit v. Dunne*,
  225 F.R.D. 100 (S.D.N.Y. 2004).......................................................................................... 14

*EM Ltd. v. Republic of Argentina*,
  695 F.3d 201 (2d Cir.2012)................................................................................................... 15

*Faulkner v. Arista Records LLC*,
  797 F. Supp. 2d 299 (S.D.N.Y. 2011).............................................................................. 10, 11

*GemShares, LLC v. Kinney*,
  No. 17-844, 2017 WL 1092051 (S.D.N.Y. Mar. 15, 2017) .................................................. 10

*Gorzynski v. JetBlue Airways Corp.*,
  No. 03-774, 2012 WL 712067 (W.D.N.Y. Mar. 5, 2012).................................................... 16

*Hickman v. Taylor*,
  329 US 495 (1947)................................................................................................................ 14

*In re Zyprexa Injunction*,
  474 F. Supp. 2d 385 (E.D.N.Y. 2007).................................................................................. 15

*In the Matter of Arbitration*,
  2015 WL 8682319 (AAA Aug. 13, 2015) ............................................................................ 15

*In the Matter of Arbitration*,
  2015 WL 8682313 (AAA Aug. 13, 2015) ............................................................................ 15

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
  298 F.R.D. 184 (S.D.N.Y. 2014)........................................................................................... 15

*Mayer Bros. Const. Co. v. Dinsick Equip. Corp.*,
  No. 11-14, 2012 WL 691604 (W.D. Pa. Mar. 2, 2012) ........................................................ 19

*Parada v. Banco Indus. De Venez., C.A.*,
  753 F.3d 62 (2d Cir. 2014)................................................................................................... 16

*PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.*,
  520 F.3d 109 (2d Cir. 2008).................................................................................................. 10

*Rosehoff, Ltd. v. Truscott Terrace Holdings LLC*,
  No. 14-277, 2016 WL 2640351 (W.D.N.Y. May 10, 2016).................................................. 18

*Seattle* Times Co. v. Rhinehart,
   467 U.S. 20 (1984) ........................................................................................................ 14

*Spano v. V&J National Enterprises, LLC,*
   No. 16-6419 (W.D.N.Y.) .............................................................................................. 8-9

*Starter Corp. v. Converse, Inc.*,
   170 F.3d 286 (2d Cir. 1999) ......................................................................................... 10

*Tae In Kim v. Dongbu Tour & Travel, Inc.*,
   529 F. App'x 229 (3d Cir. 2013) ............................................................................. 17, 18

*Trebor Sportswear Co. v. The Limited Stores, Inc.*,
   865 F.2d 506 (2d Cir. 1989) ......................................................................................... 10

*Tyler v. Michaels Stores, Inc.*,
   840 F. Supp. 2d 438 (D. Mass. 2012) ..................................................................... 12, 14

## **Rules**

Federal Rule of Civil Procedure 37 ............................................................................... 19

Federal Rule of Civil Procedure 26(b)(1) ..................................................................... 14

Federal Rule of Evidence 408 ................................................................................... 7, 10

## PRELIMINARY STATEMENT

To date, Defendants V&J National Enterprises, LLC, V&J United Enterprises, LLC, V&J Employment Services, Inc. and V&J Holding Companies, Inc. (collectively "Defendants" or "V&J") still have not produced most key documents and data responsive to discovery demands that Plaintiff Jacqueline Beebe served on March 23, 2017.  Defendants have also failed to produce any documents related to the sale of their at-issue Pizza Hut-branded stores, as requested in discovery demands served on October 2, 2017.  Despite Plaintiff's numerous attempts to confer on these issues, as well as the Court's generous grant of a one-month stay as Defendants changed attorneys, Defendants have not even provided a date certain for when they will complete this extremely overdue production, and have repeatedly ignored deadlines that they themselves set for providing any sort of substantive update.[1]

Due to these repeated and ongoing delays -- which have unfortunately become an all-too-common element of Defendants' litigation strategy -- Plaintiff must respectfully request that the Court issue an order compelling Defendants to produce all outstanding documents responsive to Plaintiff's discovery demands within thirty (30) days of such order.  Plaintiff also respectfully requests that the Court sanction Defendants for its serial misconduct.

## FACTUAL AND PROCEDURAL BACKGROUND

I.   **Plaintiff's Discovery Demands And Defendants' Delays In Responding.**

A.   **V&J's Delays In Producing Discovery Have Been A Longstanding Issue.**

On March 23, 2017, immediately after the Parties conducted their Rule 26 conference, Plaintiff served initial discovery demands to each Defendant, including requests for production of documents.  Plaintiff's First Requests for Production of Documents, Exhibit A to Declaration

---

[1] Defendants' counsel have been professional and Plaintiff does not blame them for these delays.

of Jeremiah Frei-Pearson ("Frei-Pearson Decl.").  These requests included "[a]ll documents that relate to the distance driven by Delivery Drivers while they deliver food or beverages on [V&J's] behalf, including: Driver Activity Records, Driver Dispatch/Cash Audit Reports, and Point-of-Sale System Data."  *Id*. at Document Request No. 9.  These requests also included "[a]ll documents relating to communications concerning reimbursements paid to Delivery Drivers."  *Id*. at Document Request No. 4.  Also at this time, Plaintiff's counsel offered to draft a proposed protective order to cover any confidential information that may be included in discovery materials, but Defendants declined this offer.  *See* Frei-Pearson Decl. at ¶ 3.

On June 9, 2017, Plaintiff served her second set of requests for production of documents on each Defendant, including requests for "all signed arbitration agreements that Defendants contend are valid and prevent V&J Delivery Drivers from participating in this litigation."  Plaintiff's Second Requests for Production of Documents, Exhibit B to Frei-Pearson Decl. at Document Request No. 1.  Plaintiff likewise requested all documents related to the drafting of these agreements, the policy of requiring employees to sign them, and any arbitration proceedings in which V&J actually participated.  *Id.* at Document Requests 2-4.

After learning that Defendants had begun selling all of their Pizza Hut branded restaurants, including the stores where the minimum wage violations at issue in this litigation allegedly occurred, Plaintiff also requested all documents related to these sales on October 2, 2017, seeking to determine if the sales were arms-length transactions with a legitimate third party, or if they were merely an attempt to shift ownership on paper while keeping control in the hands of the same individuals.  Plaintiff's Third Requests for Production of Documents, Exhibit C to Frei-Pearson Decl. at Document Request 3.

Despite multiple meet and confer calls on discovery issues, Defendants did not begin producing any documents at all until October 16, 2017, and did not begin producing documents responsive to Plaintiff's first requests until November 13, 2017.[2]  *See* Frei-Pearson Decl. at ¶ 4; October 16, 2017 Cover Letter from Michael E. Hickey, Exhibit D to Frei-Pearson Decl.; November 13, 2017 Cover Letter from Sharon M. Porcellio, Exhibit E. to Frei-Pearson Decl. Defendants did not provide any privilege log with these documents.  *See* Frei-Pearson Decl. at ¶ 5.

Defendants' November 13, 2017 production included only data and documents concerning Plaintiff Beebe, not on any of the opt-in plaintiffs or other delivery drivers.[3]  During a meet and confer call on discovery issues on November 16, 2017, Plaintiff specifically raised the issue of production of data and documents related to these additional delivery drivers.  *See* December 14, 2017 Letter from Jeremiah Frei-Pearson, Exhibit F to Frei-Pearson Decl.

Although Defendants represented during that call that they would produce additional documents on a rolling basis, nearly a month passed with no such production.  Thus, on December 14, 2017, Plaintiff was forced to send a letter detailing the categories of documents Plaintiff had not yet received and reiterating that this production should include documents and

---

[2] Defendants' October 16, 2017 production was only made in response to the Court's October 4, 2017 Order on Plaintiff's Emergency Motion for a Protective Order, Preliminary Injunction, Temporary Restraining Order, and Sanctions concerning V&J's impermissible attempts to secure waivers from delivery drivers.  *See* Exhibit D to Frei-Pearson Decl.  This Order instructed V&J to "provide Plaintiff's counsel with copies of the documents signed by the putative class members purporting to waive their right to participate in this lawsuit for $250.00 within ten (10) days."  ECF No. 84.

[3] On June 14, 2018, the Court granted Plaintiff's motion for conditional certification.  ECF No. 44.  After repeated delays cause by V&J, as described more fully below, notice of this action was sent to V&J's delivery drivers, and 197 collective members opted in through February 9, 2018. *See* ECF Nos. 57-60, 63, 65, 67-69, 71-74, 77-80, 83, 86, 88, 92-93, 97, 99, 111, 116-120, 128, 134, 137.

data related to opt-in collective members.  *Id*.  When Defendants made a production of documents on December 22, 2017, however, they included only nine pages of emails or other communications -- and all appeared to be related to arbitration agreements, not to any of Plaintiff's first requests for "documents relating to communications concerning reimbursements paid to Delivery Drivers."  *See* Frei-Pearson Decl. at ¶ 6.  Furthermore, Defendants produced only 69 arbitration agreements signed by opt-in Plaintiffs out of the approximately 200 opt-ins (*see id*. at ¶¶ 7-8), despite having previously represented in filings before this Court that "[a]pproximately 60% of the drivers at issue have signed" arbitration agreements (which would result in approximately 120 signed arbitration agreements).  ECF No. 20 at 2.

During the Parties' next meet and confer call on these issues, on January 5, 2018, Plaintiff insisted, given the extreme delay, that the outstanding documents be produced by February 5, 2018 or she would be forced to bring the matter the Court.  *See* January 10, 2018 Letter from Jeremiah Frei-Pearson, Exhibit G to Frei-Pearson Decl.  One week after that call, Defendants' attorneys at that time submitted a motion to withdraw as counsel.  ECF No. 121.

Seeking to avoid burdening the Court, if at all possible, Plaintiff continued to confer with Defendants and held another meet and confer call on February 14, 2018.  *See* April 3, 2018 Letter from Jeremiah Frei-Pearson, Exhibit H to Frei-Pearson Decl. at 2-3.  During that phone call, Defendants for the first time represented that V&J did not have any electronic records related to deliveries and reimbursements for individual drivers.  *Id*.  Based on prior litigation with Pizza Hut entities, as well as a general understanding of doing business in the 21st century, Plaintiff's counsel is virtually certain that this representation can only be true if Defendants spoliated evidence.  Thus, on February 21, 2018, Plaintiff noticed a 30(b)(6) deposition for each Named Defendant on topics including "[a]ll electronic records, documents, and data related to

wages and reimbursements paid to delivery drivers employed at any Pizza Hut-branded restaurants owned or operated by [V&J] or related to the deliveries performed by such delivery drivers." *See* Notices of Depositions, Exhibit I to Frei-Pearson Decl.[4]  Still seeking to determine whether the sales of V&J's Pizza Hut stores were legitimate arms-length transactions, Plaintiff also included the sale of these stores as a topic for these 30(b)(6) depositions. *Id.*

On February 21, 2018, the Court granted V&J's attorneys' motion to withdraw and granted a 30-day stay on discovery.  ECF No. 146.  After V&J's current counsel joined the case, the Court held a status conference on April 5, 2018.  ECF No. 152.  During this status conference, Defendants represented to the Court and to Plaintiff that they were in the process of assessing the physical copies of all delivery driver records, and would provide Plaintiff with an update on when such documents could be produced by May 15, 2018 -- the same date Defendants represented they would produce all outstanding electronic documents responsive to Plaintiff's requests for production.  *See* Frei-Pearson Decl. at 9.

**B.**     **<u>V&J's Delays In Producing Key Discovery Continues To This Day.</u>**

Despite representing to Plaintiff and the Court during the April 5, 2018 status conference that they would provide a prompt update on the hardcopy documents (allegedly containing the only records of delivery addresses and reimbursements), Defendants never provided Plaintiff with a date certain for this production, even though on May 14, 2018, Defendants emailed that they would "circle back" to this topic on May 15, 2018.  *See* May 14, 2018 Email from Stacie H. Rosenzweig, Exhibit J to Frei-Pearson Decl.  Defendants still have yet to produce any of these hardcopy documents, or provide a date certain for their production.

---

[4] The parties subsequently agreed that V&J would produce a single witness and consolidate the four noticed depositions, but as described below V&J has not identified who this witness will be nor provided their availability.

The electronic documents that Defendants did produce on May 15, 2018 also included only 32 pages of emails and attachments responsive to Plaintiff's first document requests for "documents relating to communications concerning reimbursements paid to Delivery Drivers," yet in similar cases, pizza companies typically produce thousands of pages of emails.  *See Frei-Pearson Decl.* at ¶¶ 10-11.   Likewise, despite multiple requests, Defendants have not provided Plaintiff with the availability of a 30(b)(6) witness, nor any update on whether they intend to produce documents related to the sale of their Pizza Hut-branded stores.  *See id.* at ¶ 12.

Indeed, in discussions around the sale documents, Defendants' counsel specifically proposed that the Parties agree to a protective order -- an offer Defendants had previously rejected when Plaintiff made it back in March of 2017 -- to facilitate the production of these documents.  *See April 26, 2018 Email from Andrew White, Exhibit K to Frei-Pearson Decl.*  But incredibly, even though Defendants' own counsel drafted a proposed protective order on May 1, 2018 and Plaintiff agreed to it the following day without any proposed edits or revisions, Defendants still have not submitted this proposed protective order to the Court nor provided Plaintiff with any update on its status since May 14, 2018 (when Defendants' counsel stated they "anticipate approval in substantially identical form to what has been provided").  *See* Frei-Pearson Decl. at ¶¶ 13-14; Exhibit J to Frei-Pearson Decl.

Over the past five weeks Plaintiff has repeatedly tried to meet and confer about outstanding discovery issues, but Defendants have provided no substantive updates and no dates certain to resolve these issues, and have disregarded every deadline that they themselves set for providing such updates.  For example, on June 5, 2018, Plaintiff's counsel contacted Defendants' new counsel of record requesting an update on multiple discovery issues, including documents related to the store sales and the physical files related to deliveries and reimbursement payments.

*See* June 5, 2018 Email from Jeremiah Frei-Pearson, Exhibit L to Frei-Pearson Decl.[5]

Defendants' counsel indicated he would provide an update by June 7, 2018.  *See* June 6, 2018

Email from Geffrey Gismondi, Exhibit M to Frei-Pearson Decl.  However, on June 11, 2018,

Plaintiff was again forced to reach out to Defendants to try to get such an update.  *See* June 11,

2018 Email from Jeremiah Frei-Pearson, Exhibit N to Frei-Pearson Decl.  Counsel for the Parties

traded emails on June 12, 2018, primarily concerning settlement talks, but Defendants provided

no updates on discovery issues.  *See* Frei-Pearson Decl. at ¶ 15.

On June 25, 2018, nearly two weeks after the last communication from Defendants,

Plaintiff again requested an update on the outstanding discovery issues and requested

confirmation that all arbitration agreements for opt-in Plaintiffs had been produced.  *See* June 25,

2018 Email from Jeremiah Frei-Pearson, Exhibit O to Frei-Pearson Decl.  The next day,

Defendants' counsel represented that he would provide Plaintiff with an update after a call with

his clients and co-counsel that he set for June 27, 2018.  *See* June 26, 2018 Email from Geffrey

Gismondi, Exhibit P to Frei-Pearson Decl.  However, yet again, Defendants provided no update

by the deadline that they themselves set.  As such, Plaintiff was forced to re-notice the 30(b)(6)

deposition for August 1, 2018 and -- given V&J's repeated failure to provide convenient dates

for their witness -- does not anticipate being able to accommodate Defendants on rescheduling.

As Plaintiff repeatedly warned Defendants that she would have to involve the Court if these

discovery issues could not be resolved through the meet and confer process, and as Defendants

have repeatedly failed to provide promised updates, let alone produced the requested documents

at issue themselves, Plaintiff is also now forced to bring this motion to compel and for sanctions.

---

[5] Information relevant only to the specific terms of attempts at settlement negotiations has been redacted from communications attached to Frei-Pearson Decl. in accordance with Federal Rule of Evidence 408.

## II.   V&J's Failure To Respond To Plaintiff's Discovery
### Demands Is Consistent With An Overarching Strategy Of Delay.

### A.   V&J Stalled The Related *Spano* Case Through An
### Arbitration Agreement That It Then Refused To Honor.

V&J's repeated and ongoing failures to produce discovery documents are only the latest

in an extensive pattern of delay.  On June 21, 2016, Daniel Spano filed his related action against

V&J National Enterprises, LLC, V&J United Enterprises, LLC, and V&J Holding Companies,

Inc., on behalf of himself and all other delivery drivers employed by V&J during the maximum

statutory period, alleging violations of the Fair Labor Standards Act ("FLSA") and New York

Labor Law.  *Spano v. V&J National Enterprises, LLC*, No. 16-6419, ECF No. 1 (W.D.N.Y. June

21, 2016).  On August 25, 2016, V&J submitted an Answer and Counterclaim, producing an

arbitration agreement allegedly executed by Mr. Spano and seeking declaratory relief that Mr.

Spano's claims must be heard in individual arbitration.  *Id.* at ECF No. 10.[6]

Believing that V&J was operating in good faith and intended to fulfil its obligations

under the arbitration agreement it had produced, Mr. Spano moved to voluntarily dismiss his

action (*id*. at ECF No. 23), filed a complaint before the National Labor Relations Board (*id*. at

ECF No. 23-3), and initiated arbitration proceedings before the American Arbitration

Association ("AAA").  *Id*. at ECF No. 35-1.  However, V&J apparently pursued this arbitration

defense solely for the purpose of delaying and frustrating Mr. Spano's efforts to pursue relief for

himself and his fellow delivery drivers, and had no intention of actually participating in

arbitration.  Instead, V&J refused to pay its required arbitration fee to the AAA, despite multiple

---

[6] Because seeking declaratory relief from the Court is specifically prohibited under the terms of
the arbitration agreement, Mr. Spano sought to dismiss the Counterclaim for lack of jurisdiction
(*Spano v. V&J National Enterprises, LLC*, No. 16-6419, ECF No. 15 (W.D.N.Y. Oct. 3, 2016))
and V&J subsequently filed a motion to compel arbitration.  *Id*. at ECF No. 17.

requests from the AAA, until the AAA eventually closed the arbitration more than three months after Mr. Spano initiated it.  *See id*. at ECF No. 41.[7]

Because of this arbitration defense that V&J raised in *Spano* with no intention of participating, Plaintiff -- seeking to diligently pursue her claims and the claims of her fellow V&J delivery drivers -- was forced to file this related action on February 2, 2017, bringing the same allegations on behalf of the same putative class and collective more than seven months after Mr. Spano first began pursuing relief on behalf of all the drivers.  ECF No. 1.

**B.     V&J Requested Numerous Extensions In *Spano* Based On Settlement Negotiations, But Then Refused To Negotiate In Good Faith.**

Throughout the *Spano* litigation, V&J requested numerous extensions on deadlines related to various briefings involving the arbitration issues described above.  In a good-faith effort to pursue settlement, Mr. Spano consented to V&J's requests for seven extensions to these briefings between October of 2016 and January of 2017.  *See Spano v. V&J National Enterprises, LLC*, No. 16-6419, ECF. Nos. 26, 27, 28, 29, 30, 34, 38 (W.D.N.Y.); Frei-Pearson Decl. at ¶¶ 16-32.[8]  However, it has since become clear that V&J was not participating in these negotiations in good faith, but only drawing out the litigation and delaying conditional

---

[7] Only after Mr. Spano brought V&J's refusal to arbitrate to the Court's attention did V&J ultimately pay the arbitration fee, at which time the AAA offered to re-open the matter.  *Spano v. V&J National Enterprises, LLC*, No. 16-6419, ECF No. 47 (W.D.N.Y. May 26, 2017). However, V&J's manifest refusal to participate in arbitration constitutes both a breach of the agreement and a waiver of its arbitration defense.  *See* ECF No. 22 at 10-12; ECF No. 31; *Spano v. V&J National Enterprises, LLC*, No. 16-6419, ECF. Nos. 41, 49 (W.D.N.Y.).

[8] Mr. Spano consented to additional extensions in May 2017 (*Spano v. V&J National Enterprises, LLC*, No. 16-6419, ECF. Nos. 44, 45, 46 (W.D.N.Y.)), but because of the breakdown in settlement negotiations due to V&J's unwillingness to negotiate in good faith, Plaintiff moved forward with her Motion for Conditional Certification.

certification of a collective, thereby prejudicing collective members through no fault of their own.  *See* Frei-Pearson Decl. at ¶¶ 16-32.[9]

C.    **After Conditional Certification Of The Collective, V&J
       Significantly Delayed Notice To The Putative Collective Members.**

Mindful that the statute of limitations continues to run on putative class members' FLSA claims until they opt-in (particularly after V&J's delaying tactics in *Spano*) Plaintiff moved expeditiously to secure conditional certification and permission to send notice of this action to her fellow delivery drivers.  On March 7, 2017, just over one month after initiating this action, Plaintiff submitted her motion for FLSA conditional certification.  ECF No. 8.  Defendant contested the motion very thoroughly, even submitting supplemental authority when Judge

---

[9] None of the information described herein and in the Declaration of Jeremiah Frei-Pearson concerning settlement negotiations is provided for the purpose of proving the validity or scope of damages for any claims at issue in this litigation.  Plaintiff provides this information solely to demonstrate that V&J delayed this case (and the *Spano* litigation) purportedly to negotiate and then failed to negotiate in good faith.  As such, this evidence is not prohibited under Federal Rule of Evidence 408 or any other applicable statutes.  *See Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 293 (2d Cir. 1999) (holding that evidence of settlement negotiations "though otherwise barred by Rule 408, can fall outside the Rule if it is offered for 'another purpose,' i.e., for a purpose other than to prove or disprove the validity of the claims that [the agreement was] meant to settle.") (quoting *Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 510 (2d Cir. 1989); alteration in original); *PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.*, 520 F.3d 109, 114-15 (2d Cir. 2008) ("The ['another purpose'] exception [to Rule 408] clearly intends to exempt from the absolute prohibition of the Rule evidence focused on issues different from the elements of the primary claim in dispute."); *GemShares, LLC v. Kinney*, No. 17-844, 2017 WL 1092051 at *2 (S.D.N.Y. Mar. 15, 2017) (permitting evidence of negotiations submitted for "background context" rather than "to prove or disprove the validity of a disputed claim"); *Faulkner v. Arista Records LLC*, 797 F. Supp. 2d 299, 316 (S.D.N.Y. 2011) ("Rule 408 generally prohibits the introduction of evidence regarding offers of compromise or settlement when the evidence is offered 'to provide liability for, invalidity of, or amount of a claim that was disputed as to validity or amount.'  Evidence of an offer to compromise may be admissible under the Rule, however, if it is offered for another purpose.") (internal citation omitted); Advisory Committee Notes accompanying 2006 amendments to Evidence Rule 408) ("The intent is to retain the extensive case law finding Rule 408 inapplicable when compromise evidence is offered for a purpose other than to prove the validity, invalidity, or amount of a disputed claim.").

Seibel denied conditional certification without prejudice in a highly distinguishable case involving Plaintiff's counsel.  ECF No. 33.

On June 6, 2017, the Parties attended a conference before the Court.  ECF No. 40.  The original purpose of the conference was to decide the conditional certification issue, but during that conference, the Court asked the Parties whether they could stipulate to a compromise on the conditional certification issue and proposed three possible compromises.  Frei-Pearson Decl. at ¶ 33.  During the conference, Plaintiff's counsel stated that he could agree to two possible compromises, but could not agree to the third.  *Id*.  Defendants requested additional time to consider the issue, and, ultimately, rejected both compromises acceptable to Plaintiff.  *Id*. at ¶¶ 33-34.  At Plaintiff's request, the conference was rescheduled for June 14.  ECF No. 40.  However, the only reason conditional certification was not decided on June 6 was that Defendants could not promptly reach a position on the compromises suggested by the Court.

The Court heard oral argument on it on June 14, 2017 and granted conditional certification of the proposed FLSA collective of all V&J delivery drivers.  *See* ECF. No 41; ECF No. 43.

Plaintiff originally provided a proposed notice on March 7, 2017.  *See* ECF No. 8-2.  Although Defendants objected to the notice (*see* ECF No. 20) they declined Plaintiff's repeated invitation to confer about it.  *See* Frei-Pearson Decl. at ¶ 35.  On June 6, at Plaintiffs' request, the Court instructed the Parties to confer about the notice.  *Id*.  That same day, Plaintiff sent Defendants a Microsoft Word version of the notice, inviting their specific edits by redline, and again offered to confer.  *Id*. at ¶ 36.  Defendants did not provide any edits to the notice until the morning of June 14 when Defendants' counsel provided non-specific and general edits.  *Id*. at ¶ 37.  Despite having failed to confer <u>in any respect</u> about notice until the morning of oral

argument and having failed to offer any specific edits, Defendants requested another week to

confer about the notice.  In conditionally certifying the collective, the Court granted this request.

June 14 Transcript at 41:2-18.[10]

Unfortunately, V&J's impermissible delays continued.  Despite being ordered to

"promptly identify all delivery drivers they have employed at any time during the class period"

(ECF No. 41 (emphasis added)), and repeated requests from Plaintiff, Defendants first delayed in

producing this necessary information for more than five weeks, allowing the date certain that

they eventually provided to Plaintiff to pass without comment.  *See* July 18, 2017 Letter from

Jeremiah Frei-Pearson to Judge Payson, Exhibit Q to Frei-Pearson Decl.  The Court thus had to

issue another order, five weeks after granting conditional certification, requiring Defendants to

produce the collective list by July 21, 2017, which was a date Defendants' proposed.  ECF No.

53.

Incredibly, even after the Court issued this second order, Defendants failed to produce a

complete and acceptable list by the deadline.  The list produced by Defendants did not include

ZIP codes for any delivery drivers, and had incomplete address information for multiple drivers.

*See* Plaintiff's July 28, 2017 Letter to Judge Payson, Exhibit R to Frei-Pearson Decl. ("July 28

Letter"); ECF No. 55.  When Plaintiff tried to resolve this amicably, Defendants (for the first

time) took the position that they need not provide a list with ZIP codes because a ZIP code is not

a complete address and also (for the first time) asked Plaintiff to pay the cost of producing a

complete collective list.  *See* July 28 Letter.  Defendants' arguments were obviously frivolous, as

"a ZIP code is part of an address" (*Tyler v. Michaels Stores, Inc.*, 840 F. Supp. 2d 438, 443 (D.

---

[10] Despite that Defendants included proposed edits not previously raised with Plaintiff during
conferral, the final form for the notice was agreed upon and approved following a telephone
conference with the Court on June 22, 2017.  *See* ECF No. 46.

Mass. 2012)) and Plaintiff was again forced to involve the Court.  *See* July 28 Letter.  Thus, on August 3, 2017, the Court entered a <u>third</u> Order directing Defendants to produce the list that the Court had already instructed them to "promptly" provide seven weeks earlier.  ECF No. 55.

Defendants did not produce a full and complete list until August 8, 2017.  Frei-Pearson Decl. at ¶ 38.  As printing individually-addressed notice forms and mailing labels and other logistical steps take at least a full day, Plaintiff was therefore not able to send notice to the collective until August 10, more than eight weeks after conditional certification was granted.  *See id.* at ¶ 39.

Because of V&J's repeated delays in this matter and the related *Spano* action, notice to V&J's delivery drivers informing them of their right to join this action was delayed for more than a year after Mr. Spano first began pursuing these claims on their behalf, and fact discovery is still far from complete now more than two years after those claims were first filed.  Over the past three months alone:

- On April 5, 2018, Defendants represented to Plaintiff and the Court that they would provide a date certain for the production of hardcopy delivery driver documents by May 15, 2018.  They did not provide an update on the hardcopy documents by that deadline they themselves set.

- On May 15, 2018, Defendants represented to Plaintiff that they would "circle back" on May 16, 2018 regarding the hardcopy delivery driver documents. Defendants did not provide a date certain for producing hardcopy documents by that deadline they themselves set.

- On June 6, 2018, Defendants represented to Plaintiff that they would provide an update on outstanding discovery issues by June 7, 2018.  Defendants did not

provide a date certain for resolving these discovery issues by that deadline they themselves set.

- On June 26, 2018, Defendants represented to Plaintiff that they would provide an update on all outstanding discovery issues following an internal call between V&J and their counsel on June 27, 2018.  Defendants did not provide a date certain or any update on resolving these discovery issues by that deadline they themselves set, nor have they provided such information to date.

A Court order compelling the production of documents and imposing appropriate sanctions is the only way to bring an end to this latest sustained effort at delay.

## ARGUMENT

### I.    Legal Standard.

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, the scope of discovery includes "any matter, not privileged which is relevant to the subject matter involved in the pending action."  Fed. R. Civ. P. 26(b)(1).  If the information sought is not protected by either the cloak of privilege or other rule-specific exclusions, then discovery is broad enough to include information "reasonably calculated to lead to the discovery of admissible evidence."  *Id*.

The United States Supreme Court has long recognized the discovery rules are accorded a broad and liberal treatment.  "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.  To that end, either party may compel the other to disgorge whatever facts he has in his possession."  *Hickman v. Taylor*, 329 US 495, 507-08 (1947); *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984) ("Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes."). "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept." *Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004).  "Thus, the Rule 26(b)(1) standard

presents a 'relatively low threshold' for a party to show that the material sought is relevant to any

claim or defense in the litigation." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D.

184, 186 (S.D.N.Y. 2014) (quoting *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 421

(E.D.N.Y. 2007)).  Within this liberal framework, the Court "has broad latitude to determine the

scope of discovery and to manage the discovery process." *EM Ltd. v. Republic of Argentina*, 695

F.3d 201, 207 (2d Cir.2012).

## II.     The Discovery Plaintiff Seeks Is Clearly Relevant To The Subject Matter Of This Litigation.

### A.     Documents Related To Records Of Delivery Drivers Are Relevant To Establishing And Calculating Damages.

Since March of 2017, Plaintiff has sought, *inter alia*, documents related "to the distance

driven by Delivery Drivers while they deliver food or beverages on [V&J's] behalf, including:

Driver Activity Records, Driver Dispatch/Cash Audit Reports, and Point-of-Sale System Data."

*See* Exhibit A to Frei-Pearson Decl.  On February 14, 2018, Defendants represented to Plaintiff,

for the first time, that most of this information is not available in electronic format.  *See* Exhibit

H to Frei-Pearson Decl. at 2-3.

It is beyond cavil that these documents and data are relevant to the subject matter of this

litigation.  This information will allow Plaintiff to calculate the actual delivery distances driven

by V&J's drivers in the course of their work for Defendants, and thus calculate the difference

between their actual expenses and the insufficient amount that Defendants paid.  *See, e.g., In the

Matter of Arbitration,* 2015 WL 8682313, at *8 (AAA Aug. 13, 2015) (calculating damages of

pizza delivery driver for under-reimbursement of automotive expenses through use of "Driver

Activity Reports and Driver Dispatch Cash Audit Reports"); *In the Matter of Arbitration,* 2015

WL 8682319, at *8 (AAA Aug. 13, 2015) (same).  As this information is clearly relevant, and no

claims of privilege or undue burden have been made, the Court should order Defendants to

immediately produce the requested documents and data.  *See, e.g., Gorzynski v. JetBlue Airways Corp.*, No. 03-774, 2012 WL 712067 (W.D.N.Y. Mar. 5, 2012) (compelling production of personnel and payroll documents relevant to claims at issue).  If it turns out that Defendants truly do not have this information then Plaintiff will likely bring a spoliation motion.

**B.      A Complete Production Of Communications Related To Defendants'<br>Reimbursement Policy Is Relevant To V&J's Willfulness And Liability.**

In cases similar to this one, pizza companies have typically produced thousands of pages of emails and attachments in response to document requests analogous to Plaintiff's demand for "[a]ll documents relating to communications concerning reimbursements paid to Delivery Drivers."  *See* Frei-Pearson Decl. at ¶ 11.  To date, V&J has produced only 32 pages of emails and attachments responsive to this request, and only 41 pages of emails and attachments in total. *See id.* at ¶¶ 6, 10.  V&J is almost certainly withholding responsive documents or has spoliated evidence.

Documents and communications speaking to the development, implementation, and application of the policy at issue in this case are clearly relevant to the V&J's liability and to establishing that the FLSA violations at issue are willful.  *See, e.g., Parada v. Banco Indus. De Venez., C.A.*, 753 F.3d 62, 71 (2d Cir. 2014) ("To prove a willful violation of the FLSA within the meaning of § 255(a), it must be established that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.")

**C.      A Complete Production Of All Opt-In<br>Plaintiffs' Arbitration Agreements Is Relevant.**

Defendants produced a declaration stating that "[a]pproximately 60%" of V&J delivery drivers employed from 2014 to 2017 were "required to sign an Arbitration and Collective/Class Waiver Agreement."  ECF No. 20-1, at ¶¶ 2-4.  However, after 197 drivers opted into this

litigation, V&J only produced 69 such arbitration agreements -- approximately 50 fewer than should have been produced if V&J's declaration were true.  *See* Frei-Pearson Decl. at ¶¶ 7-8.

A declaration as to the existence of arbitration agreements is not sufficient to force a plaintiff into arbitration -- actual valid, signed agreements must be produced.  *See, e.g.*, *Barkley v. Pizza Hut of America, Inc.*, No. 14-376, 2014 WL 3908197 (M.D. Fl. Aug. 11, 2014) (denying motion to compel arbitration where employer submitted declarations stating that all employees agreed to arbitrate, but failed to produce declarations signed by all plaintiffs); *Tae In Kim v. Dongbu Tour & Travel, Inc.*, 529 F. App'x 229, 234 (3d Cir. 2013) *cert. denied,* 134 S. Ct. 826 (U.S. 2013) ("Dongbu's claim that Tae In Kim agreed to arbitrate any dispute that he might have with Dongbu is devoid of any possible merit, as the District Court plainly believed, because Dongbu wants us to require him to arbitrate his claims pursuant to an arbitration clause contained in a contract that it cannot show that he executed"); *Grant v. House of Blues New Orleans Restaurant Corp.*, No. 10-3161, 2011 WL1596207, at *5-7 (E.D. La. Apr. 27, 2011) (denying motion to compel arbitration where employer claimed to require all employees to agree to arbitrate, but could not provide a complete arbitration agreement signed by the plaintiff).

Given V&J's representations that 60 percent of collective members should be in arbitration, Plaintiff is clearly entitled to a full production of all relevant arbitration agreements that V&J contends are valid and enforceable.  Opt-in Plaintiffs must be able review the actual arbitration agreements V&J alleged they signed in order to, if necessary, either oppose enforcement of those agreements or attempt to engage in arbitration.

Similarly, given V&J's conduct in failing to arbitrate with Mr. Spano, their non-privileged communications relating to the arbitration agreement are also relevant to the issue of

whether there may be class-wide waiver and as to the Parties' intent at the time any arbitration agreements were signed.  Those documents should also be produced without further delay.

      **D.**      **Documents Related To The Sale Of Defendants' Pizza Hut**
                     **Restaurants Are Relevant To Determining The Proper Class Period.**

Plaintiff reasonably believes that Defendants will attempt to limit the class period to only those wage and hour violations that occurred prior to V&J's sale of the at-issue Pizza Hut stores. However, Plaintiff is entitled to analyze whether the sale of these stores was a genuine arms-length transaction with a legitimate third party.  Defendants have already attempted to confuse issues of liability, as even though V&J Holding Companies, Inc. holds itself out to the public as "the largest minority-owned Pizza Hut franchise in the U.S." (ECF No. 49-2), it has argued before this Court that it is not responsible for the wage and hour practices at these restaurants. *See* ECF No. 38-2 at § III.  Likewise, Defendants have argued that the on-paper owners of the restaurants themselves, V&J National Enterprises, LLC and V&J United Enterprises, LLC, are not responsible for the wage and hour practices within.  *See id*.  Plaintiff is thus weary of potential "shell games" to avoid liability, and reasonably seeks documents related to the sale of the Pizza Hut restaurants to determine if and when V&J's status as the employer at those restaurants may have actually ended.

**III.**     **Defendants Should Be Sanctioned For Their Dilatory Conduct.**

It is well established that "sanctions, at a minimum reasonable attorneys fees, incurred in prosecuting a motion to compel are mandated by Rule 37(a)(5)(A) unless the failure of the responding party to provide discovery was substantially justified or an award of attorneys fees would, under the circumstances, be unjust."  *Rosehoff, Ltd. v. Truscott Terrace Holdings LLC*, No. 14-277, 2016 WL 2640351, at *4 (W.D.N.Y. May 10, 2016); *see also, e.g., Blue Zenith, LLC v. Rohde*, No. 12-1071, 2013 WL 5574637, at *4 (W.D.N.Y. Oct. 9, 2013) (finding "an

award of attorneys' fees is appropriate" for motion to compel where "there appears to be no substantial justification for failing to disclose" documents in a timely fashion); *Mayer Bros. Const. Co. v. Dinsick Equip. Corp.*, No. 11-14, 2012 WL 691604, at *2 (W.D. Pa. Mar. 2, 2012) ("The Federal Rules of Procedure provide that, where a motion to compel discovery is granted, 'the court must require the party failing to act . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.'") (quoting Fed. R. Civ. P. 37(d)(3); Fed. R. Civ. P. 37(a)(5)(A)) (collecting cases).

There is no such substantial justification here, nor would the award of fees be unjust. Many of the documents and data at issue were requested more than 15 months ago, yet Defendants have not even provided so much as a date certain for their production.  Plaintiff has repeatedly attempted to confer in good faith to resolve these issues, yet delay after delay has ultimately necessitated the instant motion practice.  Absent strong sanctions, Defendant will no doubt continue to ignore deadline and delay this case indefinitely.  Accordingly, Plaintiff respectfully requests that the Court order an award of all reasonable attorneys' fees and costs associated with Defendants' conduct and any other relief the Court deems just and proper.

## **CONCLUSION**

Defendants have made delay a centerpiece of their litigation strategy since the filing of the initial *Spano* action.  Discovery demands from March of 2017 are, at present, still unfulfilled and Defendants have not even provided so much as a date certain for producing the documents and data at issue.  As such, Plaintiff respectfully requests that the Court order Defendants to immediately produce all outstanding responsive discovery documents and sanction Defendants

by awarding Plaintiff reasonable attorneys' fees and costs and any other relief the Court deems

just and proper.


Dated: July 11, 2018                           Respectfully submitted,

                                               */s/ Jeremiah Frei-Pearson*
                                               Jeremiah Frei-Pearson
                                               Andrew C. White
                                               **FINKELSTEIN, BLANKINSHIP,**
                                               **FREI-PEARSON & GARBER, LLP**
                                               445 Hamilton Avenue, Suite 605
                                               White Plains, New York 10601
                                               Telephone:  (914) 298-3281
                                               Facsimile:   (914) 824-1561

                                               *Attorneys for Plaintiff*
                                               *and the Putative Class*