UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

JACQUELINE BEEBE, individually and on behalf of all others similarly situated,

Plaintiff,

v.

V&J NATIONAL ENTERPRISES, LLC, V&J UNITED ENTERPRISES, LLC, V&J EMPLOYMENT SERVICES, INC. and V&J HOLDING COMPANIES, INC.,

Defendants.

Case No. 6:17-cv-06075-EAW-MWP

Class / Collective Action

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION TO COMPEL PRODUCTION AND FOR SANCTIONS

## PRELIMINARY STATEMENT

The scope of V&J's[1] disregard for its discovery obligations is breathtaking. For example, during the August 1, 2018 deposition of V&J's 30(b)(6) witness on document-related topics, V&J admitted that it never placed a litigation hold on documents related to this litigation, and that, among other examples of gross spoliation, relevant documents and data were overwritten or discarded in the regular course of business.[2] *See* Transcript of V&J 30(b)(6) Deposition ("30(b)(6) Transcript"), Exhibit A to Declaration of Jeremiah Frei-Pearson, at 124:13-25 ("Q. Okay. Were you ever told to put a litigation hold on any emails or other documents in your possession?. A. No. Q. Other than instructions to you directly, are you aware if V&J ever

---

[1] For the sake of brevity and consistency, this brief uses the same abbreviations established in Plaintiff's initial Memorandum of Law in support of her motion. ECF No. 157-1.

[2] Plaintiff anticipates bringing a motion to address Defendants' spoliation in the near future.

{00294361 }

issued any sort of litigation hold relating to any documents or emails?  A.  No.  Q.  With no litigation hold in place, addresses on the SUS system . . . would be overwritten when new addresses from repeat customers are entered?  A.  Correct.").  Nonetheless, an order to compel the complete production of relevant documents is still necessary for those documents and data which survived spoliation -- or may yet be retrieved -- but have not been produced.

In its opposition brief, V&J seems confused as to the scope of Plaintiff's motion -- misconstruing the background context that Plaintiff provided on V&J's extensive delay tactics in settlement negotiations to mean that Plaintiff is seeking the Court to compel such a settlement. In an abundance of caution, Plaintiff therefore reiterates that the relief she seeks is an order compelling V&J to produce all outstanding responsive discovery documents in its possession, custody, or control, and for sanctions covering the fees and costs Plaintiff incurred as a result of V&J's refusal to provide responsive documents.

**I.     V&J Should Be Compelled To Produce Documents
        Related To The Alleged Sale Of Its Pizza Hut-Branded Stores**

    **A.     The Alleged Sale Of The Pizza Hut Stores
                Determines Whether And When V&J's Liability Ends,
                And Is Clearly Relevant To The "Simple Math" Underlying This Case.**

V&J is correct that determining liability and damages in this matter hinges on the extent to which it under-reimbursed delivery drivers for the miles they drove on its behalf.  However, in arguing that documents related to the alleged sale of its Pizza Hut-branded restaurants are irrelevant, V&J ignores that the existence and timing of such a sale may set the relevant time period for many class members' claims.  Evaluating this alleged sale is thus relevant to the case.

V&J has represented that it sold its Pizza Hut-branded stores in September of 2017. During the August 1, 2018 30(b)(6) deposition, V&J, for the first time, represented that these stores were sold to Pizza Hut, Inc. on September 6, 2018.  *See* 30(b)(6) Transcript, at 24:6-14.

However, V&J refuses to produce any documents relating to this sale or provide substantive information about the sale. Plaintiff reasonably believes that V&J will attempt to limit the class period to only those wage and hour violations that occurred prior to this alleged sale. Plaintiff is entitled to know whether V&J sold its business through an arms-length transaction with a genuine third party or whether V&J arranged for ownership to simply pass back-and-forth with Pizza Hut corporate, only to then reclaim ownership or control of some or all of those restaurants.

Moreover, if the policies at issue in this litigation have continued at these stores past the date of the sale, discovery relating to the new owners may also be relevant to identifying all proper defendants in this litigation.

  **B.** **V&J's Confidentiality Agreement With A Third Party Is Not A Compelling Reason To Deny Plaintiff Access To Relevant Discovery.**

V&J argues that it should not be required to produce relevant discovery documents due to a confidentiality agreement with a third party -- Pizza Hut, Inc. V&J provides no legal authority for its claim that this agreement should shield it from otherwise relevant discovery obligations, nor can it. The desire of parties to an agreement to keep its terms confidential does not shield that agreement from discovery. *See, e.g.*, *Laforest v. Honeywell Intern. Inc.*, No. 03-6248, 2004 WL 1498916, at *7 (W.D.N.Y. July 1, 2004) ("However, the mere fact that the third-party defendants designated their indemnification agreement as confidential does not shield it from discovery. In sum, despite the third-parties' desire to maintain its confidentiality, the Agreement is not privileged, but it is relevant and reasonably calculated to lead to the discovery of admissible evidence.") (internal citations omitted); *Tribune Co. v. Purcigliotti*, No. 93-7222, 1996 WL 337277, at *3 (S.D.N.Y. June 19, 1996) ("Finally, the mere fact that the settling parties

agreed to maintain the confidentiality of their agreement cannot serve to shield it from discovery.").[3]

From the outset of the discovery process, Plaintiff has been amenable to a Court-ordered confidentiality stipulation. *See* ECF No. 157-2 at ¶ 3. Such an agreement is a much more appropriate method for addressing V&J's purported concerns -- indeed, it is the method that Pizza Hut, Inc. itself, as well as other pizza companies, employs in similar litigation.[4] *See Smith v. Pizza Hut, Inc.*, No. 09-1632 ECF No. 40 (D. Colo. Sept. 11, 2009) (Pizza Hut Inc. entering stipulated confidentiality agreement to facilitate the discovery of documents in pizza delivery driver reimbursement case); *cf, e.g.*, *Bellaspica v. PJPA, LLC*, No. 13-3014, ECF No. 31 (E.D. Pa. Nov. 1, 2013) (Papa John's pizza franchisee entering stipulated confidentiality agreement to facilitate the discovery of documents, including documents related to the sale of the franchisee's restaurants); *Durling v. Papa John's Int'l, Inc.*, No. 16-3592, ECF No. 40 (S.D.N.Y. July, 20, 2016) (entering stipulated confidentiality agreement to facilitate the discovery of documents in pizza delivery driver reimbursement case, including documents related to sales of restaurants with franchisees).

II.  **Electronic Data On Deliveries Were Generated Through The Point-Of-Sale System V&J Used And Should Be Produced.**

As its 30(b)(6) witness testified, V&J -- like all domestic Pizza Hut franchisees -- used Pizza Hut's proprietary SUS point-of-sale system at its restaurants. *See* 30(b)(6) Transcript at

---

[3] During the 30(b)(6) deposition, V&J's designated witness was instructed by his counsel not to answer most questions related to the noticed topic of the sale. See 30(b)(6) Transcript at 10:22-12:10. If the Court denies Defendants' motion for a protective order on this topic (ECF No. 159) and Plaintiff determines it is necessary to re-depose the witness, Plaintiff anticipates bringing another motion for sanctions to cover the costs of such a second deposition.

[4] V&J does not appear to have ever even asked Pizza Hut, Inc. whether it would object to the production of these documents once there is a confidentiality stipulation in place.

26:20-27:10. This system generated electronic records of the address to which every delivery was made and electronic records of which driver made the deliveries. *See id*. at 30:12-21. This SUS data was not only transmitted to Pizza Hut, Inc., but V&J also shared it with a third party company called UT&I. *See id*. at 37:15-38:7. V&J's 30(b)(6) witness testified that "a crash in the system" impaired V&J's ability to access the SUS data shortly after V&J sold its stores to Pizza Hut, Inc. (*see id*. at 41:10-42:5) -- which was long after Plaintiff's counsel explicitly told V&J that it would have to produce SUS data (Plaintiff's counsel are familiar with SUS data from proceedings against different defendants and have never before had to engage in motion practice to obtain SUS data).

To the extent electronic copies of this data still exist following V&J's apparent spoliation, it should be required to produce them immediately. This includes copies that it can obtain from Pizza Hut Inc. and/or UT&I. *See S.E.C. v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 471-72 (S.D.N.Y. 2000) ("'Control' has been construed broadly by the courts as the legal right, authority, or practical ability to obtain the materials sought upon demand . . . [including] where a corporate entity has the ability in the ordinary course of business to obtain documents held by another corporate entity"); *Landry v. Swire Oilfield Services, L.L.C.*, 323 F.R.D. 360, 396-97 (D. N.M. 2018) (requiring production of records in electronic format and concluding "that the Defendants have 'control' over the requested records based on the Defendants' relationship with [a third party] and their concession that [the third party] has the data requested").

### III. Plaintiff Should Be Involved In Setting The Parameters Of The Email And ESI Search.

For months, Plaintiff sought to substantively meet and confer on discovery issues with V&J, including issues related to electronically stored information ("ESI"). *See* ECF No. 157-2, at ¶¶ 13-15. Despite these efforts, at no point did V&J confer over or even share the parameters

of its ESI searches, and Plaintiff first learned of the steps V&J took to produce ESI through its opposition brief to this motion and associated declaration of counsel. ECF Nos. 160-161. While Plaintiff's instant motion has at least produced some response from V&J, substantially more is necessary to ensure that all relevant documents have been produced.

V&J has still not even identified all of the custodians whose email it searched, naming only four of the purported dozen employees. *See* ECF No. 160. Furthermore, V&J unilaterally set the search terms and date range for whatever searches it ran on these custodians' documents. The paucity of responses these email searches turned up is precisely the reason that parties normally confer back and forth over ESI protocols and search terms, normally providing estimated "hit" results, to ensure that adequate responsive documents are identified and produced without undue burden on the producing party. That did not happen here, and Plaintiff therefore reasonably believes that V&J's production of emails and ESI remains woefully incomplete, requiring this motion to compel.

Unfortunately, it has become clear that Court action is necessary to facilitate V&J's meaningful participation in ESI discovery. Plaintiff thus requests that the Court order the production of all responsive emails and ESI and direct V&J to expeditiously confer with Plaintiff in good faith on setting any necessary ESI protocol and search terms. Plaintiff asks that the Court instruct the Parties to submit competing proposals if they are unable to come to agreement on such protocols or search terms.

### IV.    V&J Should Be Limited To The Arbitration Agreements Produced To Date.

Highlighting the inadequacy of V&J's production of documents prior to the instant motion, V& produced an additional 226 pages of signed arbitration agreements *after* Plaintiff filed her motion. Plaintiff is willing to take V&J at its word that these are all the relevant arbitration agreements, but requests that V&J be limited, under Federal Rule of Civil Procedure

37(c), to these produced agreements for purposes of any future motions or arguments. Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing or at trial, unless the failure was substantially justified or is harmless."); *see, e.g., Lujan v. Cabana Management, Inc.*, 284 F.R.D. 50, 70-71 (E.D.N.Y. 2012) (precluding employer-defendant's use of documents not produced during discovery in FLSA case).

## V.     Sanctions Are Appropriate.

V&J has not established that its failure to produce the key discovery documents at issue was substantially justified -- indeed the recent 30(b)(6) has brought to light aggravating circumstances in V&J's likely spoliation. "[S]anctions, at a minimum reasonable attorneys fees, incurred in prosecuting a motion to compel are mandated by Rule 37(a)(5)(A) unless the failure of the responding party to provide discovery was substantially justified or an award of attorneys fees would, under the circumstances, be unjust." *Rosehoff, Ltd. v. Truscott Terrace Holdings LLC*, No. 14-277, 2016 WL 2640351, at *4 (W.D.N.Y. May 10, 2016); *see also, e.g., Blue Zenith, LLC v. Rohde*, No. 12-1071, 2013 WL 5574637, at *4 (W.D.N.Y. Oct. 9, 2013) (finding "an award of attorneys' fees is appropriate" for motion to compel where "there appears to be no substantial justification for failing to disclose" documents in a timely fashion); *Mayer Bros. Const. Co. v. Dinsick Equip. Corp.*, CA 11-14, 2012 WL 691604, at *2 (W.D. Pa. Mar. 2, 2012) ("The Federal Rules of Procedure provide that, where a motion to compel discovery is granted, 'the court must require the party failing to act . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.'") (quoting Fed. R. Civ. P. 37(a)(5)(A)) (collecting cases). Given V&J's extensive pattern of delay throughout the litigation, there would be nothing unjust about imposing such sanctions here.

Many of the documents and data at issue were requested more than 15 months ago, and Plaintiff repeatedly attempted to confer in good faith to resolve these issues without involving the Court. But delay followed delay, and missed deadline followed missed deadline. Only after Plaintiff brought this motion did V&J produce the additional arbitration agreement, or provide even the most cursory information on its ESI search.

Absent strong sanctions, Plaintiff believes that V&J will continue to ignore deadlines and delay this case indefinitely. Accordingly, Plaintiff respectfully requests that the Court order an award of all reasonable attorneys' fees and costs associated with Defendants' conduct and any other relief the Court deems just and proper.

## CONCLUSION

For the reasons stated above, and in her initial memorandum of law in support of her motion, and in her opposition to V&J's motion for a protective order, Plaintiff respectfully requests that the Court grant her motion to compel production of documents and for sanctions, and thus allow long-overdue discovery proceedings to move toward completion.

Dated: August 13, 2018　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Jeremiah Frei-Pearson*
　　　　　　　　　　　　　　　　　　　　　　　　Jeremiah Frei-Pearson
　　　　　　　　　　　　　　　　　　　　　　　　Andrew C. White
　　　　　　　　　　　　　　　　　　　　　　　　**FINKELSTEIN, BLANKINSHIP,**
　　　　　　　　　　　　　　　　　　　　　　　　**FREI-PEARSON & GARBER, LLP**
　　　　　　　　　　　　　　　　　　　　　　　　445 Hamilton Avenue, Suite 605
　　　　　　　　　　　　　　　　　　　　　　　　White Plains, New York 10601
　　　　　　　　　　　　　　　　　　　　　　　　Telephone: (914) 298-3281
　　　　　　　　　　　　　　　　　　　　　　　　Facsimile:  (914) 824-1561

　　　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff*
　　　　　　　　　　　　　　　　　　　　　　　　*and the Putative Class*