**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JACQUELINE BEEBE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>V&J NATIONAL ENTERPRISES, LLC, V&J UNITED ENTERPRISES, LLC, V&J EMPLOYMENT SERVICES, INC., and V&J HOLDING COMPANIES, INC.,<br><br>Defendants. | Case No. 6:17-cv-06075-EAW-MWP<br><br>Class / Collective Action |

**MEMORANDUM OF LAW IN SUPPORT**
**OF PLAINTIFF'S UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................... iv

I.      Introduction ...................................................................... 1

II.     Relevant Factual and Procedural Background ....................... 1

        A.    Factual Allegations ................................................... 1

        B.    Procedural History and Settlement Negotiations ........... 2

              1.    Litigation Of These Claims Began With The Related *Spano* Matter .......... 2

              2.    Plaintiff Initiated The Instant Matter
                    And Conditionally Certified A Collective ................... 3

              3.    V&J Sought to Directly Settle
                    Drivers' NYLL Claims And Plaintiff
                    Sought And Received A Temporary Restraining Order ............ 4

              4.    The Parties Engaged In Extensive
                    Discovery, Including Motion Practice ...................... 6

              5.    Forty-Nine Additional Drivers
                    Filed Arbitration Demands with the AAA ................... 7

              6.    The Parties Reached
                    Settlement Following Multiple Rounds
                    of Arms-Length Negotiations, Culminating with
                    the Assistance of Magistrate Judge Payson as a Mediator ........ 8

III.    Summary Of The Settlement Terms ................................... 9

        A.    The Settlement Fund ................................................. 9

        B.    Release ................................................................. 9

        C.    Class Members ...................................................... 10

        D.    Allocation Formula And Payment Distribution ............ 11

        E.    Attorneys' Fees And Litigation Costs ....................... 11

        F.    Service Payment To Class Representative ................. 12

IV.     Argument ......................................................................... 13

A.    Class Action Settlement Procedure.......................................................13

B.    The Standards For Approval Of A Class Action Settlement................................15

C.    The Court Should Grant Preliminary
      Approval Of The Settlement Agreement ..................................................17

      1.    The Litigation Is Complex And Will Be Expensive And Lengthy...........19

      2.    The Reaction Of The Class Will Most Likely Be Positive.......................19

      3.    The Progress Of The Instant
            Litigation And The Extensive Discovery
            That Has Occurred Favors Preliminary Approval ....................................20

      4.    Plaintiff Faces Hurdles In Establishing Liability,
            Proving Damages, And Maintaining A Class Through Trial ...................21

      5.    There Are Concerns Regarding
            Defendants' Ability To Pay A Judgement ...............................................22

      6.    The Settlement Amounts Are
            Reasonable In Light Of The Best Possible Recovery
            And In Light Of All The Attendant Risks Of Litigation .........................22

      7.    There Are No Agreements To Identify Pursuant To Rule 23(e)(3)...........24

D.    The Court Should Conditionally Certify The Class................................................25

      1.    The Settlement Class Satisfies Rule 23(a)................................................25

            a.    The Class Is So Numerous That
                  Joinder Of All Members Is Impracticable ....................................25

            b.    There Are Questions Of Law
                  Or Fact Common To The Class ....................................................26

            c.    Plaintiff's Claims Are Typical Of The Claims Of The Class ........26

            d.    Plaintiff Will Fairly And
                  Adequately Protect The Interests Of The Class............................27

            e.    Class Members Are Readily Identifiable And Ascertainable ........28

      2.    The Settlement Class Satisfies Rule 23(b)(3) ............................................28

        a.     Common Questions Predominate Over Individual Issues ............29

        b.     A Class Action Is A Fair And Efficient
               Method For Adjudicating This Controversy...................................29

  E.     Plaintiff's Counsel Should Be Appointed As Class Counsel................................30

  F.     The Proposed Class Notice is Appropriate ............................................................31

V.    Conclusion .....................................................................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997) ...................................................................................................... 29

*Bellaspica v. PJPA LLC*,
   No. 13-3014 (E.D. Pa. Apr. 1, 2016) .................................................................... 22, 24

*Berland v. Mack*,
   48 F.R.D. 121 (S.D.N.Y. 1969) ................................................................................... 32

*Cagan v. Anchor Sav. Bank FSB*,
   1990 WL 73423 (E.D.N.Y. May 22, 1990) ................................................................. 23

*Chambery v. Tuxedo Junction Inc.*,
   10 F. Supp. 3d 415 (W.D.N.Y. 2014) ................................................... 17, 25, 27, 28

*Chambery v. Tuxedo Junction Inc.*,
   2014 WL 3725157 (W.D.N.Y July 25, 2014) ............................................................ 23

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ................................................................................... 18, 23

*Cohen v. J.P. Morgan Chase & Co.*,
   262 F.R.D. 153 (E.D.N.Y. 2009) ................................................................................ 25

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995) .......................................................................................... 26

*County of Suffolk v. Long Island Lighting Co.*,
   907 F.2d 1295 (2d Cir. 1990) ...................................................................................... 18

*D'Alauro v. GC Services Ltd. P'ship*,
   168 F.R.D. 451 (E.D.N.Y. 1996) ................................................................................ 27

*Danieli v. IBM*,
   2009 WL 6583144 (S.D.N.Y. Nov. 16, 2009) ........................................................... 17

*Davis v. J.P. Morgan Chase & Co.*,
   775 F. Supp. 2d 601 (W.D.N.Y.2011) ................................................................... 17, 26

*deMunecas v. Bold Food, LLC*,
   2010 WL 2399345 (S.D.N.Y. Apr. 19, 2010) ............................................................ 31

iv

*Dura–Bilt Corp. v. Chase Manhattan Corp.*,
    89 F.R.D. 87 (S.D.N.Y. 1981) ................................................................................ 27

*Elliot v. Leatherstocking Corp.*,
    2012 WL 6024572 (N.D.N.Y. Dec. 4, 2012) ........................................................ 13

*Fata v. Pizza Hut of Am., Inc.*,
    2016 WL 7130932 (M.D. Fl. Oct. 31, 2016) ........................................................ 27

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005) ............................................................ 12, 19, 23, 26

*General Tel. Co. of Southwest v. Falcon*,
    457 U.S. 147 (1982) .............................................................................................. 26

*Gilliam v. Addicts Rehab. Ctr. Fund*,
    2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ........................................................ 12

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) .............................................................. 19, 21

*In re Currency Conversion Fee Antitrust Litig.*,
    2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) ........................................................ 20

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................... 19

*In re Nasdaq Market–Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y.1997) ............................................................................ 17

*In re Nissan Motor Corp. Antitrust Litig.*,
    552 F.2d 1088 (5th Cir. 1977) ............................................................................. 16

*In re PaineWebber Ltd. Partnerships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) .......................................................................... 21

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) ................................................................................ 29

*In re "Agent Orange" Prod. Liab. Litig.*,
    611 F. Supp. 1396 (E.D.N.Y. 1985) .................................................................... 24

*Jankowski v. Castaldi*,
    2006 WL 118973 (E.D.N.Y. Jan. 13, 2006) ........................................................ 30

*Jermyn v. Best Buy Stores, L.P.*,
2010 WL 5187746 (S.D.N.Y. Dec. 6, 2010)..........................................................32

*Khait v. Whirlpool Corp.*,
2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010)..............................................14, 15, 16

*Lizondro-Garcia v. Kefi LLC*,
300 F.R.D. 169 (S.D.N.Y. 2014).................................................................28, 29

*Martens v. Smith Barney, Inc.*,
181 F.R.D. 243 (S.D.N.Y. 1998)........................................................................21

*Morris v. Affinity Health Plan, Inc.*,
859 F. Supp. 2d 611 (S.D.N.Y. 2012)................................................................23

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972)...............................................................................23

*Perrin v. Papa John's Int'l. Inc.*,
2013 WL 6885334 (E.D. Mo. Dec. 31, 2013)..................................................27

*Plummer v. Chemical Bank*,
668 F.2d 654 (2d Cir. 1982)...............................................................................21

*Port Authority Police Benev. Ass'n, Inc. v. Port Authority of New York and New Jersey*,
698 F.2d 150 (2d Cir. 1983)...............................................................................26

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
237 F.R.D. 26 (E.D.N.Y. 2006) ........................................................................32

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993)...............................................................................27

*Rossini v. Ogilvy & Mather, Inc.*,
798 F.2d 590 (2d Cir. 1986)...............................................................................30

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*,
2004 WL 1087261 (S.D.N.Y. May 14, 2004)....................................................24

*Thompson v. Metropolitan Life Ins. Co.*,
216 F.R.D. 55 (S.D.N.Y.2003)..........................................................................19

*Trief v. Dun & Bradstreet Corp.*,
144 F.R.D. 193 (S.D.N.Y. 1992)........................................................................26

*Vazquez v. Lamont Fruit Farm, Inc.*,

2011 WL 6148806 (W.D.N.Y. Dec. 12, 2011) ........................................................ 17

*Viafara v. MCIZ Corp.*,
    2014 WL 1777438 (S.D.N.Y. May 1, 2014) .................................................... 13

*Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir.2005) ............................................................... 12, 16, 17

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) ...................................................................... 16

*Willix v. Healthfirst, Inc.*,
    2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) .................................................. 12, 14

**Rules**

Fed. R. Civ. P. 23(b)(2)(B) ........................................................................ 32

Fed. R. Civ. P. 23(b)(3)(A-D) ..................................................................... 30

Fed. R. Civ. P. 23(e) ................................................................................. 14

Fed. R. Civ. P. 23(e)(2) ......................................................................... 18, 19

Fed. R. Civ. P. 23(e)(2)(C)(iii) and 23(e)(3) .................................................. 25

Fed. R. Civ. P. 23(g)(1)(C)(i) ..................................................................... 31

Fed. R. Civ. P. 23(h) & 54(d)(2) ................................................................. 12

Federal Rule of Civil Procedure 23 .......................................................Passim

Federal Rule of Civil Procedure 23(a) ................................................ 25, 26, 29

Rule 23(a)(2) .......................................................................................... 26

Rule 23(a)(3) .......................................................................................... 27

Rule 23(a)(4) .......................................................................................... 28

Rule 23(b) ............................................................................................. 25

Rule 23(b)(3) ..................................................................................... 29, 30

Rule 23(c)(2)(B) ...................................................................................... 31

Rule 23(c)(3) ................................................................................................................ 32

Rule 23(e)(3) ................................................................................................................ 18

Rule 23(g) .................................................................................................................... 31

**Other Authorities**

Manual for Complex Litigation (Third) § 30.42 (1995) ............................................... 17

Newberg § 3.13 ............................................................................................................ 27

*Newberg*") §§ 11.22 .................................................................................................... 14

Newberg"), § 11.41 (4th ed. 2002) ............................................................................. 16

## I.     <u>INTRODUCTION</u>

Pursuant to Federal Rule of Civil Procedure 23, Plaintiff Jacqueline Beebe ("Plaintiff" or "Class Representative"), on behalf of a putative settlement class, respectfully requests that this Court preliminarily approve the instant settlement with Defendants V&J National Enterprises, LLC, V&J United Enterprises, LLC, V&J Employment Services, Inc., and V&J Holding Companies, Inc. (collectively "Defendants" or "V&J") (collectively, with Plaintiff, the "Parties").  Subject to Court approval, the Parties have settled Plaintiffs' claims on a class-wide basis for up to $2,350,000.00.  This settlement easily satisfies all of the criteria for preliminary approval under Rule 23 of the Federal Rules of Civil Procedure, as well as the criteria for approval under the Fair Labor Standards Act ("FLSA").

With this motion, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Settlement Agreement, attached as Exhibit A to the Declaration of Jeremiah Frei-Pearson in Support of Plaintiffs' Motion for Preliminary Approval of Settlement ("Frei-Pearson Decl."); (2) approve the proposed Notice of Class Action Settlement ("Class Notice"), Reminder Notice, and Claim Form, attached as Exhibits B, C, and D to the Frei-Pearson Decl.; and (3) approve the proposed schedule for final settlement approval, as outlined herein.

## II.     <u>RELEVANT FACTUAL AND PROCEDURAL BACKGROUND</u>

### A.     <u>Factual Allegations</u>

Pursuant to the operative Complaint (ECF No. 1), Plaintiff is a member of a putative collective action under the FLSA, as well as a putative Rule 23 class, comprised of all delivery drivers Defendant has employed for any length of time since June 21, 2010 ("Class" or "Settlement Class").  Including Plaintiff, there are well over 300 individuals in the putative Class.  *See* Frei-Pearson Decl. at ¶ 3.

Plaintiff alleges that Defendants systematically and unlawfully paid their delivery drivers, including Plaintiff, wages below the minimum in violation of the New York Labor Law ("NYLL") and FLSA.  Plaintiff alleges that Defendants paid their delivery drivers an initial wage equal or near to the minimum and were, therefore, required by law to fully reimburse their delivery drivers for all vehicular expenses incidental to delivery so as to keep their real wages at or above the minimum.  She alleges that Defendants violated the NYLL and FLSA by causing her and other delivery drivers to incur significant vehicular expenses during the course of their work for Defendants, and under-reimbursing them for those expenses, thereby reducing their wages below the minimum.  As such, Plaintiff alleges that, under the NYLL and FLSA, Defendants are liable for the difference between the driver's true expenses and the reimbursement rate Defendants actually paid, plus liquidated damages.  Defendants deny these allegations, and further deny that class or collective action certification is appropriate.

### B. Procedural History And Settlement Negotiations

#### 1. Litigation Of These Claims Began With The Related *Spano* Matter.

On June 21, 2016, Plaintiff Daniel Spano filed suit on behalf of himself and all other delivery drivers employed by V&J during the maximum statutory period (six years under the NYLL, for a class period beginning June 21, 2010), alleging violations of the FLSA and NYLL.  *Spano v. V&J National Enterprises, LLC*, No. 16-6419, ECF No. 1 (W.D.N.Y. June 21, 2016).  On August 25, 2016, V&J submitted an Answer and Counterclaim, producing an arbitration agreement allegedly executed by Mr. Spano and seeking declaratory relief that Mr. Spano's claims would have to be heard in arbitration.  *Id.* at ECF No. 10.

Mr. Spano honored the arbitration agreement and filed an arbitration claim with the American Arbitration Association ("AAA") on December 30, 2016.  V&J initially declined to pay the initial arbitration fee, the AAA administratively closed the matter on April 7, 2017, and Mr.

Spano informed the Court of the breakdown in the arbitration proceedings.  *See id.* at ECF No. 41.

On August 14, 2017, after substantial briefing and numerous cross-motions, the Court held that

V&J had breached its arbitration agreement and could not compel arbitration against Mr.

Spano.  *Id.* at ECF No. 54.  This decision also held that the arbitration agreement's waiver of the

right to proceed in a class or collective action may still be enforceable, and stayed the case pending

the Supreme Court's decision on the enforceability of class/collective waivers in arbitration

agreements.  *Id.*  Mr. Spano submitted a motion for reconsideration of this finding on September

27, 2017.  *Id.* at ECF No. 57.  V&J gave notice on September 28, 2017 that they were appealing

the part of the decision that denied the Defendant's motion to compel individual arbitration and

stay the pending action.  *Id.* at ECF No. 58.

The Parties had a mediation before the Second Circuit.  Frei-Pearson Decl. ¶ 4.  However

the parties were unable to reach a settlement.  *Id.*  On January 23, 2018 V&J's attorneys

successfully moved to withdraw as counsel for V&J.  *Spano* at ECF No. 63.  On March 23, 2018

a notice of appearance was filed on behalf of all defendants for new counsel.  *Id.* at ECF No. 75.

With the addition of new counsel, the Parties were able to agree to settle Mr. Spano's claim.

Frei-Pearson Decl. ¶ 5.  Although Plaintiff's counsel learned that the data V&J provided in

connection with damage calculations for Mr. Spano's settlement was inaccurate, Mr. Spano chose

to go forward with the settlement and Judge Wolford approved the settlement.  *Spano* at ECF No.

86.

### 2.    Plaintiff Initiated The Instant Matter And Conditionally Certified A Collective.

Because of V&J's initial arbitration defense, Plaintiff Beebe -- seeking to diligently pursue

her claims and the claims of her fellow V&J delivery drivers -- filed this related action on February

2, 2017, bringing the same allegations on behalf of the same putative class and collective.  ECF No. 1.  V&J submitted its answer on March 10, 2017.  ECF No. 15.

Plaintiff promptly moved for conditional certification of the FLSA collective on March 7, 2017.  ECF No. 8.  After full briefing on the motion, argued extensively by both sides, the Court conditionally certified the FLSA collective after oral argument on June 14, 2017 (ECF No. 44) and approved the notice to be sent to putative collective members on June 22, 2017.  ECF No. 46.  After two additional Orders were entered by the Court on July 19 (ECF No. 53) and August 3, 2017 (ECF No. 55), V&J produced a complete list of putative FLSA collective members, allowing notice to be sent.[1]

On June 12, 2017, V&J moved for a judgment on the pleadings seeking to dismiss claims against three of the named Defendants and strike class and collective action allegations from the complaint.  ECF No. 38.  Plaintiff opposed this motion, and after oral argument on February 16, 2018, the Court denied Defendants' motion without prejudice, allowing Plaintiff to proceed with discovery and move for class certification.  ECF No. 139.

### 3.    V&J Sought To Directly Settle Drivers' NYLL Claims And Plaintiff Sought And Received A Temporary Restraining Order.

Defendants sold or closed all of their remaining Pizza Hut franchise locations on or about September 16, 2017.  Frei-Pearson Decl. ¶ 6.  While in the process of ending their ownership of these stores, Defendants initiated a campaign to separately settle delivery drivers' minimum wage claims.  *Id*. at ¶ 7.  All delivery drivers were told that they had to attend individual meetings with V&J executives, including David Boose, the overall head of V&J's Pizza Hut operations, or

---

[1] Due to the delay in obtaining the collective list, Plaintiff moved for equitable tolling on August 23, 2017.  ECF No. 62.  After oral argument, the Court determined this motion was premature, though potentially meritorious, and denied it without prejudice so that Plaintiff could refile if necessary.  ECF No. 139.

Wendy Garagozzo, the head of V&J's Human Resources.  *Id*.  V&J's general counsel, Calvin

Scott, was also present at these meetings.  *Id*.  At these meetings, the drivers were presented with

a waiver form by these executives, and told they would receive an additional payment on their

paycheck if they signed the waiver.  *Id*. at ¶ 8.  The drivers were not invited to bring counsel to

these meetings, were not informed of this pending action, and were not told the estimated value of

their potential claims.  *Id*. at ¶ 9.

After learning of these efforts to obtain waivers from putative class and collective members

without the participation of Plaintiffs' Counsel (or any counsel representing the drivers), Plaintiff

moved for a protective order, preliminary injunction, temporary restraining order, and sanctions

as a form of relief.  ECF No. 81.  On October 4, 2017, Judge Wolford temporarily enjoined

Defendants from retaliating against the members of the class for participating in the suit.  ECF No.

84.  Judge Wolford also ordered Defendants to comply with all disclosures required by the order

and respond to this motion by October 20, 2017.  *Id.*  On October 13, 2017, Plaintiff requested

additional time to amend the pleadings and join additional parties.  ECF No. 89.  On October 16,

2017, Plaintiff filed a memo in support of the motion for equitable tolling.  ECF No. 90.  On

October 20, 2017, V&J filed a response in opposition to Plaintiff's emergency motion for

sanctions.  ECF No. 94.  A hearing on the motion for sanctions was held on November 6, 2017.

ECF No. 100.  After negotiations between the Parties, Plaintiff stipulated to withdrawing her

emergency motion for preliminary injunction and sanctions, which Judge Wolford so-ordered on

November 9, 2017.  ECF No. 102.  The Parties stipulated to sending a revised notice to the drivers

who had attended these waiver meetings, informing them of their continuing right to participate in

the collective action and extending the time for the drivers to opt-in to the collective action.  *Id*.

On January 12, 2018, following the briefings and orders related to V&J's attempts to settle drivers' claims directly and in the midst of the motions for judgment on the pleading and for equitable tolling, described *supra*, V&J moved for their then-current counsel to withdraw.  ECF No. 121.  Judge Payson granted this motion on February 23, 2018 (ECF No. 148), and Defendants changed their representation, securing new counsel as of March 2018.  ECF Nos. 153-154.

### 4.   The Parties Engaged In Extensive Discovery, Including Motion Practice.

On March 23, 2017, immediately after the Parties conducted their Rule 26(f) conference, Plaintiff served initial discovery demands to each Defendant, including interrogatories and requests for production of documents.  Frei-Pearson Decl. ¶ 10.  On June 9, 2017, Plaintiff served her second set of requests for production of documents on each Defendant.  *Id*.  On October 2, 2017, Plaintiff served her third requests for production of documents.  *Id*.  Defendants began producing documents responsive to these requests on October 16, 2017, with additional productions on November 13, 2017 and December 14, 2017.  *Id*. at ¶ 12.  The Parties conferred extensively via phone calls, emails, and letters concerning the sufficiency of Defendants' production from November 2017 into June 2018.[2]  *Id*. at ¶ 11.  Seeking to identify the scope of the documents in Defendants' possession, Plaintiff included topics related to such documents and their retention as part of a person-most-knowledgeable deposition of the V&J entities, which was held on August 1, 2018.  *Id*. at ¶ 13.

Of particular concern to Plaintiff was data that was not produced on V&J's deliveries that would have been entered and stored in Pizza Hut's "SUS" point-of-sale system in the regular course of business.  *Id*. at ¶ 11.  When these documents and data were not produced after numerous

---

[2] Conferrals over discovery were delayed as V&J changed attorneys in early 2018, as described *supra* § II-B-3.

meet and confer exchanges, Plaintiff moved to compel and for sanctions.  ECF No. 157.  V&J cross-moved for a protective order on July 30, 2018.  ECF No. 160.  On August 23, 2018, the Court granted in part and denied in part Plaintiff's motion to compel and for sanctions and denied Defendants' cross-motion for a protective order, instructing Defendants to obtain the relevant SUS data from Pizza Hut.  ECF No. 169.

V&J first produced class-wide SUS data on February 6, 2019.  Frei-Pearson Decl. ¶ 12. However, Plaintiff's counsel -- who has litigated similar claims against Pizza Hut corporate and Pizza Hut franchisees in the past -- was concerned that the data appeared incomplete and in a format inconsistent with records as they are kept on the SUS system.  *Id.*  Following further meet and confer efforts regarding this data, Plaintiff agreed to move forward with a previously-scheduled mediation, described more fully infra at § II-B-6, based on the data V&J provided, but also subpoenaed the relevant SUS data directly from Pizza Hut corporate.  Frei-Pearson Decl. ¶ 14.  In response to Plaintiff's subpoena, Pizza Hut corporate ultimately provided data to Plaintiff that included all the information fields from the SUS system which also reflected significant additional deliveries beyond the data that V&J provided.  *Id.* at ¶ 15.  Plaintiff issued deposition notices for V&J and its counsel concerning this discrepancy.  *Id.* at ¶ 16.

Plaintiff also conducted several depositions and noticed others.  *Id.*

### 5.     Forty-Nine Additional Drivers Filed Arbitration Demands With The AAA.

In response to V&J's position that many of the delivery drivers are subject to binding arbitration agreements, 49 opt-in plaintiffs filed arbitrations for their claims against V&J before the AAA, at a non-refundable cost of $300 in fees each, as Mr. Spano had done before.[3]  *Id.* at ¶

---

[3] Plaintiff's counsel agreed to stop filing any more these individual arbitrations at V&J's request pending mediation.

17.  As with Mr. Spano's arbitration, V&J declined to pay its portion of the initial arbitration fees for each of these matters.  *Id*. at ¶ 18.  As such, the AAA administratively closed all 49 arbitrations and stated that it would no longer arbitrate actions for V&J.  *Id*.

### 6.  The Parties Reached Settlement Following Multiple Rounds Of Arms-Length Negotiations, Culminating With The Assistance Of Magistrate Judge Payson As A Mediator.

Throughout the course of this litigation, the Parties engaged in multiple arms-length settlement negotiations and mediations, attempting to resolve the matter.  In addition to direct settlement negotiations to resolve the *Spano* matter, which ultimately included mediation before the Second Circuit as part of V&J's appeal in that case, the Parties engaged the services of Mediator Patrick Solomon on two separate occasions.  The Parties first mediated before Mediator Solomon on October 2, 2017, but were unable to reach an agreement on settlement.  *Id*. at ¶ 19. The Parties also agreed to mediate before Hesha Abrams and Hunter Hughes, but V&J ultimately declined to participate in those mediations.  *Id.* at 20.  On February 27, 2019, the Parties engaged in an all-day mediation, again before Mediator Solomon.  *Id*.  At this second mediation, the Parties reached an agreement on the general structure of a settlement, but were unable to agree on an overall dollar amount.  *Id*. at ¶ 21.

Due to the discrepancy between the SUS data V&J provided on February 6, 2019, and the more complete data subsequently produced by Pizza Hut corporate, the Parties were unable to reach a mutually agreeable settlement following the mediation before Mediator Solomon.  *Id.* at ¶ 22.  As such, the Parties requested the assistance of the Court, asking that Hon. Magistrate Judge Payson serve as a mediator for an additional mediation session.  *See* ECF No. 188.  With Judge Payson's assistance, the Parties engaged in a mediation session on July 30, 2019.  *Id*.  At this third and final mediation, the Parties successfully reached an agreement in principle on the terms of the Settlement and executed a Memorandum of Understanding to that effect.  *Id*. at ¶ 23. The Parties

subsequently negotiated and drafted the terms of the Settlement Agreement and fully executed the same on October 28, 2019. *Id.* at ¶ 25.

## III.     SUMMARY OF THE SETTLEMENT TERMS

### A.     The Settlement Fund

Defendants have agreed to create a settlement fund of up to $2,350,000.00 ("Maximum Settlement Amount"). Frei-Pearson Decl., Exhibit A, ¶ 14.   The fund will cover settlement payments to Authorized Claimants,[4] Court-approved attorneys' fees and costs in an amount not to exceed one-third (1/3) of the Maximum Settlement Amount,[5] Court-approved service payments to the Class Representative in an amount not to exceed $15,000.00,[6]  and the reasonable costs of settlement administration. *Id.*, ¶ 38.[7]

### B.     Release

Rule 23 settlement class members who do not opt out of the settlement will be deemed to have agreed to, and will be bound by, the following release of claims upon the Effective Date of the Settlement (as those terms are defined in the Settlement Agreement).

All members of the Settlement Class will release and forever discharge Defendants from any and all claims, rights, demands, liabilities and causes of action of every nature and description, whether known or unknown, arising on or before the date of Preliminary Approval, arising out of,

---

[4] "Authorized Claimant" means a Participating Class Member who has returned a valid and timely Claim Form.  Frei-Pearson Decl., Exhibit A, ¶ 2.

[5] *Id.*, ¶ 36.

[6] *Id.*, ¶ 37.

[7] To the extent Rule 23 class members elect to opt-out of the settlement or do not to submit a claim, amounts allocated to such class members shall revert back to Defendant.  *Id.*, ¶ 39(d).

based on, or encompassed by: (a) the claims that were or could have been asserted in any civil complaint filed in this case or in any arbitration filed on behalf of any Settlement Class Member; (b) relate to or arise out of the reimbursement of expenses, under-reimbursement of expenses, failure to reimburse for transportation expenses, or failure to reimburse expenses of any kind; (c) relate to or arise out of the payment of the applicable minimum wage, under-payment of the applicable minimum wage, or failure to pay the applicable minimum wage; and (d) that arise under the NYLL and any similar federal, state, municipal or local laws.  Without limiting the generality of the foregoing, the claim preclusion effect of this Settlement, and the judgment thereon, for *res judicata* purposes shall be co-extensive with the release.  *Id.*, ¶ 51.

The Class Representative releases Defendants from all claims, demands, rights, liabilities and causes of action of every nature and description whatsoever, known or unknown, asserted or that might have been asserted, whether in tort, contract, or for violation of any local, state or federal statute, rule, regulation, ordinance or common law arising out of, relating to, or in connection with any act or omission by or on the part of any of the Released Parties committed or omitted prior to the execution hereof.  *Id.*, ¶ 52(a).  This Release includes any unknown claims the Class Representative does not know or suspect to exist in their favor at the time of the General Release, which, if known by her, might have affected her settlement with, and release of, the Released Parties.  *Id.*, ¶ 52(b).

### C.   Class Members

The Rule 23 class consists of over 300 delivery drivers Defendants have employed for any length of time since June 21, 2010.  Frei-Pearson Decl.  ¶ 3.  Defendants shall identify the Class Members based on their payroll and/or other business records as of September 16, 2017.  Frei-Pearson Decl. Exhibit A, ¶ 42(a).  Defendants did not employ any Pizza Hut delivery drivers after September 16, 2017.  *Id.*

### D.   Allocation Formula And Payment Distribution

Participating Rule 23 class members will be paid pursuant to an allocation formula based on the length of their employment with Defendant.  *Id.*, ¶ 39(b).  For each Settlement Class Member, the total number of his or her workweeks working for Defendant between June 21, 2010 and September 16, 2017 shall be divided by the aggregate of all workweeks among all Settlement Class Members and multiplied by the Net Settlement Amount to determine the amount owed that individual, less any amount received by drivers to waive their NYLL claim and any settlement payments that Defendants can document made for NYLL allegations.  *Id.*

The settlement payments will be made across three checks, distributed over the next three years.  *Id.*, ¶ 39(h)-(j).  Within 15 calendar days after the Effective Date, Defendants shall deposit into the Qualified Settlement Fund an amount including 40% of the Individual Settlement Payments based on Settlement Class Members who have submitted valid Claims Forms.  *Id.*, ¶ 35(a).  Within five days of this deposit, the Settlement Administrator shall mail checks for the Individual Settlement Payments equal to 40% of the total Settlement Payment to the Authorized Claimants.  *Id.*, ¶ 39(h).  Within 380 calendar days after the Effective Date (365 days after the first deposit), Defendants shall deposit the next 30% of the Individual Settlement Payments to be paid to Authorized Claimants.  *Id.*, ¶ 35(b).  Within five days thereafter, the Settlement Administrator shall mail the next round of checks for Individual Settlement Payments equal to 30% of the total Settlement Payment to the Authorized Claimants.  *Id.*, ¶ 39(i).  This process will be repeated for the final 30% of the total Settlement Payment to the Authorized Claimants 365 days after the second payment.  *Id.*, ¶¶ 35(c), 39(j).

### E.   Attorneys' Fees And Litigation Costs

Plaintiff's Counsel may apply for up to one-third of the Maximum Settlement Amount for attorneys' fees for work already performed and remaining to be performed in the Action and costs

and expenses incurred in prosecuting the Action and implementing the terms of the Settlement Agreement.[8]  *Id.*, ¶ 36.   The Court need not decide the matter now in connection with the Rule 23 Class settlement; Plaintiff's Counsel will file a formal motion for approval of fees and costs in connection with their motion for final approval of the settlement.  *See* Fed. R. Civ. P. 23(h) & 54(d)(2).  The Settlement Agreement is not conditioned on the award of attorneys' fees and costs in any amount.  Frei-Pearson Decl. Exhibit A, ¶ 36.

### F.   Service Payment To Class Representative

In addition to her individual awards under the allocation formula, Plaintiff, who actively participated in the litigation -- including turning down an offered payment of $6,863.45 tendered by Defendants on March 10, 2017 in an attempt to moot her individual claim (*see* ECF No. 38-6, Exhibit 8) -- will apply for a Service Payment in an amount not to exceed $15,000.00 from the Maximum Settlement Amount, in recognition of services rendered on behalf of the class.  Frei-Pearson Decl. Exhibit A, ¶ 37.  Defendants agree not to oppose such application.

"Service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs.  It is

---

[8] This is within the range of a typical fee award in a common fund case.  *See, e.g.*, *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 188 (W.D.N.Y. 2005) ("The trend in the Second Circuit 'is toward the percentage method, . . . which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of the litigation.'") (quoting *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d at 121); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) ("Class Counsel's request for 33 1/3% of the fund is reasonable and 'consistent with the norms of class litigation . . .'") (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)).  Moreover, here, as Plaintiffs' counsel intends to show in their formal motion for approval of fees and costs, Plaintiffs' counsel invested very significant resources and achieved an extraordinary result – which militates strongly in favor of awarding the full amount of fees and costs sought.

important to compensate plaintiffs for the time they spend and the risks they take." *Viafara v. MCIZ Corp.*, No. 12 7452, 2014 WL 1777438, at *16 (S.D.N.Y. May 1, 2014); *see also, e.g.*, *Elliot v. Leatherstocking Corp.*, No. 10-0934, 2012 WL 6024572, at *7 (N.D.N.Y. Dec. 4, 2012) ("Service awards are common in class action cases and are important to compensate a plaintiff for the time and effort expended in assisting in the prosecution of the litigation.").

As with the award of attorneys' fees and costs, any reduction in the award of Service Payments to the Class Representative shall not be a basis for rendering the Settlement Agreement voidable or unenforceable. Frei-Pearson Decl. Exhibit A, ¶ 37. Plaintiff will file a motion for approval of the Service Payments along with her motion for final approval of the settlement.

## IV.  **ARGUMENT**

### A.  **Class Action Settlement Procedure**

The well-established procedure for settlement approval in class action settlements includes three distinct steps:

1. Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2. Dissemination of mailed and/or published notice of settlement to all affected class members; and

3. A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*") §§ 11.22 *et seq.* (4th ed. 2002); *Willix,* 2011 WL 754862, at *1-2; *Khait v. Whirlpool Corp.*, No. 06-6381, 2010 WL 2025106, at *1 (E.D.N.Y. Jan. 20, 2010).

This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests. With this motion, Plaintiff requests that the Court take the first step -- granting preliminary approval of the Settlement Agreement, and

approving the proposed Notice and authorizing the claims administrator to send it.  The Parties respectfully submit for the Court's approval the following schedule for final resolution of this matter:

1.    Within twenty-one (21) calendar days of the Court's grant of preliminary approval, Defendant will provide to the Settlement Administrator the names, last known addresses, last known telephone numbers, and social security numbers of the Settlement Class Members, along with data indicating the number of work weeks for each Settlement Class Member between June 21, 2010 and September 16, 2017 ("Class Data List").  Frei-Pearson Decl., Exhibit A, ¶ 42(a).[9]

2.    Within ten (10) calendar days after receipt of the Class Data List, to the extent practicable, the Settlement Administrator will consider any address updates provided by Class Counsel, perform reasonably diligent skip tracing, consult the National Change of Address Registry, and mail to all Settlement Class Members, by first-class U.S. mail, the Notice and Claim Form, and a pre-addressed, postage-paid return envelope (collectively, "the Notice Packet"). *Id.*, ¶ 42(b).

3.    Within sixty (60) calendar days after the Settlement Administrator's initial mailing of the Notice Packets ("Claims Period Deadline"), Settlement Class Members who wish to receive a settlement payment shall return their Claim Forms to the Settlement Administrator.  Claim Forms may be submitted to the Settlement Administrator by U.S. mail postmarked on or before the Claims Period Deadline, by fax or by email on or before the Claims Period Deadline, or entered online through the Settlement Administrator's website on or before the Claims Period Deadline. *Id.*, ¶ 43(a).

4.    Settlement Class Members who wish to object to the Settlement and/or Class Counsel's request for attorneys' fees and expenses, must not exclude themselves from the Settlement and must file with the Court and serve on the Parties' counsel, not later than thirty (30) calendar days after the date that the Settlement Administrator first mails the Notice Packets ("Objection Deadline"), a written statement objecting to the Settlement and setting forth the grounds for the objection, as explained further in the Notice. *Id.*, ¶ 45.

5.    Settlement Class Members who wish to exclude themselves from the Settlement (opt out of the Settlement) must submit to the Settlement

_____

[9] The data shall be based on Defendant's payroll and/or other business records.  Frei-Pearson Decl., Exhibit A, ¶ 42(a).

Administrator, by U.S. mail, fax and/or email, not later than thirty (30) calendar days after the date that the Settlement Administrator first mails the Notice Packets ("Opt-Out Deadline"), an Exclusion Letter requesting that he or she be excluded from the Settlement Class. *Id.*, ¶ 46(a).

6.   If a Settlement Class Member submits a timely Claim Form that is rejected by the Settlement Administrator as deficient in some material respect (for example, the Settlement Class Member failed to sign the Claim Form), the Settlement Administrator will notify the Settlement Class Member in writing of the basis for the deficiency and give the Settlement Class Member a reasonable opportunity to cure the deficiency. *Id.*, ¶ 43(b). Settlement Class Members shall have the greater of forty-five (45) calendar days after notification of the deficiency, or until the Claims Period Deadline, to cure the deficiency. *Id.*

7.   Thirty (30) calendar days prior to the deadline to submit Claim Forms, the Settlement Administrator will send a postcard reminder notice to all Settlement Class Members who have not yet submitted Claim Forms. *Id.*, ¶ 43(c).

8.   A final fairness hearing will be held as soon as is convenient for the Court following the Claim Period Deadline.

9.   Not later than fourteen (14) calendar days prior to the Final Approval Hearing, Plaintiffs will file a Motion for Final Settlement Approval and a memo in support of the motion. *Id.*, ¶ 47(a).

10.   After the fairness hearing, if the Court grants Plaintiffs' Motion for Final Settlement Approval, the Court will issue a Final Order and Judgment. If no party appeals the Court's Final Order and Judgment, the "Effective Date" of the settlement will be the day after the applicable date for seeking appellate review of the Court's final approval of the Settlement has passed without a timely appeal. *Id.*, ¶¶ 10, 12.

11.   If an individual or party appeals the Court's Final Order and Judgment, the "Effective Date" of Settlement shall be the day after all appeals are finally resolved in favor of final approval and the time for any further appeal has expired. *Id.*

**B.   <u>The Standards For Approval Of A Class Action Settlement</u>**

Compromise and settlement of class actions suits is favored. *See Wal-Mart Stores v. Visa U.S.A.*, 396 F.3d 96, 116 (2d Cir. 2005) (affirming approval of class action settlement and emphasizing the "strong judicial policy in favor of settlements, particularly in the class action

15

context") (quotation omitted); *see also* Herbert B. Newberg & Alba Conte, Newberg on Class Actions ("Newberg"), § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."); *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977) ("Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits."). "The central question raised by the proposed settlement of a class action is whether the compromise is fair, reasonable and adequate. There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation." *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (affirming approval of class settlement; citation omitted).

The first step in a class action settlement is preliminary approval, "through which the district court determines the fairness of a proposed class action settlement, prior to the provision of class notice." *Vazquez v. Lamont Fruit Farm, Inc.*, No. 06-582S, 2011 WL 6148806, at *2 (W.D.N.Y. Dec. 12, 2011) (granting preliminary approval). "A proposed settlement should be approved if the court determines that the settlement, taken as a whole, is fair, reasonable, and adequate. The court must give proper deference to the private consensual decision of the parties in exercising its discretion." *Chambery v. Tuxedo Junction Inc.*, 10 F. Supp. 3d 415, 419 (W.D.N.Y. 2014) (granting preliminary approval; citations omitted). Moreover, "[a] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc.*, 396 F.3d at 116 (quoting Manual for Complex Litigation (Third) § 30.42 (1995)). Therefore, "[a] proposed settlement of a class action should . . . be preliminarily approved where it 'appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies,

does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval.'" *Davis v. J.P. Morgan Chase & Co.,* 775 F. Supp. 2d 601, 607 (W.D.N.Y.2011) (granting preliminary approval; quoting *In re Nasdaq Market–Makers Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y.1997) (granting preliminary approval)). *See also Danieli v. IBM*, No. 08-3688, 2009 WL 6583144, at *4-5 (S.D.N.Y. Nov. 16, 2009) (granting preliminary approval where settlement "has no obvious defects" and proposed allocation plan is "rationally related to the relative strengths and weaknesses of the respective claims asserted.").

### C. The Court Should Grant Preliminary Approval Of The Settlement Agreement.

The Second Circuit has identified nine factors, the "*Grinnell* factors," that should be considered in determining the fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted); *see also County of Suffolk v. Long Island Lighting Co.* ("*LILCO*"), 907 F.2d 1295, 1323-24 (2d Cir. 1990).

The recent adoption of Rule 23(e)(2) does not displace the *Grinnell* factors. *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note. Rather, it "focus[es] the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.* These "core concerns" are:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;

17

(C) the relief provided for the class is adequate, taking into
account:

(i)  the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing
relief to the class, including the method of processing class-
member claims, if required;

(iii) the terms of any proposed award of attorney's fees,
including timing of payment; and

(iv) any agreement required to be identified under Rule
23(e)(3); and

(D) the proposal treats class members equitably relative to each
other.

The adequacy of the Class Representative and Class Counsel's representation of the Class
is described *infra* at § IV-D-1-d.  The arms-length nature of the negotiations, which culminated in
mediation before Judge Payson, is described *supra* at § II-B-6.  The adequacy and equitability of
the relief provided for the class is examined in detail through the analysis of the *Grinnell* factors
immediately below.  A consideration of *Grinnell* factors and Rule 23(e)(2)'s "core concerns"
indicate that the Settlement Agreement is fair, reasonable, and adequate, and therefore, should be
approved.

"In finding that a settlement is fair, not every [*Grinnell*]factor must weigh in favor of
settlement, 'rather the court should consider the totality of these factors in light of the particular
circumstances.'" *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004)
(approving settlement; quoting *Thompson v. Metropolitan Life Ins. Co.,* 216 F.R.D. 55, 61
(S.D.N.Y.2003) (approving settlement)).  Here, however, all of the relevant factors weigh in favor
of granting preliminary approval to the Settlement Agreement.

### 1.     The Litigation Is Complex And Will Be Expensive And Lengthy.

The Settlement Agreement provides substantial monetary benefits to the Settlement Class while avoiding the significant expenses and delays attendant to motion practice related to summary judgment and class certification, not to mention trial.  Indeed, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184-85 (W.D.N.Y. 2005) (approving settlement; quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)).  While Plaintiff is confident that she will prevail on Rule 23 class certification, on summary judgment, and at trial, such results is not certain.  Moreover, the resulting fact-intensive trial will require the Court's time and resources.  Such proceedings will also result in significant expenses to the Parties, potentially further reducing Defendants' ability to withstand any judgment, even if one was ultimately entered against them.  *See* infra § IV-C-5.  Any judgment will likely be appealed, as Defendants have already demonstrated their willingness to do so in the related *Spano* matter (No. 16-6419, ECF No. 58 (W.D.N.Y. Sept. 28, 2017)), extending the costs and duration of the litigation.  The Settlement Agreement, on the other hand, will result in the prompt commencement of equitable payments to the Settlement Class.  Thus, this factor weighs in favor of settlement.

### 2.     The Reaction Of The Class Will Likely Be Positive.

While the reaction of absent class members cannot be conclusively gauged until notice has been sent, the fact that Plaintiff and her experienced counsel support the Settlement Agreement is a strong indication that members of the Settlement Class will also view it positively.  In addition, those class members who have been in touch with Plaintiff's Counsel have expressed approval.  Frei-Pearson Decl. at ¶ 26.

19

### 3.   The Progress Of The Instant Litigation And The Extensive Discovery That Has Occurred Favors Preliminary Approval.

The legal issues in this case have been thoroughly vetted through the Parties' extensive motion practice in both the instant litigation and the related *Spano* action, as described in detail *supra* § II-B.  This included contested motion practice with full briefings on the motion to dismiss V&J's counterclaim in the *Spano* matter, V&J's motion to compel arbitration in that case, Plaintiff's motion for conditional certification of an FLSA collective in this case, Defendants' motion for judgment on the pleadings, Plaintiff's motion for equitable tolling, Plaintiff's request for a temporary restraining order, preliminary injunction, and sanctions, Plaintiff's motion for appointment of FBFG as interim lead counsel, Plaintiff's motion to compel production of documents and for sanctions, and Defendants' motion for a protective order.  Discovery has included interrogatories, requests for production of documents, and multiple depositions, as well as numerous meet and confer efforts over the sufficiency of documents and deposition testimony and the above-mentioned cross-motions to compel production and for a protective order.

Thus, the extent of the motion practice and discovery in this case merits preliminary approval of the proposed settlement.  *See In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006) (granting preliminary approval where "[t]he parties have developed a familiarity with the details of the case by conducting significant discovery and engaging in motion practice . . ."); *see also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) ("'To approve a proposed settlement, the Court need not find that the parties have engaged in extensive discovery . . . it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement.'  Additionally, 'the pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement  . .

. [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit.'") (citing *Plummer v. Chemical Bank*, 668 F.2d 654 (2d Cir. 1982); quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)).

### 4.    Plaintiff Faces Hurdles In Establishing Liability, Proving Damages, And Maintaining A Class Through Trial.

The Settlement Agreement should be preliminarily approved because Plaintiff faces notable hurdles in establishing liability, proving damages, and maintain a class action through trial. Indeed, "[l]itigation inherently involves risks." *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) (approving settlement).  In particular, Defendants will almost certainly again move to strike all named Defendants except V&J Employment Services, Inc., and/or move for summary judgment as to all such Defendants' liability.  Defendants will also likely move to decertify the conditionally certified FLSA collective.  While Plaintiffs will likely argue that Defendants have waived all arbitration defenses due to their non-participation in 50 arbitration actions before the AAA, Defendants will likely argue there has been no global waiver and will seek to use the existence of arbitration agreements to attack the commonality and typicality of the claims at issue among putative class and collective members.  Defendants will also likely argue that its reimbursement methodology is sufficient to reimburse drivers' expenses, thus disputing liability and damages, and argue that differences in actual expenses among different drivers and differences in their wages undermine commonality.

Plaintiff's counsel is confident in its ability to prove Plaintiff's case.  Nonetheless, the Settlement Agreement avoids the risks inherent in further litigation, and therefore this factor weighs in favor of preliminary approval.

**5.     There Are Concerns Regarding
Defendants' Ability To Pay A Judgment.**

Plaintiff's concerns over Defendants' ability to sustain a judgment greater than the

amount embodied in the Settlement Agreement was one of the primary factors in reaching the

terms of the Settlement.  Frei-Pearson Decl. ¶ 24.  Indeed, verification of V&J's financial

situation – specifically whether Defendants have ready access to sufficient funds to promptly pay

at least three times the Maximum Settlement Amount without suffering significant financial

hardship -- is a key term of the Settlement Agreement.  Frei-Pearson Decl. Exhibit A, ¶ 33.

Where defendants are unable to pay awards substantially greater than the settlement amount,

Courts have approved settlements worth substantially less than the total liability.  *See, e.g.,*

*Bellaspica v. PJPA LLC*, No. 13-3014, ECF No. 140 (E.D. Pa. Apr. 1, 2016) (granting

preliminary approval of $300,000.00 settlement to cover FLSA and Pennsylvania state minimum

wage law claims of class of 494 pizza delivery drivers following determination that defendant

could not sustain a higher judgment).  Should the verification of Defendants' finances reveal that

their ability to pay is not a significant issue, Plaintiff is entitled, and intends, to void the

Settlement and pursue greater relief for the Class.  Frei-Pearson Decl. ¶ 24.  As such, this factor

counsels in favor of approving the Settlement.

**6.     The Settlement Amounts Are Reasonable
In Light Of The Best Possible Recovery And
In Light Of All The Attendant Risks Of Litigation.**

Class members' recovery merits approval of the proposed settlement, particularly in light

of Defendants' defenses, the time and uncertainty involved in continued class litigation and

inevitable appeals, and concerns surrounding Defendants' ultimate ability to pay a greater

judgment.

"The determination whether a settlement is reasonable does not involve the use of a mathematical equation yielding a particularized sum." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (approving settlement; citation omitted).   Instead, "there is a range of reasonableness with respect to a settlement -- a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972) (approving settlement for $5 million where potential liability was $35 million).  Even where a settlement is for substantially less than the maximum potential recovery, approval may be appropriate.  *See Grinnell Corp.*, 495 F.2d at 455 n.2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even an thousandth part of a single percent of the potential recovery."); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88-3024, 1990 WL 73423, at *12 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement where maximum potential recovery was approximately $121 million); *Chambery v. Tuxedo Junction, Inc.*, 2014 WL 3725157, at *7 (W.D.N.Y July 25, 2014) ("[A] $200,000 settlement is reasonable where the potential recovery is $3 million, especially when taking into consideration Defendant's financial position and the risks of litigation."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) (approving settlement of $2.5 million over objection that best possible recovery was $125 million).

Based on the data obtained in discovery, Plaintiff calculates a maximum recovery for the class of approximately $14,818,043.00.  Frei-Pearson Decl. ¶ 22.  On the other hand, Defendant could prevail on its legal arguments to defeat liability entirely, resulting in no recovery for class members.  In light of concerns over Defendants' ability to pay, Plaintiff does not believe actual recovery of the full amount is likely, even if she were to prevail on all counts.  Given this broad

range of possible damages, the Settlement Agreement falls well within the range that courts have traditionally found to be fair and adequate under the law.

Moreover, the fact that the Settlement Agreement provides for the prompt initiation of payments to claimants favors approval of the settlement. *See Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*, No. 01-11814, 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004) ("[T]he proposed Settlement provides for payment to Class members now, not some speculative payment of a hypothetically larger amount years down the road.  Given the obstacles and uncertainties attendant to this complex litigation, the proposed Settlement is within the range of reasonableness, and is unquestionably better than the other likely possibility – little or no recovery.") (citing *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985) ("[M]uch of the value of a settlement lies in the ability to make funds available promptly.") (modified on other grounds)). Therefore, these factors militate in favor of approving the Settlement Agreement.

The relief provided to each Class member is equitably distributed according to the same formula: dividing each individual's total work seeks by the total work weeks of class and multiplying that result by the Net Settlement Amount.  This approach thus fairly distributes the Settlement's payments among class members based on their work for Defendants and the alleged minimum wage violations they suffered.  *See, e.g., Bellaspica*, No. 13-3014, ECF No. 140 (approving settlement of delivery under-reimbursement claims based on a per-work-week distribution).

### 7.     There Are No Agreements To Identify Pursuant To Rule 23(e)(3).

Parties seeking the approval of a settlement are required to identify any agreement made in connection with the proposed settlement.  *See* Fed. R. Civ. P. 23(e)(2)(C)(iii) and 23(e)(3).  There are no such agreements requiring identification.

### D.   The Court Should Conditionally Certify The Class.

"A Court should grant conditional certification of a class for settlement purposes where the proposed class and class representative satisfy the four requirements of Federal Rule of Civil Procedure 23(a) -- numerosity, commonality, typicality, and adequacy—as well as one of the three subsections of Rule 23(b).   In deciding certification, 'courts must take a liberal rather than restrictive approach in determining whether the plaintiff satisfies these requirements and may exercise broad discretion in weighing the propriety of a putative class.'" *Chambery v. Tuxedo Junction Inc.*, 10 F. Supp. 3d 415, 420 (W.D.N.Y. 2014) (quoting *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157-58 (E.D.N.Y. 2009)).

Plaintiff seeks the conditional certification of the following Rule 23 class for purposes of effectuating the settlement:

> All persons Defendants employed in New York as a delivery driver
> during any workweek from June 21, 2010 to the present.

Because all of the certification requirements for settlement purposes are met and Defendants consent to conditional certification of a class action, Plaintiff respectfully requests that the Court conditionally certify the Settlement Class.

### 1.   The Settlement Class Satisfies Rule 23(a).

There are five Rule 23(a) requirements (numerosity, commonality, typicality, adequacy and ascertainability), all of which the Settlement Class satisfies.

### a.   The Class Is So Numerous That Joinder Of All Members Is Impracticable.

The class is comprised of more than 300 delivery drivers, rendering joinder clearly impracticable.  *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members.") (citation omitted); *Davis v. J.P. Morgan*

25

*Chase & Co.*, 775 F. Supp. 2d 601, 608 (W.D.N.Y. 2011) (granting preliminary approval of class of "over 5000 persons who were allegedly affected by defendant's policies.")

### b.    There Are Questions Of Law Or Fact Common To The Class.

Rule 23(a)(2) provides that there must be "questions of law or fact common to the class" for a suit to be certified as a class action.  Fed. R. Civ. P. 23(a)(2).  "The purpose of this requirement is to test 'whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Eastman Kodak*, 228 F.R.D. at 181 (citing *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 157 n. 13 (1982).  Plaintiff need not demonstrate that each class members' claim is identical; rather, there need only exist "common questions of fact or law." *Id.* (citing *Port Authority Police Benev. Ass'n, Inc. v. Port Authority of New York and New Jersey,* 698 F.2d 150, 153-54 (2d Cir. 1983)). "Courts have generally construed the commonality requirement liberally and require that only one issue be common to all class members." *Id.* (citing *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198-99 (S.D.N.Y. 1992)).

Here, members of the Settlement Class were all subject to a uniform reimbursements policy that Plaintiff alleges pushed their wages below the legal minimum.  Numerous courts have certified substantively identical classes of delivery drivers.  *See, e.g., Perrin v. Papa John's Int'l. Inc.*, No. 09-1135, 2013 WL 6885334 (E.D. Mo. Dec. 31, 2013) (certifying Rule 23 state classes of delivery drivers in under-reimbursement case over contested motion); *Fata v. Pizza Hut of Am., Inc.*, No. 14-376, 2016 WL 7130932 (M.D. Fl. Oct. 31, 2016) (certifying Rule 23 state law class of delivery drivers for settlement purposes in under-reimbursement class action).

### c.    Plaintiff's Claims Are Typical Of The Claims Of The Class.

Rule 23(a)(3) provides that the claims of the Plaintiff must be "typical of the claims of . . . the class."  Fed. R. Civ. P. 23(a)(3).  "The typicality requirement ensures that maintenance of a

class action is economical and that the named plaintiff's claim and the class claims are so interrelated that the interest of the class members will be fairly and adequately protected in their absence." *Chambery v. Tuxedo Junction Inc.*, 10 F. Supp. 3d 415, 421 (W.D.N.Y. 2014) (granting preliminary approval where "the proposed named Plaintiffs' claims for unpaid wages arise from the same factual and legal circumstances that form the basis of the class members' claims.") (citation omitted).  Rule 23(a)(3) is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) (reversing denial of class certification; citation omitted).  "When the same 'unlawful conduct was directed at both the named plaintiff and the class to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims.'" *D'Alauro v. GC Services Ltd. P'ship*, 168 F.R.D. 451, 456-57 (E.D.N.Y. 1996) (approving settlement and citing Newberg § 3.13 and *Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981)).

Here, the claims of the Plaintiff and those of the members of the Settlement Class arise from the same conduct, namely Defendants' failure to fully reimburse them for the vehicle-related expenses they incurred, thus pushing their effective wages below the minimum required under the NYLL.

### d.   Plaintiff Will Fairly And Adequately Protect The Interests Of The Class.

Rule 23(a)(4) requires that "the representative parties fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To determine adequacy, the Court must inquire as to whether "(1) the representative plaintiffs attorneys [are] qualified, experienced, and generally able to conduct the litigation, and (2) the plaintiff's interests must not be antagonistic to those of the remainder of the class."  *Chambery v. Tuxedo Junction Inc.*, 10 F. Supp. 3d 415,

421 (W.D.N.Y. 2014) (citation omitted).  This Court previously appointed FBFG as class

counsel (ECF No. 147) and Plaintiff respectfully submits that that Jeremiah Frei-Pearson and

Andrew C. White of FBFG are sufficiently qualified, experienced, and able to conduct this

litigation.  *See* Frei-Pearson Decl. at ¶¶ 27-31, Exhibit E (FBFG Firm Resume).

Moreover, there is no indication that Plaintiff has any interests antagonistic to the

Settlement Class.  To the contrary, Ms. Beebe has been actively protecting the interests of the

class.  She engaged in the prosecution of this matter since its inception, having consistently

conferred with her counsel, reviewed the complaint, reviewed and signed discovery responses,

rejected a substantial individual settlement offer because accepting would have set back other

class members' efforts at relief, participated in a day-long mediation, and consulted with her

counsel regarding the propriety of the settlement.  Frei-Pearson Decl. ¶ 32.

> **e.      Class Members Are Readily Identifiable And Ascertainable.**

Rule 23 also contains an "implicit requirement" that the class be ascertainable.  *See*

*Lizondo-Garcia v. Kefi LLC*, 300 F.R.D. 169, 176 (S.D.N.Y. 2014) (granting preliminary

approval).  The Settlement Class is imminently ascertainable; in fact, using V&J's employment

records and delivery data, the Parties can directly identify all members of the Settlement Class.

Therefore, the Class is ascertainable.  *C.f., Lizondo-Garcia v. Kefi LLC*, 300 F.R.D. 169, 176

(S.D.N.Y. 2014) ("In this case, defendants' payroll records will likely contain the names, titles,

pay rates and dates of employment of the NYLL class members.").

> **2.      The Settlement Class Satisfies Rule 23(b)(3).**

Rule 23(b)(3) provides that questions of law or fact common to class members must

"predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).

In addition, Plaintiff must demonstrate that "[a] class action is superior to other methods for

fairly and efficiently adjudicating the controversy." *Id.* The proposed Settlement Class meets both of these requirements.

### a. Common Questions Predominate Over Individual Issues.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Predominance thus requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (abrogated on other grounds). Here, every issue involved in the litigation is subject to common and generalized proof, to wit, the IRS reimbursement rates for the relevant years, V&J's computerized records containing the addresses to which its delivery drivers drove, and thus the mileage over which they incurred vehicle-related expenses, and the employment records containing the wages and reimbursements V&J paid these drivers for each work day. In addition, the Settlement Class handily satisfies Rule 23(a)'s requirements, which "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (citation omitted).

### b. A Class Action Is A Fair And Efficient Method For Adjudicating This Controversy.

Rule 23(b)(3) also requires a determination as to whether a class action is the superior means to adjudicate the class' claims. The rule sets forth a list of relevant factors: class members' interest in bringing individual actions; the extent of existing litigation by class members; the desirability of concentrating the litigation in one forum; and potential issues with managing a class action. Fed. R. Civ. P. 23(b)(3)(A-D). Plaintiff's counsel is unaware of any

29

active individual actions relating to this controversy, a strong indication that class members lack

an interest in bringing individual claims.  This is not surprising, as the amounts in controversy in

any such individual actions, while significant to delivery drivers, would nonetheless be dwarfed

by the expense of bringing such an action.  It is well settled that a class action is the superior

method of adjudication where "the proposed class members are sufficiently numerous and seem

to possess relatively small claims unworthy of individual adjudication due to the amount at issue

. . . [and] there is reason to believe that class members may lack familiarity with the legal system,

discouraging them from pursuing individual claims."  *Jankowski v. Castaldi*, No. 01-0164, 2006

WL 118973, at *4 (E.D.N.Y. Jan. 13, 2006).  Certification of the Settlement Class will allow for

efficient adjudication of claims that would likely not be brought owing to prohibitive legal

expenses, while at the same time preserving scarce judicial resources.  Therefore, a class action

is a superior method of adjudicating this case.

### E.      **Plaintiff's Counsel Should Be Appointed As Class Counsel.**

This Court has already appointed FBFG as interim lead counsel, following a contested

motion.  ECF No. 147.  For the same reasons this Court found FBFG well-suited to the role of

interim lead counsel, FBFG should be appointed as class counsel for the Settlement Class.  Rule

23(g) enumerates four factors for evaluating the adequacy of proposed counsel:

> (1) the work counsel has done in identifying or investigating
> potential claims in the action; (2) counsel's experience in handling
> class actions, other complex litigation, and types of claims of the
> type asserted in the action; (3) counsel's knowledge of the
> applicable law; and (4) the resources counsel will commit to
> representing the class.

Fed. R. Civ. P. 23(g)(1)(C)(i).[10]  All of these factors militate in favor of appointing FBFG as class counsel.  FBFG has identified, investigated, and vetted the claims at issue in this case, and has done so in multiple similar actions addressing the under-reimbursement of delivery drivers.  FBFG also has extensive experience in class actions, as demonstrated by the numerous times the firm has been appointed class counsel.  Frei-Pearson Decl. ¶ 27-31, Exhibit E.  Finally, FBFG has more than sufficient resources to represent the class.  Frei-Pearson Decl. ¶ 31.  Therefore, Plaintiff respectfully asks that this Court appoint her counsel as counsel for the class.

**F.      The Proposed Class Notice Is Appropriate.**

Rule 23(c)(2)(B) requires that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The Rule also requires that any such notice clearly and concisely state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members under Rule 23(c)(3).  Fed. R. Civ. P. 23(b)(2)(B).

Plaintiff proposes to provide direct mailed notice to members of the Settlement Class in a form substantially similar to the notice attached as Exhibit B to the Settlement Agreement (Blankinship Dec. Ex. 1) (the "Short Form Notice"), which is the best notice practicable in the circumstances.  *See Berland v. Mack*, 48 F.R.D. 121, 129 (S.D.N.Y. 1969) ("Where members of

---

[10]   *See also deMunecas v. Bold Food, LLC*, No. 09-00440, 2010 WL 2399345, at *3 (S.D.N.Y. Apr. 19, 2010) ("The work that [Plaintiff' counsel] has performed both in litigating and settling this case demonstrates their commitment to the class and to representing the class's interests.").

the class are readily identifiable and personal notice would not be so prohibitively expensive as to prevent the class action from being prosecuted, individual notices by first class mail would in most cases be the 'best notice practicable.'"); *Jermyn v. Best Buy Stores, L.P.*, No. 08-00214, 2010 WL 5187746, at *2 (S.D.N.Y. Dec. 6, 2010) ("[W]here the names and addresses of class members may be ascertained through reasonable efforts, individual notice must be sent.").

As contemplated in the Settlement Agreement, Defendants will, based on their employment records, provide to a Settlement Administrator information on all Settlement Class Members.  Subject to the Court's approval, the Parties will also provide the Settlement Administrator with the Notice attached as Exhibit B to the Frei-Pearson Decl. for distribution to all Settlement Class members.  That notice provides all of the information required under Rule 23(b)(2)(B), and it "fairly apprise[s] the prospective members of the class of the pendency of the class action, the terms of the proposed settlement, and the options that are open to them in connection with the proceedings, including the option to withdraw from the settlement." *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006).  The Summary Notice also directs class members to an Internet website where they can find further information, including the Class Notice.  The Reminder Notice, attached as Exhibit C to the Frei-Pearson Decl. likewise provides Class Members with all information required under the Federal Rules and appraises them of their options and the consequences for each.  Therefore, Plaintiff respectfully requests that the Court approve the forms of notice attached as Exhibits B and C to the Frei-Pearson Decl.

## V.   <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests that the Court preliminarily approve the settlement, conditionally certify the settlement class, appoint Plaintiff's Counsel as Class Counsel, approve the Settlement Class Notice, and schedule a fairness hearing.

Dated:  November 27, 2019                    Respectfully submitted,


                                             */s/ Jeremiah Frei-Pearson*
                                             Jeremiah Frei-Pearson
                                             Andrew C. White
                                             **FINKELSTEIN, BLANKINSHIP,**
                                             **FREI-PEARSON & GARBER, LLP**
                                             445 Hamilton Avenue, Suite 605
                                             White Plains, New York 10601
                                             Telephone:  (914) 298-3281
                                             Facsimile:  (914) 824-1561

                                             *Attorneys for Plaintiff*
                                             *and the Putative Class*