UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACQUELINE BEEBE, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>V&J NATIONAL ENTERPRISES, LLC, V&J UNITED ENTERPRISES, LLC, V&J EMPLOYMENT SERVICES, INC., and V&J HOLDING COMPANIES, INC.,<br><br>      Defendants. | Case No. 6:17-cv-06075-EAW-MWP<br><br>Class / Collective Action |

## DECLARATION OF JEREMIAH FREI-PEARSON
## IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

I, Jeremiah Frei-Pearson, affirm under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct:

  1.  I am a founding partner of the law firm of Finkelstein, Blankinship, Frei-Pearson & Garber, LLP ("FBFG"), counsel for Plaintiff Jacqueline Beebe ("Plaintiff") in the above-captioned case.

  2.  I respectfully submit this Declaration in support of Plaintiff's Unopposed Motion for Preliminary Approval of Settlement (the "Motion").

  3.  Data produced in discovery by Defendants V&J National Enterprises, LLC, V&J United Enterprises, LLC, V&J Employment Services, Inc., and V&J Holding Companies, Inc. (collectively "V&J" or "Defendants;" collectively with Plaintiff the "Parties") and by Pizza Hut LLC indicates that there are well over 300 individuals who were employed by V&J as delivery drivers during the period from June 21, 2010 to September 16, 2017.

{00295610 }

4.      In the related matter *Spano v. V&J National Enterprises, LLC*, No. 16-6419 (W.D.N.Y.), in accordance with Second Circuit mandatory mediation procedures, counsel for V&J and I engaged in a mediation session. However, we were unable to settle Mr. Spano's claims at that mediation.

5.      Subsequently, following settlement negotiations with V&J's replacement counsel, we were able to reach a mutually-agreeable settlement of Mr. Spano's claims.

6.      V&J represented during discovery exchanges and settlement negotiations, and corroborated with documentary evidence, that it sold all of its remaining Pizza Hut-branded stores on or about September 16, 2017.

7.      Prior to the sale of the Pizza Hut-branded stores, V&J instructed delivery drivers to attend meetings with V&J executives David Boose or Wendy Garagozzo, where V&J counsel Calvin Scott was also present.

8.      At these meetings, delivery drivers were presented with waiver forms and told that they would receive an additional payment on their paycheck if they signed the waiver.

9.      The delivery drivers were not invited to bring counsel to these meetings, were not informed of this pending action, and were not told the estimated value of their claims.

10.     Plaintiff served initial interrogatories and requests for production of documents on March 23, 2017, and subsequent requests for production of documents on June 9, 2017 and October 2, 2017.

11.     The Parties engaged in numerous meet and confer exchanges over phone calls, emails, and letters concerning the sufficiency of Defendants' document production from at least November 2017 to June 2018. Of particular concern was the absence of data from Pizza Hut's SUS system which would track deliveries and addresses.

12. Defendants made productions of documents on October 16, 2017, November 13, 2017, and December 14, 2017.  V&J produced data from Pizza Hut's "SUS" system on February 6, 2019, however based on my experience litigating similar cases against Pizza Hut and its franchisees, I believed that this produced data appeared incomplete.

13. Plaintiff noticed a deposition of V&J's person-most-knowledgeable on topics related to its employment and delivery documents and its data retention policies.  This deposition was held on August 1, 2018.

14. Following meet and confer calls and emails regarding the SUS data produced by V&J, Plaintiff agreed to participate in a previously-scheduled mediation before Mediator Patrick Solomon, but also subpoenaed full SUS records concerning V&J's stores from Pizza Hut LLC.

15. Pizza Hut LLC produced SUS records for the V&J stores reflecting significant additional deliveries beyond the data previously produced by V&J.

16. Plaintiff conducted several depositions of V&J corporate officers and noticed additional depositions, including Rule 30(b)(6) depositions for V&J and its counsel or record for the person most knowledgeable concerning the discrepancy between the two sets of SUS data.

17. In response to V&J's position that many of the delivery drivers in the FLSA collective were subject to arbitration agreements, Plaintiff's counsel worked with these collective members to file 49 individual arbitrations before the American Arbitration Association ("AAA").

18. V&J declined to pay the employer-respondents' portion of the initial AAA fee for each of these 49 individual arbitrations, and the AAA administrative closed all of the matters, stating that it would no longer arbitration actions for V&J.

19. Plaintiff and V&J engaged the services of Mediator Patrick Solomon for a mediation session on October 2, 2017, in an attempt to resolve the claims in this litigation, but were not able to reach a settlement.

20. The Parties agreed participate in an additional mediation to be held in late 2018/early 2019. The Parties initially agreed to mediate before Mediator Hesha Abrams or Mediator Hunter Hughes for this session, but ultimately V&J declined to mediate before either of those Mediators. As such, the parties again engaged Mediator Solomon for an all-day mediation on February 27, 2019.

21. At the February 27, 2019 mediation, the Parties reached agreements on most overall structural terms of a settlement but were unable to reach agreement on the maximum settlement payment amount.

22. Plaintiff's valuation of the settlement being negotiated at the February 27, 2019 mediation was based on the SUS data initially provided by V&J, as the data from Pizza Hut LLC had not yet been produced. Based on the Pizza Hut LLC data, Plaintiff subsequently valued the overall potential recovery for the class at approximately $14,818,043.00. Due to the discrepancy between the data sets, the Parties were unable to reach a settlement at that time and requested the assistance of the Court, asking that the Hon. Magistrate Judge Payson mediate a settlement conference between the Parties.

23. At a July 30, 2019 mediation before Judge Payson, the parties successfully reached an agreement in principle on all material terms of the settlement and executed a memorandum of understanding outlining those terms.

24. Plaintiff's concerns over Defendants' ability to pay a judgment significantly more substantial than the amount of the negotiated settlement, and the impact further litigation

expenses would have on Defendants' ultimate ability to pay, was a major factor in Plaintiff's agreement to the settlement, as such Plaintiff insisted on verification of Defendants' financial circumstances by a third-party neutral as a material term of the settlement agreement. Should this check reveal that V&J's ability to pay is not a significant issue, Plaintiff anticipates voiding the settlement per these terms.

25. The Parties subsequently negotiated the terms of the complete settlement agreement, which was executed by Plaintiff Beebe on or about October 1, 2019 and by Defendants on or about October 28, 2019.

26. In addition to Plaintiff Beebe, Plaintiff's counsel have been in communication with multiple other putative class members. These individuals have all expressed support for the proposed settlement.

27. FBFG will fairly and adequately represent the interests of all class members. FBFG has a proven track record of zealously and successfully advancing the interests of class members in consumer class actions.

28. FBFG has more than sufficient resources to represent the class. Its attorneys are highly qualified and have extensive experience in complex civil litigation and consumer class actions. We have repeatedly represented delivery drivers in under-reimbursement minimum wage class actions. We understand the duties imposed upon class counsel in consumer class actions, having been appointed class counsel numerous times, and have proven adept at all phases of litigation, from discovery and motion practice to trial and appeal or settlement.

29. FBFG's partners have been recognized as "Super Lawyers" and have been selected by their peers as amongst the New York area's "Best Lawyers." The firm's lawyers have been selected for admission to the Top Trial Lawyers in America™ and to the Litigation

Counsel of America's Trial Lawyer Honorary Society, as well as inducted as Fellows in the American Bar Foundation.

30. FBFG attorneys have successfully litigated complex class actions in federal and state courts all across the country and have obtained successful results for clients against some of the world's largest corporations. A sampling of the Firm's more significant past and present cases can be found in the Firm's Resume, attached as Exhibit E.

31. FBFG attorneys have the requisite knowledge of the substantive and procedural law to prosecute this class action. It is currently litigates dozens of cases in state and federal courts nationwide. It has more than sufficient resources to represent the Class.

32. Plaintiff Beebe has been an active participant in this litigation, advocating for the interests the class as a whole. She has been in routine contact with Plaintiff's counsel, reviewed and approved the Complaint, participated in drafting and ultimately approved her discovery responses, made herself available by phone for both mediation sessions before Mediator Solomon, and participated in person in the mediation session before Judge Payson. In the course of the litigation, V&J tendered to Plaintiff Beebe two checks totaling $6,863.45 -- at a time when she was experiencing significant personal financial difficulties -- in an attempt to moot her claims. Plaintiff Beebe returned these checks uncashed expressly out of concern that mooting her claims would delay or prevent recovery for the rest of the class.

33. True and correct copies of the following are attached hereto:

    A. the executed Settlement Agreement, attached hereto as Exhibit A;

    B. the proposed Notice of Class Action Settlement, attached hereto as Exhibit B;

    C. the proposed Reminder Notice, attached hereto as Exhibit C;

    D. the proposed Claim Form, attached hereto as Exhibit D; and

      E.    a copy of FBFG's Firm Resume, attached hereto as Exhibit E.

I declare under penalty of perjury under the laws of the United States of America and the State of New York that the foregoing is true and correct.

Executed on November 27, 2019 in White Plains, New York.

      **FINKELSTEIN, BLANKINSHIP,**
      **FREI-PEARSON & GARBER, LLP**

By: */s/ Jeremiah Frei-Pearson*
      Jeremiah Frei-Pearson