UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JACQUELINE BEEBE, individually and
on behalf of all others similarly situated,

              Plaintiff,

      v.

V&J NATIONAL ENTERPRISES, LLC,
V&J UNITED ENTERPRISES, LLC, V&J
EMPLOYMENT SERVICES, INC., and V&J
HOLDING COMPANIES, INC.,

             Defendants.
_____

**DECISION AND ORDER**

6:17-CV-06075 EAW

## <u>INTRODUCTION</u>

Plaintiff Jacqueline Beebe ("Beebe" or "Plaintiff") commenced this action on February 1, 2017, on behalf of herself and all other employees similarly situated. (Dkt. 1). The Complaint alleges that Beebe was a part-time delivery driver for Defendants at their Pizza Hut store at 3920 Dewey Avenue in Greece, New York (*id.* at ¶ 10), and that defendants V&J National Enterprises, LLC, V&J United Enterprises, LLC, V&J Employment Services, Inc., and V&J Holding Companies, Inc. (collectively "Defendants") own and operate more than 60 restaurants in New York and Massachusetts (*id.* at ¶ 13). Beebe alleges that because Defendants paid her the minimum wage, they were legally obligated to fully reimburse her and her colleagues for the full amount of their driving expenses, but failed to do so. (*Id.* at ¶ 39). As a result, the drivers' total compensation after accounting for the expenses they incurred in delivering pizzas was below the

minimum wage in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").  (*Id.* at ¶¶ 38-39, ¶¶ 58-87).

Presently before the Court are the Unopposed Motion for Final Approval of Class Action Settlement (the "Final Approval Motion") (Dkt. 201) and Unopposed Motion for Attorneys' Fees and Service Award (the "Attorneys' Fees Motion") (Dkt. 202).  Because the Court finds that the proposed settlement is fair, reasonable, and adequate, and that the request for attorneys' fees, costs, and service award to Beebe is fair and reasonable, the Court grants the Final Approval Motion and the Attorneys' Fees Motion.

## <u>BACKGROUND AND PROCEDURAL HISTORY</u>

Beebe is a member of a FLSA collective and a Rule 23 class comprised of all delivery drivers Defendants have employed for any length of time since June 21, 2010. (Dkt. 199 at 1).  Beebe contends that Defendants paid their delivery drivers an initial wage equal or near to the minimum, and were required by law to fully reimburse their delivery drivers for all vehicular expenses incidental to their deliveries, but failed to do so.  (Dkt. 1 at ¶ 39).  Beebe alleges that Defendants are liable for the difference between the driver's true expenses and the reimbursement rate Defendants paid, plus liquidated damages.  (*Id.* at 18).  Defendants sold all of their stores on September 16, 2017.  (Dkt. 125-2 at ¶ 6).

On June 21, 2016, Daniel Spano ("Spano") filed a complaint with the Court in a related action.  Complaint, *Daniel Spano v. V&J Nat'l Enters., LLC*, No. 16-cv-6419, Dkt. 1 (June 21, 2016).  Defendants produced an arbitration agreement between Spano and defendant V&J Employment Services, Inc. on August 25, 2016.  *Id.*, Dkt. 10.  Spano filed an arbitration claim on December 30, 2016, paying the $300 arbitration fee.  (Dkt. 195-1

at 11).   Defendants declined to pay the arbitration fee, and the arbitration was administratively closed on April 7, 2017.  (*Id.*).  The Court held Defendants had breached the arbitration agreement, and that arbitration could not be compelled.  *Daniel Spano v. V&J Nat'l Enters., LLC*, No. 16-cv-6419, Dkt. 54 (Aug. 30, 2017).  Spano's case eventually settled, and the settlement was approved by the Court on September 28, 2018.  *Id.* at Dkt. 86.

Beebe filed the instant related action on February 1, 2017, in light of Defendants' arbitration defense in the Spano case.  United States Magistrate Judge Marian W. Payson granted conditional certification of the FLSA collective on June 14, 2017.  (Dkt. 44).  On February 23, 2018, Judge Payson appointed Finkelstein, Blankinship, Frei-Pearson & Garber, LLP as interim lead counsel for the putative class.  (Dkt. 147; *see* Dkt. 151).

Because Defendants took the position that many of the delivery drivers were subject to binding arbitration agreements, 49 plaintiffs who opted in to the class filed arbitrations for their claims against Defendants, and for each Class Counsel paid a $300 non-refundable fee.  (Dkt. 195-2 at ¶ 17; Dkt. 202-2 at ¶ 17).  Defendants declined to pay the fee for each matter, and the arbitrations were terminated.  (Dkt. 195-2 at ¶ 18).

On October 2, 2017, the parties mediated before court-appointed mediator Patrick Solomon all day, and again on February 27, 2019.  (*Id.* at ¶¶ 19-20).  While the parties agreed to a general structure of the settlement, they could not reach an agreement on the overall dollar amount.  (*Id.* at ¶ 21).  On July 30, 2019, the parties held a mediation session before Judge Payson, where they reached an agreement on the terms of the settlement and

executed a memorandum of understanding.  (*Id.* at ¶¶ 22-23).  The terms of the Settlement Agreement were executed on October 28, 2019.  (*Id.* at ¶ 25).

On January 13, 2020, the Court preliminarily approved the settlement.  (Dkt. 199). Pursuant to the Court's Order, the parties appointed JND Class Action Administration ("JND") to serve as the Settlement Administrator.  (Dkt. 201-3 at ¶ 2).  On February 24, 2020, JND sent notice via first-class regular U.S. mail to the 1,610 Class Members, which informed the Class Members of their rights in the Settlement and the deadline for filing a claim, requesting exclusion from, or objecting to the Settlement.  (*Id.* at ¶ 5).  Before this mailing, JND updated 274 Class Member addresses using the USPS National Change of Address database.  (*Id.*).  As of May 13, 2020, 440 Notices were returned as undeliverable without a forwarding address.  (*Id.* at ¶ 6).  JND conducted advanced address research, updated the address information for 416 of these Class Members, and re-mailed Notices to them.  (*Id.*).  Fifty-six of these re-mailed Notices were returned as undeliverable.  (*Id.*).  In total, 78 Class Members did not receive a Notice, and 1,532 Class Members received a Notice.  (*Id.*).

In addition to sending Notices, JND established a website, www.BeebeClassAction.com, which Class Members could visit to obtain information about the matter and about how to file a claim.  (*Id.* at ¶ 7).  As of May 13, 2020, the website had received 115 unique visitors and 564 pageviews.  (*Id.*).  JND also established an email address to where Class Members could seek information, update their address, or request a new Notice.  (*Id.* at ¶ 8).  JND has received and responded to 51 incoming emails. (*Id.*).

The deadline to submit a claim form to the settlement was a postmark deadline of April 24, 2020.  (*Id.* at ¶ 9).  JND received 704 claim forms, 11 of which were received after the deadline, and are to be included in the Settlement as valid.  (*Id.* at ¶ 10).  Seven claim forms were from individuals who completed a separate settlement agreement with Defendants, and these seven individuals will not be included as claimants in this Settlement.  (*Id.* at ¶ 11).  Additionally, 59 Class Members opted in to the litigation before the sending of the Notice.  (*Id.* at ¶ 12).  Accordingly, a total of 763 Class Members participated in the Settlement, and 756 of those participants will be included as Claimants, which is approximately 47% of the Class.

The deadline for Class Members to submit a request for exclusion or an objection to the Settlement was March 25, 2020.  (*Id.* at ¶¶ 13, 15).  JND did not receive any objections or requests for exclusion.  (*Id.* at ¶¶ 14, 16).

On May 13, 2020, the unopposed motion for settlement (Dkt. 201) and unopposed motion for attorney fees (Dkt. 202) were filed.  On May 27, 2020, a final fairness hearing was held remotely in light of the ongoing COVID-19 pandemic.[1]  (Dkt. 200).  This was a public proceeding, call-in information for the telephonic hearing was made available to the public, and members of the public remotely attended the proceeding.  (Dkt. 204).  A member of the Court's staff was present at the United States Courthouse, 100 State Street,

---

[1]      On March 13, 2020, President Trump declared a National Emergency concerning COVID-19. Proclamation No. 9994, 85 Fed. Reg. 15337 (Mar. 13, 2020).  According to the World Health Organization's website, as of June 1, 2020, there were 6,057,853 confirmed cases of COVID-19 worldwide, with 371,166 confirmed deaths. *See Coronavirus (COVID-19)*, World Health Org., https://covid19.who.int/ (last visited June 1, 2020).

Rochester, NY 14614 and confirmed that no class members physically appeared for the final fairness hearing, nor did any class member submit objections to the Settlement Agreement in advance of the final fairness hearing. At the Court's request, Plaintiff's counsel submitted a declaration on May 28, 2020, that included a categorized list of the litigation expenses incurred by Finkelstein, Blankinship, Frei-Pearson & Garber, LLP. (Dkt. 203).

## DISCUSSION

### I.   The Joint Approval Motion

#### A.   Legal Standard

"Under Federal Rule of Civil Procedure 23, a class action cannot be settled without the approval of the District Court. The District Court must carefully scrutinize the settlement to ensure its fairness, adequacy and reasonableness, and that it was not a product of collusion." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citations omitted). FLSA settlements also require court approval. *See Misiewicz v. D'Onofrio Gen. Contractors Corp.*, No. 08 CV 4377(KAM)(CCP), 2010 WL 2545439, at *3 (E.D.N.Y. May 17, 2010) ("Stipulated settlements in a FLSA case must be approved by the Court[.]").

Approval of a proposed class action settlement is a matter of discretion for the trial court. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995) ("[A] district court's disposition of a proposed class action settlement should be accorded considerable deference, and is reviewed for abuse of discretion." (quotation and citation omitted)). A proposed settlement should be approved if the court determines "that the settlement, taken as a whole, is fair, reasonable, and adequate." *Id*. "'In exercising this

discretion, courts should give proper deference to the private consensual decision of the parties,' and should bear in mind 'the unique ability of class and defense counsel to assess the potential risks and rewards of litigation.'" *Kelen v. World Fin. Network Nat'l Bank*, 302 F.R.D. 56, 68 (S.D.N.Y. 2014) (quoting *Clark v. Ecolab, Inc.*, No. 04 CIV. 4488 (PAC), 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009)).

"A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement." *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 176 (W.D.N.Y. 2011) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)). Assessing procedural fairness requires the court to review the negotiating process and "ensure that the settlement resulted from arm's length negotiations and that plaintiffs' counsel . . . possessed the [necessary] experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *Id.* (alterations in original) (quoting *McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009)).

Assessing substantive fairness requires the Court to consider nine specific factors (the "*Grinnell* factors"):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*McReynolds*, 588 F.3d at 804 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)).

> **B.      Certification of the Settlement Class**

While the Court granted preliminary approval of the Settlement Class in its Preliminary Approval Order (Dkt. 199 at 1-2), to approve the Settlement Agreement, the Court must first grant final certification of the proposed Settlement Class.  The class is defined as follows:  All persons Defendants employed in New York as a delivery driver at a Pizza Hut-branded store during any workweek from June 21, 2010 to the present (hereinafter "Settlement Class").  Excluded from the Settlement Class are: V&J National Enterprises, LLC, V&J United Enterprises, LLC, V&J Employment Services, Inc., V&J Holding Companies, Inc.; any of their parents, subsidiaries, or affiliates; any entity controlled by them; any officer, director, employee, legal representative, predecessor, successor, or assignee of them; and federal, state, and local governments (including all agencies and subdivisions thereof, but excluding employees thereof) and the judge to whom the Action is assigned and any member of her immediate family.

Certification of a class for settlement purposes is appropriate "where the proposed class and class representative satisfy the four requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy—as well as one of the three subsections of Rule 23(b)."  *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157-58 (E.D.N.Y. 2009) (footnote omitted).  "In deciding certification, 'courts must take a liberal rather than restrictive approach in determining whether the plaintiff satisfies these requirements and may exercise broad discretion in weighing the propriety of a putative

class.'"  *Id.* at 158 (quoting *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 72 (E.D.N.Y. 2004)).

The Court certifies the Settlement Class because, as explained in further detail below, the Settlement Class meets all the requirements for class certification under Rule 23(a) and (b)(3).

### 1.    Numerosity

With regard to numerosity, this element is satisfied if the class is sufficiently numerous that joinder is "impracticable."  *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).  Numerosity is presumed at a level of 40 members.  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  Here, the Settlement Class has approximately 1,610 members.  (Dkt. 201-3 at ¶ 5).  Accordingly, the Settlement Class satisfies the first element.

### 2.    Commonality

The proposed Settlement Class also satisfy the commonality requirement. Commonality occurs where the "class members' claims share a common question of law or fact."  *Cohen*, 262 F.R.D. at 158.  The common issues of law and fact in this case center around Defendants' policies regarding reimbursement of vehicular expenses and whether Defendants are liable for the difference between the driver's true expenses and the reimbursement rate Defendants paid.  Courts have not hesitated to find the commonality requirement met in comparable circumstances.  *See, e.g.*, *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 371 (S.D.N.Y. 2007) ("The complaint raises a number of questions of law and fact common to all members of the class, including, *inter alia*, factual

questions regarding defendants' payroll practices, overtime policy, and compliance with minimum wage requirements, as well as legal questions concerning the applicability of the New York Labor Law and any exemptions.").

### 3.   Typicality

Beebe is also typical of the class members because her "claims arose from the same factual and legal circumstances that form the bases of the Class Members' claims." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012); *see also Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 182 (W.D.N.Y. 2005) (finding typicality because "[the plaintiff's] claims arise from the same course of events as those raised by all other class members—that is, all class members, including [the plaintiff], allege that [the defendant] failed to pay them . . . overtime wages for hours worked in excess of forty per week during the relevant time period"). The typicality requirement has therefore been met in this case.

### 4.   Adequacy

The adequacy requirement is also satisfied. The adequacy requirement has two elements: "(1) the representative plaintiff's attorneys must be qualified, experienced, and generally able to conduct the litigation, and (2) the plaintiff's interests must not be antagonistic to those of the remainder of the class." *Cohen*, 262 F.R.D. at 158. Here, Beebe does not have a conflict that would defeat her representative status, and Plaintiff's counsel is experienced and competent.

### 5.    Rule 23(b)(3)

The Settlement Class also satisfies Rule 23(b)(3) because the Court finds "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3). "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

Here, resolution of the common issues of fact and law previously identified would permit significant resolution of this matter.  For example, the existence of a policy of paying employees minimum wage while not fully reimbursing them for their driving expenses is a common issue that could be resolved once for all class members.  The superiority requirement is met here because the commencement of individual actions would be cost-prohibitive (because the potential recovery is far outweighed by the potential cost) and because many of Defendants' work locations are located in this District, making this a desirable forum.  Moreover, the common issues of law and fact in this matter are more substantial than the individualized issues.  Additionally, even the individualized issues (*e.g.*, how many miles a particular employee drove in particular weeks) are likely to implicate the same kinds of proof (*e.g.*, the delivery address records kept by Defendant). Under these circumstances, Rule 23(b)(3) is satisfied.

The parties have demonstrated that the requirements of Federal Rule of Civil Procedure 23(a) and (b) are met in this case.  The Court therefore affirms as final its certification of the Settlement Class for the purpose of settlement.  *See Frank*, 228 F.R.D. at 184.

### C.   <u>The Settlement Agreement is Fair, Reasonable, and Adequate</u>

The Court has carefully considered the parties' submissions and the information provided at both the preliminary approval hearing and the final fairness hearing and finds that the Settlement Agreement is fair, reasonable, and adequate.

With respect to procedural fairness, "there is no indication that the settlement agreement is the product of anything other than arm's-length negotiations," *Davis*, 827 F. Supp. 2d at 177, and in fact, the Settlement Agreement is the product of multiple mediation sessions with a court-approved mediator and Judge Payson, *see Morris*, 859 F. Supp. 2d at 618 (involvement of an experienced mediator is "a strong indicator of procedural fairness").  In addition, the parties are represented by experienced counsel and counsel for both sides have represented to the court that the Settlement Agreement was the product of extensive negotiations.  Therefore, the Court concludes that the Settlement Agreement is fair from a procedural standpoint.  *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (finding procedural fairness in part because parties were represented by experienced counsel and there was evidence of arm's-length negotiations).

With respect to substantive fairness, consideration of the *Grinnell* factors leads to the conclusion that the Settlement Agreement should be approved.  This case is moderately complex, involving both federal claims and state law claims, and a trial in this matter would

likely be lengthy, costly, and complicated.  *See Morris*, 859 F. Supp. 2d at 619 (trial of

case involving FLSA and NYLL claims was likely to be lengthy and complicated); *Alleyne*

*v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 56 (E.D.N.Y. 2010) (same); *see also Frank*,

228 F.R.D. at 185 ("Although this case is less complex than many, the costs of continued

litigation will be substantial and will quickly outweigh the recovery that could be

achieved.").

      The reaction of the class to the Settlement Agreement has been favorable.   Seven

hundred and fifty-six individuals (approximately 47% of eligible class members) have

opted in to the settlement.  (Dkt. 201-3 at ¶¶ 10-12).  In addition, none of the class members

opted out.  (*Id.* at ¶¶ 6, 11).  This is a high participation rate for a "claims made"[2] settlement

agreement such as the one in this case.  *See, e.g.*, *Sylvester v. CIGNA Corp.*, 369 F. Supp.

2d 34, 52 (D. Me. 2005) ("'[C]laims made' settlements regularly yield response rates of 10

percent or less.").   Additionally, no class members have objected to the Settlement

Agreement.  (Dkt. 201-3 at ¶¶ 14, 16).  *See Davis*, 827 F. Supp. 2d at 177 (class reaction

favorable where only eleven members opted out and only three objected); *Alleyne*, 264

F.R.D. at 56 (class reaction favorable where less than 1% of class objected and only seven

class members opted out).

      With respect to the stage of the proceedings and the amount of discovery that has

occurred, "a sufficient factual investigation must have been conducted to afford the Court

---

[2]     A "claims made" settlement agreement is one in which the defendant agrees to pay
a monetary settlement award to qualifying class members who mail in a claim for a
payment.

the opportunity to intelligently make an appraisal of the Settlement." *Frank*, 228 F.R.D.

at 185 (quotation omitted).  Discovery in this case "included interrogatories, requests for

production of documents, multiple depositions, . . . numerous meet and confer efforts over

the sufficiency of documents and deposition testimony and . . . cross-motions to compel

production and for a protective order."  (Dkt. 201-1 at 25).  Moreover, the litigation has

included fairly extensive motion practice such as Defendants' motion for judgment on the

pleadings, Plaintiff's motions for conditional certification of a FLSA collective, equitable

tolling, appointment of interim lead counsel, and request for a temporary restraining order

and preliminary injunction.  Thus, "[t]hrough discovery and motion practice, counsel were

well-informed of the merits of the claims by the time the Settlement was reached." *Godson*

*v. Eltman, Eltman, & Cooper, P.C.*, 328 F.R.D. 35, 53 (W.D.N.Y. 2018) (alteration in

original) (quotation omitted).  This factor favors approval of the Settlement Agreement.

"In considering the risks of establishing liability and damages, and of maintaining

the class action through the trial, it is important to keep in mind that this Court's role is not

to 'decide the merits of the case or resolve unsettled legal questions.'" *Davis*, 827 F. Supp.

2d at 177 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)).  Instead, "the

Court need only assess the risks of litigation against the certainty of recovery under the

proposed settlement." *Id.* at 177-78 (quoting *In re Global Crossing Sec. & ERISA Litig.*,

225 F.R.D. 436, 459 (S.D.N.Y. 2004)).

This is a vigorously contested case.  Although the Court need not "scrutinize the

merits of the parties' positions, . . . it is fair to say that there would have been an uncertain

outcome, and significant risk on both sides, had this case gone to trial." *Id.* at 178.  The

fourth, fifth, and sixth *Grinnell* factors therefore favor approval of the Settlement Agreement.

The seventh *Grinnell* factor (the ability of the defendants to withstand a greater judgment) strongly favors approval of the Settlement Agreement. The parties have represented to the Court that the Defendants' financial position played a role in reaching settlement. Indeed, the Settlement Agreement required independent verification of Defendants' financial situation (Dkt. 195-3 at ¶ 33), and mediator Patrick Solomon has since verified that Defendants' financial situation prevents them from paying a higher settlement without significant financial hardship and "could not come [c]lose to paying the Class' maximum potential recovery at trial" (Dkt. 201-2 at ¶¶ 6-7). In addition, Defendants have funded the settlement with scheduled payments over the course of approximately two years, rather than making a lump sum payment. (Dkt. 195-3 at ¶ 35). Moreover, even if Defendants were able to withstand a greater judgment, a "defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quotation and citation omitted).

With respect to the eighth and ninth *Grinnell* factors (the range of reasonableness of the settlement fund in light of the best possible recovery and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation), "the determination of whether a settlement amount is reasonable does not involve the use of a mathematical equation yielding a particularized sum." *Morris*, 859 F. Supp. 2d at 621 (quotation omitted). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular

case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Frank*, 228 F.R.D. at 186 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). Here, Plaintiff's counsel indicated to the Court that the highest estimate of potential damages in this case was $14,818,043.00, and the highest estimate of actual damages (excluding liquidated damages) was $7,409,021.50. (Dkt. 201-2 at ¶ 5). A $2.35 million settlement is reasonable where the potential recovery is $14.8 million, especially when taking into consideration Defendants' financial position and the risks of litigation. *See Morris*, 859 F. Supp. 2d at 621 (approving settlement of $2.5 million over objection that best possible recovery was $125 million). The Settlement Agreement provides for meaningful recovery for class members and "balances the damages potentially recoverable by the plaintiffs with the genuine risks of continued litigation." *Frank*, 228 F.R.D. at 186-87. The average payment to members of the class is approximately $963.77, which is a significant sum of money, especially when balanced against the costs and risks associated with trial.

Based on the foregoing, the Court finds that the Settlement Agreement is the result of a procedurally fair process and that the *Grinnell* factors weigh in favor of approval. As a result, the Court finds that the Settlement Agreement is fair, reasonable, and adequate.

### D.   Appointment of Plaintiff's Counsel as Class Counsel and of Beebe as Class Representative

The Court previously preliminarily appointed Finkelstein, Blankinship, Frei-Pearson & Garber, LLP as class counsel in its Preliminary Approval Order dated January 13, 2020. (Dkt. 199 at 2-3 at 9). The Court affirms its prior ruling that Finkelstein,

Blankinship, Frei-Pearson & Garber, LLP meets all the criteria of Federal Rule of Civil Procedure 23(g).  *See, e.g.*, *Fata v. Pizza Hut of Am., Inc.*, No. 6:14-cv-00376-RBD-DCI, Dkt. 259 (M.D. Fla. June 21, 2017) (appointing Finkelstein, Blankinship, Frei-Pearson & Garber, LLP as class counsel in FLSA action and approving settlement); *Reed v. Friendly's Ice Cream, LLC*, No. 15-cv-00298-SHR, Dkt. 105 (M.D. Pa. Jan. 31, 2017) (same).

The Court also preliminarily found that Beebe was an adequate class representative for the Settlement Class.  (Dkt. 199 at 2).  The Court affirms that ruling for the reasons discussed in Part I(B) of this Decision and Order.

## II.    The Attorneys' Fees Motion

There is also a motion  for an award of attorneys' fees, litigation costs, and a service award of $15,000 to Beebe.  (Dkt. 202).  In accordance with the Settlement Agreement, Defendants have not opposed these requests.  For the reasons set forth below, the Court grants the motion.

### A.    The Attorneys' Fees Request Is Fair and Reasonable

As with all aspects of the Settlement Agreement, the Court must carefully scrutinize the provisions providing for the payment of attorneys' fees, costs, and enhancement payments to ensure that they are fair and reasonable.  *See Davis*, 827 F. Supp. 2d at 183. The standard can be summarized as follows:

> To determine what qualifies as a reasonable attorney's fee in the class action context, a district court may use either of two distinct methods.  The first is the lodestar-type methodology, under which the court reviews a fee application submitted by counsel to ascertain the number of hours reasonably billed to the class, and then multiplies that figure by an appropriate hourly rate.  Under the second and simpler approach, the court approves an award of a percentage of the class settlement fund to compensate counsel, with

> reference to the lodestar or presumptively reasonable fee calculation as a cross-check. Regardless of whether the lodestar or percentage method is chosen, the Court's assessment of the reasonableness of the fee is guided by the same criteria: the time and labor expended by counsel; the magnitude and complexities of the litigation; the risk borne in the litigation; the quality of the representation; the requested fee in relation to the settlement; and public policy considerations.

*Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 58 (E.D.N.Y. 2010). The trend in the Second Circuit has been towards using the percentage method for awarding fees in class action cases. *See Davis*, 827 F. Supp. 2d at 183-84 (collecting cases).

Plaintiff requests that the Court award attorneys' fees in the amount of $694,298.37 to be paid over a two-year period, which is 29.5% of the total Settlement Amount. An award of 29.5% is less than the one-third amount typically found to be acceptable in complex class actions. *See Morris*, 859 F. Supp. 2d at 621 (a request for one-third of the settlement fund "is reasonable and 'consistent with the norms of class litigation in this circuit'" (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452(RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008))). Nevertheless, the Court must perform a lodestar cross-check and consider the additional factors set forth in *Alleyne*.

Plaintiff's counsel has submitted a sworn affidavit outlining the hours expended by Plaintiff's counsel and the rates charged, showing that counsel expended over 2,500 hours on this litigation. (Dkt. 202-2 at 3). The documents submitted to the Court further indicate that at class counsel's standard hourly rates, the hourly fee for this litigation would be approximately $1,231,111. (*Id.*).

While "[t]he reasonable hourly rate is, generally, the hourly rate employed by attorneys in the district in which the litigation is brought," *Salazar-Martinez v. Fowler*

- 18 -

*Bros.*, No. 10-CV-6257, 2012 WL 4062582, at *1 (W.D.N.Y. Sept. 14, 2012) (citing *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)), "[w]here the lodestar method is used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court.  Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Davis*, 827 F. Supp. 2d at 184 (quotation and citation omitted).   In other words, it is not necessary for the Court to reach a conclusion as to the reasonableness of the standard hourly rates charged by Finkelstein, Blankinship, Frei-Pearson & Garber, LLP, and the Court specifically does not reach any such conclusion.

Here, the requested fee amounts to a negative multiplier of 0.56 under the lodestar method.  A negative multiplier "militates very in favor of the reasonableness of the fee request, particularly in light of the fact that courts generally grant fees with positive multipliers to reflect the complexity and risks undertaken by class counsel." *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-CV-07192-CM, 2019 WL 6889901, at *18 (S.D.N.Y. Dec. 18, 2019) (collecting cases).  Accordingly, the lodestar cross-check supports approval of Plaintiff's attorneys' fees request.

The other criteria that courts use in assessing the reasonableness of an attorneys' fee request (namely, the time and labor expended by counsel; the magnitude and complexities of the litigation; the risk borne in the litigation; the quality of the representation; the requested fee in relation to the settlement; and public policy considerations) also support approval of the request.  Plaintiff's counsel performed significant work on this matter.  Although this litigation did not involve as many potential class members as some wage

claim actions, it involved federal law and state law, and required Plaintiff's counsel to perform significant investigation and discovery. Plaintiff's counsel took this matter on a contingency fee basis, and therefore ran the risk of recovering no fees at all, particularly in light of V&J's financial situation. Plaintiff's counsel advocated zealously, conducting multiple arms-length settlement negotiations and mediations, and they have achieved a settlement result that will provide class members with meaningful relief. Additionally, public policy considerations counsel in favor of an award of fees—"[f]ee awards in wage and hour cases are meant to 'encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.'" *Hernandez v. Merrill Lynch & Co.*, No. 11 CIV. 8472 KBF DCF, 2013 WL 1209563, at *8 (S.D.N.Y. Mar. 21, 2013) (quoting *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010)). Finally, a request for less than one-third of the entire settlement fund is reasonable. *See Morris*, 859 F. Supp. 2d at 621; *see also Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) ("The entire [settlement fund], and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not.").

For the foregoing reasons, the Court awards Finkelstein, Blankinship, Frei-Pearson & Garber, LLP $694,298.37 in attorneys' fees, to be paid from the settlement fund as set forth in the Settlement Agreement.

**B.**     **The Request for Litigation Expenses Is Fair and Reasonable**

Plaintiff's counsel also seeks $89,034.96 in litigation expenses, which include the cost of filing the 50 individual arbitrations, travel for depositions and meetings with witnesses, transcription fees, mailing costs, research charges, process server fees, and mediation fees.  (Dkt. 202-2 at ¶ 17).  "Courts typically allow counsel to recover their reasonable out-of-pocket expenses."  *Morris*, 859 F. Supp. 2d at 624 (permitting reimbursement of "filing fees, telephone charges, postage, transportation, working meals, photocopies, and electronic research.").

Here, Plaintiff's counsel has provided a breakdown of the costs incurred in this litigation.  (Dkt. 203).  On their face, the costs do not appear unreasonable based on the Court's understanding that the costs were actually incurred.  *See In re Veeco Instruments*, 2007 WL 4115808, 05-01695 at *10 (awarding $774,329.29 in expenses including "consultant and expert fees, photocopying of documents, mediation fees, court filing fees, deposition transcripts, fees for service of subpoenas to witnesses, on-line research, creation of a document database, messenger service, postage and next day delivery, long distance and facsimile expenses, transportation, [and] travel"); *In re China MediaExpress Holdings, Inc. S'holder Litig.*, No. 11-CV-0804 (VM), 2015 WL 13639423, at *2 (S.D.N.Y. Sept. 18, 2015) (finding award of $406,948.45 in litigation expenses reasonable).  The Court therefore approves Plaintiff's counsel's request for reimbursement of $89,034.96 in costs, to be paid from the settlement fund as set forth in the Settlement Agreement.

## C.     <u>The Service Award Is Fair and Reasonable</u>

The Court's approval is also sought for a $15,000 service award for Beebe as set forth in the Settlement Agreement. "Incentive awards are not uncommon in class action cases and are within the discretion of the court." *Frank*, 228 F.R.D. at 187. In particular, "service awards [to plaintiffs] are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Morris*, 859 F. Supp. 2d at 624.

"The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (*e.g.*, factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claims, and, of course, the ultimate recovery." *Roberts v. Texaco, Inc*., 979 F. Supp. 185, 200 (S.D.N.Y. 1997). "Such awards are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Frank*, 228 F.R.D. at 187.

Here, the service award provided for in the Settlement Agreement is reasonable and compensates Beebe for the risk she undertook in attaching her name to this litigation and for the time and effort she expended in assisting with the prosecution of this action. She

readily volunteered to step into the named-Plaintiff role when the previous class representative had to step down; regularly conferred with Class Counsel; responded to questions from co-workers about the status of the litigation; reviewed and approved the Complaint; responded to discovery demands; submitted a sworn declaration in support of the motion for conditional certification; did a full-day deposition; and directly participated in the all-day mediation that eventually resolved the matter. (Dkt. 202-1 at 30). She also turned down a payment of $6,863.45 tendered by Defendants on March 10, 2017, to support the Class, despite dealing with significant financial hardship. (*Id.* at 31).

The service award of $15,000 proposed for Beebe is less than 1% of the total settlement. This amount is reasonable. *See Frank*, 228 F.R.D. at 187-88 (approving enhancement award to class representative totaling 8.4% of the total settlement fund); *Chambery v. Tuxedo Junction Inc.*, No. 12-CV-06539 EAW, 2014 WL 3725157, at *11 (W.D.N.Y. July 25, 2014) (approving enhancement awards totaling roughly 5% of the total settlement fund). The Court therefore approves the service award as set forth in the Settlement Agreement.

## CONCLUSION

By reason of the foregoing, it is hereby ordered as follows:

1.     This Court hereby approves the proposed settlement as fair, reasonable, and adequate in light of all the relevant considerations discussed above, and the Final Approval Motion (Dkt. 201) is granted;

2.     This Court hereby approves payment of a service award of $15,000.00 to Beebe;

- 23 -

3.     This Court hereby approves Finkelstein, Blankinship, Frei-Pearson & Garber, LLP's request for $89,034.96 in litigation costs and $694,298.37 in attorneys' fees as fully justified for the reasons discussed above, and the Attorneys' Fees Motion (Dkt. 202) is granted;

4.     The settlement administrator shall make all required payments pursuant to the Settlement Agreement;

5.     The Clerk shall mark the above-captioned case DISMISSED WITH PREJUDICE; and,

6.     Without affecting the finality of this Order, the Court retains jurisdiction for the purposes of enabling the settling Parties to apply to this Court for such further orders or guidance as may be necessary for the construction, modification, or enforcement of the Settlement Agreement or this Final Approval Order and Judgment.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:     June 1, 2020
          Rochester, New York